### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-cr-158** |
| | **:** | |
| **KYLE FITZSIMONS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| _____ | **:** | |

### MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of pretrial detention that the defendant, Kyle Fitzsimons, be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence] and 18 U.S.C. § 3142(f)(2)(A) [Risk of Flight]. There are no conditions or combinations of conditions which can effectively ensure the defendant's appearance or the safety of any other person and the community, pursuant to 18 U.S.C. §§ 3142(e).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### PROCEDURAL POSTURE

The defendant was arrested in Maine on February 4, 2021. He appeared before Magistrate Judge John H. Rich III on February 5, 2021. The defendant waived a detention hearing and preliminary hearing and asked that his hearings and further proceedings be held in the U.S. District Court, District of Columbia. Judge Rich issued a temporary order of detention and a commitment to another district while the defendant was remanded to the custody of the U.S. Marshals for transport to the District of Columbia.

On February 26, 2021, an indictment was returned against defendant Fitzsimons charging

him with following ten counts:

1. Obstruction of Law Enforcement During Civil Disorder (18 U.S.C. § 231(a)(3)) (Sergeant A.G.) (5 year max);
2. Obstruction of Law Enforcement During Civil Disorder (18 U.S.C. § 231(a)(3)) (Detective P.N.) (5 year max);
3. Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2 (20 year max);
4. Inflicting Bodily Injury on Certain Officers (18 U.S.C. § 111(a)(1), and (b)) (Sergeant A.G.) (20 year max);
5. Inflicting Bodily Injury on Certain Officers (18 U.S.C. § 111(a)(1), and (b)) (Detective P.N.) (20 year max);
6. Entering or Remaining in any Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)) (1 year max);
7. Disorderly and Disruptive Conduct in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(2) (1 year max);
8. Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(4)) (1 year max);
9. Disorderly Conduct on Capitol Grounds (40 U.S.C. § 5104(e)(2)(D)) (6 month max)
10. Act of Physical Violence in the Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(F)) (6 month max)

## FACTUAL BACKGROUND

### 1. The Attack on the United States Capitol on January 6, 2021

The government hereby proffers that, two months after the November 3, 2020 presidential

election, on January 6, 2021, a joint session of the United States Congress convened at the Capitol

to certify the vote count of the Electoral College of the 2020 Presidential Election. The joint session

began at approximately 1:00 p.m., with then–Vice President Mike Pence presiding. By 1:30 p.m.,

the United States House of Representatives and the United States Senate adjourned to separate

chambers within the Capitol to resolve an objection raised in the joint session. Vice President

Pence continued to preside in the Senate chamber.

As the House and Senate proceedings took place, a large crowd of protestors gathered

outside the Capitol. "[T]emporary and permanent barricades were in place around the exterior of

the . . . building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside." Shortly after 2:00 p.m., a violent mob of rioters "forced entry" into the Capitol, and mayhem broke out inside the building, putting an hours-long halt to the electoral vote count while elected representatives, congressional staff, and members of the press hid from the mob. The joint session, and thus the constitutional ritual of confirming the results of the 2020 Presidential Election, "was effectively suspended until shortly after 8:00 p.m."

### 2. Kyle Fitzsimons' Criminal Conduct

After receiving tips, including reviewing a Rochester Voice article in which Fitzsimons gave an interview about his actions at the Capitol on January 6th and a Town of Lebanon meeting in which Fitzsimons recounted his actions, the FBI was able to identify Fitzsimons in a collection of video footage, including body worn camera worn by Metropolitan Police Officers, video surveillance from the Capitol Building and a video posted online showing Fitzsimons walking away from the Capitol area bloodied.

Between 3:45 pm – 4:30 pm, Fitzsimons was pushing and grabbing against officers who were holding a police line in an arched entranceway on the lower west terrace of the Capitol Building. Fitzsimons moved to the front of the group of rioters and was observed reaching down and grabbing at officers as he entered the archway. Specifically, Fitzsimons grabbed Sergeant A.G.'s left shoulder and was trying to pull Sergeant A.G. into the crowd. Sergeant A. G. slipped and fell while standing on three police shields that had been covered in pepper/mace spray. Sergeant A.G. had to strike Fitzsimons with a baton several times to get free from Fitzsimons' grip. After being struck by officers' batons, Fitzsimons got up and moved towards the middle of the archway; he lowered his shoulder and charged at the line of officers. Fitzsimons grabbed

Detective P.N.'s gas mask and pulled it to the side before another individual behind Fitzsimons covered Detective P.N. in spray.

Speaking of his participation in the riot, Fitzsimons told the Rochester Voice the following and provided pictures taken from his phone, which documented his travel up towards the Capitol building:

> "The speeches from the morning were overtly preaching the election was not over, there was a path to victory through decertification, there was a plan to delay the certification by the House and Senate and then state legislatures would convene and (certify) the right result."

> The crowd at the Ellipse was asked by President Trump to walk to the Capitol to "give our Republicans, the weak ones ... the kind of pride and boldness that they need to take back our country."

