IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL No. 1:21CR00158-KBJ |
| v. ) | |
| ) | Detention Hearing Date: April 6, 2021 |
| Kyle Fitzsimons ) | |
| Defendant ) | The Honorable G. Michael Harvey |
| ) | |

POSITION OF THE DEFENSE
ON THE GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

In accordance with this Court's policy regarding pretrial detention, and the requirements of 18 U.S.C. §3142(f)(1)(A) and (E), Counsel for the Defendant hereby represents that he and his client have reviewed the Pretrial Services Report and the government's Motion and Memorandum in Support of Pretrial Detention. We submit this memorandum in support of Mr. Fitzsimons.

As the Court is aware, Mr. Fitzsimons is charged in a ten-count indictment with violations related to disorderly conduct, trespassing, and acts intended to obstruct and assault police officers during the January 6 attack on the Capitol. The government alleges that Mr. Fitzsimons was present at the attack and that he participated in the fight to control the archway at the lower west terrace of the Capitol, and that his actions obstructed, impeded and injured two of the law enforcement officers present while contributing to the obstruction of an official proceeding.

As Mr. Fitzsimons is entitled to a presumption of innocence and the government has a high burden under the Bail Reform Act, we oppose the government's motion. While no defendant is guaranteed a right to bail, the Eighth Amendment to the United States Constitution requires that bail not be excessive (*see United States v. Salerno,* 481 U.S. 739, 754-55 (1987)), and the laws imposing pretrial detention are themselves required to "serve a

1

compelling government interest" under the Due Process Clause of the Fourteenth Amendment. Following Chief Judge Howell's recent analysis in of this Court's considerations regarding the Bail Reform Act and cases arising from the January 6, 2021 attack on the Capitol in the *Chrestman* Opinion, *see United States v. Chrestman,* Case No. 21-MJ-218(ZMF), it is our contention that Mr. Fitzsimons should be released pending trial.

**Argument**

While the United States has correctly stated Chief Judge Howell's finding in the *Chrestman* Opinion that "the actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law," they failed to mention that Chief Judge Howell goes on to write in the very next paragraph that "nonetheless, not all of the rioters charged with offenses stemming from the January 6 attack will be held pending trial" and that this Court has not "uniformly granted the government's requests for pretrial detention." *see Chrestman, ibid, at 16, citing United States v. Powell,* No. 21-mj-197-GMH (D.D.C. Feb. 11. 2021) and *United States v. Griffin,* No. 21-cr-92-TNM (D.D.C. Feb. 11, 2021). Merely saying that there is no condition or combination of conditions that would protect the community does not make it so.


A. The Nature and Circumstances of the Offense Charged

Mr. Fitzsimons is indeed charged with several offenses, including entry to the Capitol grounds at a time when they were closed and violent, assaultive acts intended to impede law enforcement and obstruct Congress. The government makes a point of noting that Mr. Fitzsimons "prepared himself for battle both in apparel (butcher coat, rubber boots and apron, unstrung bow) and in his actions that day," without noting that Mr. Fitzsimons is a butcher

who marched on the Capitol wearing the same apparel he wears to work every day, or searching Google to see what an unstrung bow is meant to symbolize, let alone what it would be good for without a string and arrows.

In comparing Mr. Fitzsimons with the defendant in the *Chrestman* case, it is clear that the allegations against him are significantly less serious than those leveled against others, including Mr. Chrestman. Yes, he is charged with felony offenses, and the nature of felony offenses weighs more heavily in favor of pretrial detention than do misdemeanors. And these charges involve violence. But as Chief Judge Howell noted, the inquiry does not end there. Mr. Fitzsimons is not alleged to have engaged in prior planning before arriving at the Capitol or being an associate of any group that did, and he is not charged with possessing or using a dangerous weapon during the riot. There is no allegation that he coordinated with other rioters before, during or afterwards. He is not alleged to have had or assumed a leadership role, he did not enter the Capitol Building, and he did nothing to destroy or conceal evidence.

B.  The Weight of the Evidence Against the Person

The government's case, as presented in their Memorandum and the Statement of Facts attached to their Complaint, is compelling. By their account, Mr. Fitzsimons' presence at the Capitol and his interactions with police show his actions to have been assaultive and aimed at impeding the officers and obstructing the Congress. Though they are certainly allowed to make this argument, it is merely an allegation that they have to prove beyond a reasonable doubt to a jury. It is no less likely that the Defendant will be found to have been a peaceful protestor who acted to defend himself from the blows of police batons as he stood at the front of the crowd.