The day after the riots, Fitzsimons called into a Town of Lebanon meeting. Fitzsimons stated that he believes that Trump is a lion leading an "army of lambs through lawfare." After Trump's speech, Fitzsimons went to an unknown parking garage to put on a costume which consisted of butcher's jacket and an unstrung bow, which held an indiscernible symbolistic value to Fitzsimons. Fitzsimons stated that if it were the last day of the republic, he wanted to live it like he did every day. Fitzsimons stated he was near a group of individuals near a police line that was protecting a doorway and anyone "sucked in" to the crowd was pushed into the police line and were subjected to force.

Furthermore, law enforcement were directed to the Lebanon Maine Truth Seekers Facebook page in which a message posted on December 24, 2020 contained the following messages:

> "I'm also seeing flags that this election was stolen and we are being slow walked towards Chinese ownership by an establishment that is treasonous and all too willing to gaslight the public into believing

the theft was somehow the will of the people."

"Would there be an interest locally an organizing a caravan to Washington DC for the Electoral College cote count on Jan 6th, 2021? I am arranging the time off and will be a driver if anyone wishes to hitch a ride, or a lead for a caravan of vehicles. If a call went out for able bodies, would there be an answer?"

The Facebook message was signed with Fitzsimons' first and last name and included a gmail address also containing his first and last name.

According to C-3, who had identified Fitzsimons through the recorded Town of Lebanon meeting and the Rochester Voice article and who has had numerous face to face interactions with Fitzsimons, described Fitzsimons as an "anti-establishment" type who is opposed to government interference and frequently discusses firearms.

As law enforcement continued to investigate Fitzsimons, information was obtained that Fitzsimons made several calls to a Congressional office representing his district, stating the following:

- On March 19, 2020, Fitzsimons called-in, demanding the number for Chinese President, Xi Jinping. Fitzsimons said that he wanted to start a war with China and if the individual answering the phone don't give him the number, he was going to go out on the street and start talking to the Chinese people he saw. He said many times that he wanted to start a war and when the staffer asked him for a name, he said "This is Kyle Fitzsimons, the man who wants to start a war." Fitzsimons' tone was noted to be very aggressive and angry.
- On December 17, 2020, Fitzsimons called-in and stated that he was against impeachment. He was reported to be very aggressive, shouting and yelling. Fitzsimons said that he was going to "give it to her hard" and that "we're coming for her" (referring to the Congressperson).
- On December 18, 2020, Fitzsimons stated that the electoral college vote is corrupt and total garbage. He urged the Congressperson to dispute the election results in January. He stated that Biden is a corrupt skeleton and that this is going to be Civil War.

Pursuant to a lawfully-obtained search warrant, law enforcement was able to recover from the defendant's premise fur pelts and unstrung bows and from his vehicle, a bloodied butcher's

coat with "Kyle" inscribed in the coat, rubber boots and the apron Fitzsimons was seen wearing at the Capitol on January 6th.

## LEGAL STANDARD

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, "Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). Thus, a detention hearing must be held at the government's request only "in a case that involves" a charged offense falling in one of five enumerated categories, 18 U.S.C. § 3142(f)(1)(A)–(E), or if the defendant poses a serious risk of flight or of attempting to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B). The BRA "requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *Salerno*, 481 U.S. at 755.

The charges brought against Fitzsimons trigger a detention hearing under 18 U.S.C. 3142(f)(1)(A) ("crime of violence"), defined broadly as "an offense that has as an element of … physical force" or a felony that "by its nature, involves a substantial risk that physical force against the person or property of another." 18 USC § 3156(a)(4). This case also involves "a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A). Accordingly, the Court "shall hold a hearing to determine whether any condition or combination of conditions … will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. 3142(f).

To determine whether conditions exist that will reasonably assure the appearance of the defendant as required and the safety of any person in the community, the judicial officer shall consider four factors: (1) "the nature and the circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(l)-(4).

## ARGUMENT

The United States submits that there are no conditions or combination of conditions the Court could impose that would reasonably assure the safety of the community or the appearance of the defendant.

*(1) The Nature and Circumstances of the Offense Charged*:

The defendant has been charged with grave offenses. He forcibly entered and remained on the Capitol grounds and sought to stop, delay, and hinder Congress's certification of the Electoral College vote. He was at the front of the crowd in the Lower West Terrace tunnel and engaged directly with officers by pulling them by the body parts, including the shoulder, in attempt to pull them into the crowd. Not hindered by the batons meant to prevent further violence on Fitzsimons' part, he pulled the gas mask off another officer, which was then followed by another individual spraying the officer in the face. He persisted in his violence and was unhindered by the line formed at the tunnel meant to protect the Capitol building from the rioters.