In any event, he entitled to the presumption of evidence at this point, even if the dangerous nature of the charges against him entitles the government to a presumption that he should be held pending trial. The critical difference is that while the presumption the government is entitled to is rebuttable, the presumption the Defendant is entitled to is not.

C.  The History and Characteristics of the Person

Counsel is troubled by the government's position on Mr. Fitzsimons' history and characteristics, and misstatements of facts given therein. Depending on a pretrial services report written nearly two months ago in Maine, the government concludes that Mr. Fitzsimons is an unemployed man whose 2008 conviction for driving under the influence and 2016 conviction for driving an unregistered motor vehicle present a "high risk of non-compliance with any conditions, a significant danger to the community, and a flight risk." Furthermore, because Mr. Fitzsimons declined to be interviewed, the government agrees with the United States Probation Officer that detention is warranted.

This position ignores several salient facts. First, the Pretrial Services Report generated in Maine is, at best, out of date. Upon advice of former counsel, the Defendant declined to be interviewed or to ask for a detention hearing because he preferred to have this Court hear his case for pre-trial release; Mr. Fitzsimons has since been interviewed by a United States Probation Officer in this District, giving details about his employment as a butcher in Maine. Second, there is nothing about convictions for driving under the influence in 2008 or driving a car without a valid registration in 2016 that shows Mr. Fitzsimons was anything but compliant with those courts then, let alone that he would not be compliant with the orders of this Court now. He has never been convicted of a felony or any crime of violence, and he has never failed to appear in court. According to §4A1.1 and §4A1.2 of the

United States Sentencing Commission's most recent Guidelines Manual, Mr. Fitzsimons would have a single Criminal History Point and would be a Category I offender – the lowest assessment of a defendant's criminal history possible in our system.

Most troubling for Defense Counsel is the government's use of communications between Mr. Fitzsimons and his wife to make their case. In an argument attempting to show that the Defendant will not have a support network available to him upon release, a January 5, 2021 text message from the Defendant's wife is quoted; based on that text message and despite the words "if you['re] not going to change"…and "*after this trip*" (emphasis added) the government believes that they know about Mr. Fitzsimons' family life and assumes that he would not have the support of family members if he were to re-enter the community while awaiting trial.

In fact, Mr. Fitzsimons does enjoy the support of his family. In addition to his wife, he has several relatives in Maine who would volunteer to serve as third-party custodians, and his aunt in New Jersey has offered to do so as well. Though the government makes unfounded and uncharged allegations that Mr. Fitzsimons has acted in a threatening manner in the past, his life in Maine – with the exception of the aforementioned 2008 DUI and 2016 vehicle registration matter – has been a law-abiding one. And were Mr. Fitzsimons allowed to reside with his aunt, he would be in a home in suburban New Jersey that is several hours closer to Washington and conveniently located near a United States Probation Office and all of the services it could provide, including GPS monitoring.

D. Nature and Seriousness of the Danger to Community

Once again, the government cites Chief Judge Howell's words in the *Chrestman* Opinion to support their argument, despite significant differences in the allegations leveled

against Mr. Fitzsimons. Citing notions that "grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct" and that "defendant's use of force to advance toward the Capitol and his use of words to lead and guide the mob" shows Mr. Chrestman to be especially dangerous, the government asserts that Mr. Fitzsimons is just like Mr. Chrestman. *See Chrestman, ibid* at 13 and 30.

Though the allegations against Mr. Fitzsimons are troubling, they are far less serious than what Mr. Chrestman is alleged to have done. He was not a member of any group, let alone a known leader of a notoriously dangerous group like Mr. Chrestman's Proud Boys, and he did not participate in any coordination, planning or communication with others during the riot. He did not have a weapon and he did not lead others. Though the government cites uncharged statements to politicians in their memorandum as proof of his dangerousness, there is no allegation or evidence that he made any statements to lead or incite others during the riot, or that his actions encouraged others to engage in violence. And as mentioned above, he is entitled to the presumption that any video or testimony indicating that he made contact with officers could also be seen as defensive in nature as he found himself pressed between police and the crowd during a riot.