As made clear in the Facebook post on the Lebanon Truth seekers page, once a call "went out for able bodies" to march to the Capitol, Fitzsimons answered with violence, force and aggression. Following up on his threatening calls made to the Congressional office on December 17-18, 2020, in which he stated he was going to "give it to her hard" (referring to the

Congressperson) and stating that the fraudulent election was going to result in a Civil War, Fitzsimons prepared himself for a battle both in apparel (butcher coat, rubber boots and apron, unstrung bow) and in his actions that day. Fitzsimons made clear his disgust for the election and was acting on the threats by use of violence and force. Such conduct poses a clear risk to the community. As stated by Chief Judge Beryl A. Howell, "[t]he actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law." *See United States v. Chestman*, 21-mj-218 (BAH), ECF No. 23, at *13, 16 (D.D.C. February 26, 2021) ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification"). Here, the defendant attempted to breach the police lines, but due to the heroic efforts of law enforcement to consistently push him back, thankfully failed.

For those reasons, the nature and circumstances of the charged offenses strongly support a finding that no conditions of release would protect the community. Additionally, someone who demonstrates such contempt from the rule of law cannot reasonably assure future court appearances.

*(2) The Weight of Evidence Against the Person*:

Substantial evidence supports the position that Fitzsimons poses a threat to the community. Fitzsimons violent actions at the Capitol were captured on film, both through body worn camera footage and Capitol building surveillance. Fitzsimons statements on the Facebook Lebanon Truth Seekers page and through calls to the Congressional office catalogued that his intentions in Washington, D.C. were not harmless or "peaceful" as he later recounted to the Rochester Voice, but instead filled with aggression and anger. Fitzsimons then confirmed his presence at the Capitol

by providing an interview to the Rochester Voice, as well as pictures taken from his phone documenting his travel up towards the Capitol building. The weight of the evidence thus strongly supports a finding that no conditions of release would protect the community.

*(3) History and Characteristics of the Person*:

The United States adopts the factual proffer related to the defendant's history and characteristics in the February 10, 2021 pretrial services report generated by Jennifer Metcalfe, United States Probation Officer in Maine. Given the defendant's unemployment, his prior conviction in 2008 for driving under the influence and 2016 conviction for operating an unregistered motor vehicle, he presents a high risk of non-compliance with any conditions, a significant danger to the community, and a flight risk. Ms. Metcalfe's assessment is that due to the defendant's risk of danger, which is due to the instant offense, and due to the defendant being unwilling to be interviewed, there is no information to mitigate the risk of danger, and therefore no condition or combination of conditions that would reasonably assure the appearance of the defendant as required and the safety of the community. As a result, Ms. Metcalfe recommended the defendant's detention.

In addition, one of the circumstances the court can consider when making a release decision is the support network the defendant will or will not have available to him upon release.  During a review of the defendant's cell-phone, pursuant to a search warrant, the government discovered a text message from the defendant's wife on January 5, 2021, stating "[a]fter this trip you need to do some serious decision making. If your [sic] not going to change, I don't want anything to do with you.  This is it kyle, it's me and holly or politics…Chose [sic] is yours." Based on this communication it appears that the defendant, if released, would not have the support of his closest family members when re-entering the community.  Moreover, it appears that the defendant's

participation in political activity prior to the Capitol riots has had a similarly negative impact on his personal life yet was not enough of a limiting factor to dissuade him from the actions that led to his current detention.  For all of these reasons, the government concurs with the recommendation of Ms. Metcalfe that no condition or combination of conditions that would reasonably assure the appearance of the defendant as required and the safety of the community.

   *(4) Nature and Seriousness of the Danger to Community*:

   The defendant's words and actions evince a serious threat to the community. Per *Chrestman*, grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct. 21-mj-218, at *13. On several occasions, Fitzsimons was seen engaging in acts of violence. If he were successful in pulling Sergeant A.G. from the tunnel, he would have put Sergeant A.G.in serious danger, as several other officers pulled into the crowd were severely beaten that day. *See Chrestman*, at *30 ("Nearly as significant is defendant's use of force to advance towards the Capitol and his use of words to lead and guide the mob in obstructing the police and pushing against police barriers"). He then pushed aside Detective P.N.'s gas mask, allowing chemical irritants to affect him. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community.

   Second, after the events, Fitzsimons recounted the events by giving an interview in a local newspaper and calling into this town's meeting, expressing no remorse for what he did and downplaying his violence and intentions at the Capitol. All of the release conditions available to

the Court depend-at least in part-on voluntary compliance. Accordingly, the potential danger Fitzsimons poses to the community strongly supports a finding that no conditions of release would protect the community.

## CONCLUSION

Pretrial detention is necessary in this case to ensure the safety of people and the community, and the appearance of the defendant as required. 18 U.S.C. § 3142(f). There is clear and convincing evidence that the defendant would pose a danger to the community if released, and that there are no release conditions or combination of conditions that would ensure the safety of the community. There is probable cause that the defendant would be a flight risk and would not appear at trial as required.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY


*/s/ Puja Bhatia*
PUJA BHATIA
BRANDON REGAN
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Memorandum in Support of Pretrial Detention was served on counsel of record via the Court's electronic filing service.


*/s/ Puja Bhatia*
PUJA BHATIA
Assistant United States Attorney


Date:  March 16, 2021