In addition, the government's assertion that "all of the release conditions available to the Court depend – at least in part – on voluntary compliance" is certainly true. But there is no evidence that Mr. Fitzsimons has ever failed to follow the orders of a judge, or that he has ever been a danger to his community. His entire criminal record consists of a DUI and an invalid registration charge, without any indication that he ever failed to attend every court appearance or comply with any conditions imposed. As noted above, were this Court to

6

consider Mr. Fitzsimons' criminal record in a sentencing hearing he would have a single Criminal History Point and find himself in Criminal History Category I, among the least serious offenders our system ever sees. And there is no indication that he has attempted to lie, flee, destroy evidence, interfere with the government's investigation or tamper with witnesses in the instant case.

Mr. Fitzsimons is prepared to comply with whatever conditions the Court feels appropriate and live a law-abiding life pending trial, as he always has.

### E. Other Considerations

Counsel also asks the Court to consider other factors that weigh towards releasing Mr. Fitzsimons pending trial.

First, the COVID crisis continues, and it is perhaps most dangerous within jails and prisons. Though there have been reasons for hope, this Court is still mostly operating remotely for safety. The provisions of the CARES Act allowing the Bureau of Prisons to allow more than 10% of the federal prison population to be placed in home confinement are still in place, and the DC Jail is no safer than it was months ago. If this Court sees this case as a close one, we sincerely ask that our COVID concerns be considered in Mr. Fitzsimons' favor.

Second, a quick look at the docket report for this case shows that the government moved for an unprecedented delay of their obligations under the Speedy Trial Act of an as yet unknown duration shortly after making this motion for detention, and that they have asked to have that time counted against the defendant for purposes of the Speedy Trial Act.

Though there is no doubt that the government faces significant difficulties assembling and sorting through evidence against hundreds of defendants, they have nonetheless made the

7

choice to prosecute all of these cases simultaneously. Any delay in their readiness is a result of that choice; there is no assertion that the evidence in Mr. Fitzsimons' case is voluminous or complicated, or that his conduct is part of a conspiracy involving other defendants who should be tried together, just that the government cannot proceed in a timely fashion because of the workload they have chosen to tackle all at once. Despite the cases and statutes they cite in their motion, this Court has never held that delays due to the government's choices and complications with other cases are somehow demanded by the ends of Justice.

Counsel does not argue that this could somehow be changed, or that the government and their agents are not working diligently. The nature of criminal defense sometimes demands that a lawyer tilt at a windmill.  We simply ask that Court consider the extraordinary pre-trial delay Mr. Fitzsimons faces when deciding whether he awaits trial under supervision of a United States Probation Officer or in restricted confinement in a jail hundreds of miles from home.

**Conclusion**

Despite the government's arguments and the allegations leveled against him, Mr. Fitzsimons should not be held pending trial. Simply finding some similarities between these allegations and Mr. Chrestman's case does not make their cases similar; there is no question that the allegations against Mr. Fitzsimons are significantly less serious. Outside of the allegations in this case, there is no evidence that Mr. Fitzsimons has ever been a danger to others on any other day in his life, and no evidence that Mr. Fitzsimons will not comply with this Court's orders or that he is a risk of flight. We respectfully ask that the Court release him on whatever conditions the Court finds necessary.

Respectfully Submitted,

_____/S/_____
Gregory T. Hunter
Virginia State Bar Number 45489
Attorney for the Defendant
2055 North 15th Street
Arlington, Virginia 22201
(703) 966-7226 telephone
(703) 527-0810 facsimile
greghunter@mail.com

<u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that on the 5th day of April, 2021, an exact copy of the foregoing Position of the Defense was filed with the Clerk of the Court using the CM/ECF system, causing a Notice of Electronic Filing to be served upon:

Puja Bhatia, Esquire
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street NW
Washington, DC 20530

Brandon Regan, Esquire
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street NW
Washington, DC 20530

Copies of this document have been forwarded to the following non-filing users:
By First Class Mail:
  Kyle Fitzsimons
  Defendant
  DC Jail

                _____/S/_____
                Gregory T. Hunter
                Virginia State Bar Number 45489
                Attorney for the Defendant
                2055 North 15th Street
                Arlington, Virginia 22201
                (703) 966-7226 telephone
                (703) 527-0810 facsimile
                greghunter@mail.com