## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 21-cr-158 (RC)** |
| | **:** | |
| | **:** | |
| **KYLE FITZSIMONS** | **:** | |

## <u>ORDER</u>

**AND NOW**, this           day of                    , 2022, having considered

Defendant's Motion to Dismiss Count Three and the government's Response thereto, it is

hereby **ORDERED** that Mr. Fitzsimons' Motion is **GRANTED**.  Count Three is hereby

**DISMISSED**.

BY THE COURT:

_____
**THE HONORABLE RUDOLPH CONTRERAS**
**United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 21-cr-158 (RC)** |
| | : | |
| | : | |
| **KYLE FITZSIMONS** | | |

### MR. FITZSIMONS'S MOTION TO DISMISS COUNT THREE

Kyle Fitzsimons, through undersigned counsel, and pursuant to Rule of Criminal Procedure 12(3)(B)(v), hereby respectfully requests that the Court dismiss Count Three of the Superseding Indictment, which charges him with obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2).

The Superseding Indictment alleges that, on or about January 6, 2021, in the District of Columbia and elsewhere, Mr. Fitzsimons

> attempted to, and did, corruptly obstruct, influence, and impede an official proceeding; that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority, committing an act of civil disorder, and engaging in disorderly and disruptive conduct.

ECF No. 5. Of course, Mr. Fitzsimons acknowledges that, although not stated in the Superseding Indictment, this Court and the parties are aware that the government's theory is that assaults, trespassing, and destruction of property alleged elsewhere in the Superseding Indictment are at least some of the acts the government will rely on to attempt to prove this charge, and that the "official proceeding" that Mr. Fitzsimons allegedly obstructed was the January 6, 2021 certification of the electoral college vote for

the 2020 Presidential Election. The Court should dismiss Count Three because it is fatally flawed for several reasons.

First, 18 U.S.C. § 1512(c)(2) only prohibits the corrupt obstruction of tribunal- like proceedings before Congress related to the administration of justice. It does not prohibit the obstruction of a proceeding before Congress like the certification of the electoral college vote. If the allegation is that Mr. Fitzsimons obstructed the certification of the electoral college vote, that would not be a crime under 18 U.S.C. § 1512(c). Second, the conduct Mr. Fitzsimons has been accused of committing cannot qualify as conduct that "otherwise obstructs, influences, or impedes" an official proceeding, within the meaning of Section 1512(c)(2). Third, Section 1512(c)(2) is unconstitutionally vague in that "corruptly" is undefined and itself vague.

For these reasons, and in light of the demands of the rule of lenity, Mr. Fitzsimons respectfully requests that the Court dismiss Count Three.

## THE CERTIFICATION OF THE ELECTORAL VOTE WAS NOT AN "OFFICIAL PROCEEDING"

I.   **The Electoral Count Act does not contemplate any tribunal-like role for Congress, and the related proceeding does not relate to the administration of justice.**

The procedures in Congress for certifying the electoral college vote are regarded primarily as a ministerial act. *See* Vasan Desavan, *Is the Electoral Count Act Unconstitutional*, 80 N.C. L. REV. 1653, 1659 (2002) ("The counting function appears to be a ministerial duty of tabulation imposed by the Constitution because each of the electoral colleges meet in their respective states instead of at some central location."). This is consistent with the directive set out in the Constitution requiring that "[t]he President of

the Senate shall, in the presence of the Senate and House of Representatives, open all the

certificates and the votes shall then be counted." U.S. Const. amend. XII; *see also* U.S.

Const. art. II, § 1. Nothing in the Constitution or the Electoral Count Act (ECA), codified at

3 U.S.C. §§ 5–6, 15–18 — the legislation that sets out the procedures for the certification

of the electoral college vote, requires the Joint Session of Congress call for witnesses to

bring forth testimony or other evidence to carry out this "counting function."[1]

Additionally, the Twelfth Amendment provides that once the President of the

Senate has opened all the Certificates, "the votes shall *then* be counted" and, in the case of

electoral deadlock, the House of Representatives is to "immediately" choose the next

President from those on the list. U.S. Const. amend. XII (emphasis added). These

principles of immediacy "militates against the deliberative aspects of counting and the

judging of the electoral votes." *See* Desavan at 1719 ("After all, judicial determinations

---

[1] Contrast this with The Grand Committee Bill of 1800, a piece of proposed legislation that would have created a committee to "sit with closed doors" and have the "power to send for persons, papers, and records to compel the attendance of witnesses" for determining the results of the electoral college vote. See Desavan at 1671 (quoting House Special Committee, Counting Electoral College Votes, H.R. Msc. Doc. 44-13, at 17 (1877)). During the debates on this bill, Senator Charles Pickney, one of the Constitution's original framers, noted how this was entirely contradictory of the Framer's Intent:

> It never was intended, nor could it have been safe, in the Constitution, to have given to Congress thus assembled in convention, the right to object to any vote, or even to question whether they were constitutionally or properly given … To give to Congress, even when assembled in convention, a right to reject or admit the votes of States, would have been so gross and dangerous an absurdity, as the [F]ramers of the Constitution never could have been guilty of.

*Id.* at 1672 (quoting 10 Annals of Cong. 130). Ultimately, the bill failed to pass and no efforts were ever made to grant Congress the same levels of power proposed therein. *See id.* at 1673.

take time.").

Historical practice since the dawn of the Republic confirms this. Prior to and after the passage of the ECA, there has never been an instance where Congress engaged in a full-blown investigation with the calling of witnesses to give testimony, requests for records, or consideration of other evidence in order to decide the electoral vote count. *See id.* at 1678–94 (providing a survey of all historical incidents where a problem arose with the electoral count).[2]

Even during the Joint Session of Congress on January 6, 2021, despite numerous objections being raised concerning the electoral votes, the objections were overruled without consideration of any evidence or testimony to support the allegations. *See* 167 CONG. REC. H79, 105-06, 108, 111 (2021) and 167 CONG. REC. S16, 25, 32 (2021) (where legislators requested, but did not receive, authority to open investigation regarding electoral certificates).

Contrast this process involving the election proceedings against another separate function where Congress *does* operate in an adjudicatory function: the power afforded Congress under the House Judging Clause found in Article I, Section 5 of the Constitution.

---

[2] The only incident that came remotely close to a situation where the Joint Session arguably acted as a tribunal was during the presidential election of 1876 between Samuel Tilden and Rutherford B. Hayes. After an issue arose regarding the electoral votes of several states and, after mediation failed, Congress created an "Electoral Commission" to resolve the disputed votes. Desavan at 1689. The Commission was to have "the same powers, if any, now possessed . . . by the two Houses." *Id.* at 1690 (quoting Act of Jan. 29, 1877, ch. 37, § 2, 19 Stat. 227, 229). However, there is no indication that the Commission exercised their powers to inquire and investigate by calling for witnesses or other evidence before deciding the electoral count. To the contrary, as it is well documented, the members of the Commission voted along party lines resulting in a victory for the Republican Hayes requiring the "Compromise of 1877" to avert a political crisis. It is also generally accepted that the use of this Commission was unconstitutional. *See* Desavan at 1689, n. 160.

*See* U.S. Const. art. I, § 5. That clause provides that "[e]ach House shall be the Judge of the Elections, Returns and Qualifications of its own Members." *Id.* This has been held to confer upon Congress certain powers that are "judicial in character." *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 613 (1929). No such clause, however, exists in any of the provisions related to the electoral count — not in Article II, Section 1 nor in the Twelfth Amendment.[3] This, at the very least, supports the notion that the Joint Session of Congress "does not have the authority to judge the elections, returns, and qualifications of the electors" and that it "is not a judicial tribunal with the power to investigate" the same. Desavan at 1752; *see also* 2 Joseph Story, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1464, at 317 (1833) (discussing the electoral college clause of the Constitution and how "no provision is made for the discussion or decision of any questions, which may arise")  and 3 Joseph Story, COM-MENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 831, at 294–95 (1833) (explaining how, on the other hand, the House Judging Clause was viewed as necessary to safeguard the liberties of the people).

In sum, little to nothing about the election certification proceedings is akin to a tribunal proceeding or relates to the administration of justice. This is not only supported by the language of the Constitution but is also consistent with both the Framer's intent and historical practice. And, for the reasons discussed below, this feature of the election

---

[3] Further, it should be noted that that the House Judging Clause was considered at the Constitutional Convention of 1787 immediately after the Electoral College Clause in Article II, Section 1. 2 THE RECORDS OF THE FEDERAL CONVENTION of 1787, at 502–03 (Max Ferrand ed., 1911). It is no coincidence that the Framers thought not to extend the ability of Congress to "judge" in their own matters as set out in the House Judging Clause to matters related to the electoral count.

certification proceedings takes those proceedings out of the realm of proceedings

contemplated by the offense Congress defined in 18 U.S.C. § 1512(c)(2).

## II.   Section 1512(c)(2) prohibits obstructing only "official proceedings," which are tribunal-like proceedings relating to the administration of justice.

Section 1512(c)(2) of Title 18 provides:

> (c) Whoever corruptly—
>
> (1)   alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2)   otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Congress defined the term "official proceeding" for purposes of Sections 1512 and

1513 in Section 1515(a)(1), as follows:

> (A)   a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B)   a proceeding before the Congress;
>
> (C)   a proceeding before a Federal Government agency which is authorized by law; or
>
> (D)   a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.] (Emphasis added)

The language of the statute, its history, and several other factors suggest that the term

refers to tribunal-like proceedings relating to adjudication, deliberation, and the

administration of justice. That is, all of these sources of interpretation point to the conclusion that the term is limited to proceedings that feature qualities that the proceedings for certifying the electoral vote lack. As such, though the counting of the electoral vote takes place in Congress, it is not an "official proceeding."

A.      *The text in and around Sections 1515 and 1512 support this conclusion.*

The plain language of Section 1515 supports the view that "official proceeding," as defined in 1515 and used in 1512(c)(2), is limited to proceedings that feature qualities that the proceedings for certifying the electoral vote lack.

No court has yet determined what falls within "Congressional proceeding" as it is used in Section 1515(a)(1)(B), and few courts have grappled with surrounding terms. *See, e.g.*, *United States v. Ermoian*, 752 F.3d 1165, 1168, 1169 (9th Cir. 2013) ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512."). In *Ermoian*, the Ninth Circuit analyzed the text in and surrounding Sections 1515 and 1512 to determine that the phrase "a proceeding before a Federal Government agency which is authorized by law" in Section 1515(a)(1)(C) does *not* include FBI investigations. *Id.* 1172. The same analysis shows that Section 1515(a)(1)(B) does not include the counting of electoral votes.

As it must have, the Ninth Circuit began with the text of the statute. *Id.* The court noted that the definition of "official proceeding" "depends heavily on the meaning of the word 'proceeding,'" and "[t]hat word is used — somewhat circularly — in each of the definitions for an 'official proceeding' and is key to the phrase's meaning." *Id.* at 1169. The court acknowledged, as the defense does here, that the lay interpretation of "proceeding" is quite broad and can include "a mere 'action or series of actions.'" *Ermoian*, 752 F.3d at

1169 (citing "Proceeding," Oxford English Dictionary, *available at* http://www.oed.com).

But it can also have a more narrow, technical definition, meaning

> "[a] legal action or process; any act done by authority of a court of law; a step taken by either party in a legal case." Proceeding, Oxford English Dictionary, available at http://www.oed. com; see also Black's Law Dictionary 1241 (8th ed.2004) (defining proceeding either narrowly as (1) "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment;" (2) "[a]ny procedural means for seeking redress from a tribunal or agency;" and (3) "[t]he business conducted by a court or other official body; a hearing" or more broadly as "an act or step that is part of a larger action.").

*Id.* at 1169-70.

As the Ninth Circuit found, then, more than a dictionary is needed to determine what Congress meant when it used the word "proceeding" in Section 1515(a)(1)(B). *Id.* at 1170. Faced with this, the Ninth Circuit turned to context.

First, the Ninth Circuit noted that, as Justice Scalia and Bryan A. Garner, editor of Black's Law Dictionary for over the past 20 years, wrote, "sometimes context indicates that a technical meaning applies and when law is the subject, ordinary legal meaning is to be expected," even though it "often differs from common meaning." *Id.* (quoting Antonin Scalia & Bryan A. Garner, READING THE LAW: THE INTERPRETATION OF LEGAL TEXTS 73 (2012) (emphasis added)).

Further, the Ninth Circuit found that this expectation was affirmed by several factors. First, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings, but not necessarily with a mere 'action or series of actions.'" *Id.* Moreover, "when used to define 'official proceeding,' the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term,' including 'judge or court,'

'Federal grand jury,' 'Congress' and 'Federal

government agency.'" *Id.* In short, these context clues suggest that the technical, legal

meaning of "proceeding" applies in Section 1515. *Id.*

As the technical, legal meaning of "proceeding" connotes "business done in courts"

and "an act done by the authority or direction of the court, express or implied," the Ninth

Circuit found that "the definition of the term 'proceeding' strongly suggests that a

'proceeding before a Federal Government agency which is authorized by law' does not

encompass a criminal investigation." *Id.* at 1170 (quoting commentary to definition in

Black's Law Dictionary at 1241 (8th Cir. 2004) (internal citations omitted)).

Likewise, this evidence that when Congress used "proceeding" in Section 1515, it

meant to suggest a technical, legal "proceeding" also strongly suggests that "a proceeding

before Congress" (1) does not include *every* action, series of actions, courses of conduct, or

behavior of Congress, but some narrower universe of "proceedings," and (2) that the

narrower universe is limited by the technical, legal understanding of that word as

connoting "business done in courts" and "an act done by the authority or direction of the

court, express or implied." *See id.*

As the Ninth Circuit went on to find in *Ermoian*, "the broader statutory context"

also supports this reading of "proceeding." *Id.* at 1171. "Examining the term "proceeding"

within the grammatical structure of the definition at issue, it becomes clear that the term

connotes some type of formal hearing." *Id.*

First, "[t]he use of the preposition 'before' suggests an appearance in front of the

agency sitting as a tribunal." *Id.; see also United States v. Ramos,* 537 F.3d 439, 462–63

(5th Cir. 2008) (stating that "use[ of] the preposition 'before' in connection with the term

'Federal Government agency' . . . implies that an 'official proceeding' involves some formal

convocation of the agency in which parties are directed to appear, instead of any informal

investigation conducted by any member of the agency.")

Second, most of the conduct contemplated by Section 1512 (the Section that Section

1515 exists to clarify) also brings to mind formal convocations in which parties are

directed to appear, and in which someone will adjudicate or deliberate upon the parties'

presentations:

> Section 1512 refers to "prevent[ing] the attendance or testimony
> of any person in an official proceeding"; "prevent[ing] the
> production of a record, document, or other object, in an official
> proceeding"; and "be[ing] absent from an official proceeding to
> which that person has been summoned by legal process." 18
> U.S.C. § 1512(a)(1)(A)-(B), (a)(2)(B)(iv).

*Id.* at 1171-72. Thus, "[t]he use of the terms "attendance", "testimony", "production", and

"summon[ ]" when describing an official proceeding strongly implies that some formal

hearing before a tribunal is contemplated." *Id.* at 1172.

In *Yates v. United States*, 574 U.S. 528, 543 (2015), the Supreme Court applied

similar principles to find that fish – jettisoned from a boat by a fisherman who wished to

avoid detection of his having kept undersized fish – did not qualify as "tangible objects"

within the meaning of 18 U.S.C. § 1519, which states that one who "knowingly alters,

destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record,

document, or tangible object with the intent to impede, obstruct, or influence the

investigation or proper administration of" certain matters is guilty of a crime.

Notwithstanding the lay meaning of "tangible object," among the reasons the Supreme

Court found that fish fell outside of that term as it was used in Section 1519 was the principle that holds that "a word is known by the company it keeps." *Yates*, 574 U.S. at 543. Application of this principle, *noscitur a sociis*, the Court found, avoids "ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *See Yates v. United States*, 574 U.S. 528, 543 (2015) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)). In *Yates,* the Court applied the principle to conclude that fish were not "tangible objects" as used in 18 U.S.C. § 1519 notwithstanding its lay meaning in part because that term "is the last in a list of terms that begins 'any record [or] document.'" *Id.* at 543. Moreover, the Court noted that "[t]he Section applies to anyone who 'alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object' with the requisite obstructive intent." *Id.* at 544. "The last two verbs, 'falsif[y]' and 'mak[e] a false entry in,' typically take as grammatical objects records, documents, or things used to record or preserve information, such as logbooks or hard drive." *Id.* "The term is therefore appropriately read to refer, not to any tangible object, but specifically to the subset of tangible objects involving records and documents, *i.e.*, objects used to record or preserve information." *Id.; see also, e.g., United States v. Espy*, 145 F.3d 1369, 1370–71 (D.C. Cir. 1998) ("Where a general term follows a list of specific terms, the rule of *ejusdem generis* limits the general term as referring only to items of the same category.").

    The principles applied in *Ermoian* and *Yates* should also settle what Congress meant by "proceeding before Congress" in Section 1515, that is, that Congress used that phrase to refer to proceedings that are tribunal-like. Again, looking at Section 1515 as a

whole, the government must prove that what Mr. Fitzsimons allegedly obstructed was a proceeding "before" Congress, suggesting "an appearance in front of the agency *sitting as a tribunal*" *id.* at 1171 (emphasis added), and a proceeding in which "*parties* are directed to appear," *Ramos*, 537 F.3d at 462–63 (emphasis added). And the proceedings surrounding "Congressional proceeding" in Section 1515 are proceedings before various judges or courts of the United States, a federal grand jury, a federal agency when the proceeding is authorized by law, or an insurance regulatory official, agent, or examiner appointed to "examine the affairs." *See* 18 U.S.C. § 1515(a)(1). All these share qualities of judicial or quasi-judicial qualities, like tribunals or administrative tribunals. They are all "[a] court of justice or other adjudicatory bod[ies]," "court-like decision-making authorit[ies] that resolves disputes, esp. those in which one disputant is a government agency or department; an administrative agency exercising a quasi-judicial function," or "implement legislative policy." *See* TRIBUNAL, BLACK'S LAW DICTIONARY (11th ed. 2019).

Further, the broader context of Section 1512 itself reveals the frequent appearance of "terms 'attendance', 'testimony', 'production', and 'summon[]' when describing an official proceeding," and this also "strongly implies that some formal hearing before a *tribunal* is contemplated." *Ermoian*, 752 F.3d at 1172 (emphasis added).[4]

Moreover, even the title of the offense relates to "Tampering with a witness, victim,

---

[4] Black's Law Dictionary defines a "tribunal" as "[a] court of justice or other adjudicatory body." TRIBUNAL, BLACK'S LAW DICTIONARY (11th ed. 2019). That same definition also gives a sub-definition for an "administrative tribunal" as "[a] court-like decision-making authority that resolves disputes, esp. those in which one disputant is a government agency or department; an administrative agency exercising a quasi-judicial function." Id. It further defines the same as "[a] governmental division established to implement legislative policy." *Id.*

or an informant." *Id.*; *see I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189, 112 S. Ct. 551, 556, 116 L. Ed. 2d 546 (1991) ("the title of a statute or Section can aid in resolving an ambiguity in the legislation's text."). Because this conduct is specifically related to tribunals as defined above, it further adds support to interpreting "official proceeding" to mean some formal tribunal or adjudicative proceeding.

The scheme of Chapter 73 as a whole provides even further evidence that "proceedings" that lack the characteristics of a tribunal, or that have nothing to do with adjudicating or deliberation, fall outside of "proceeding" as Congress used that term in Section 1515. "A statutory provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[,] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."). *See NASDAQ Stock Mkt., LLC v. Sec. & Exch. Comm'n*, 961 F.3d 421, 426 (D.C. Cir. 2020) (quoting *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014)). Here, almost every one of the statutes contained in Chapter 73 proscribes conduct that could obstruct the due administration of law in settings like tribunals, in which facts are adjudicated and deliberated under the law.

Specifically, Sections 1501 through 1509 address conduct toward process servers, extradition agents, officers of the court or jurors, records or process, bail, Congressional inquiries or investigations, "judge, juror, witness, or court officer" (Section 1507). Sections 1513, 1514, and 1514a address retaliatory conduct toward witnesses for attending or testifying in official proceedings or investigations preceding them. Others address investigations that precede such tribunal-like proceedings: Section 1510 deals with

obstruction of criminal investigations; Sections 1516 through 1518 criminalize obstruction of specific types of other investigations. Sections 1519 and 1520 prohibit the destruction, alteration, or falsification of records during a federal investigation, or that relate to corporate audits. Section 1521 relates to retaliation against judges and investigators.

As all of these laws are related to the obstruction of tribunal-like proceedings in the administration of justice (or explicitly relate to investigations that precede such proceedings) and serve to protect participants therein, it follows that in order to prove a violation of Section 1512(c), there must be proof that the "official proceeding" the defendant allegedly obstructed was a proceeding related to the administration of justice in a similar setting.

As such, the Court should conclude that the "official proceeding" — and more specifically, the "proceeding before Congress" — that was allegedly obstructed by Mr. Fitzsimons must relate to a proceeding in which Congress is acting as a tribunal and which related to the administration of justice. In doing so, the Court would be in line with findings of many courts regarding the meaning of "official proceeding" in other contexts. *See, e.g., Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005) (interpreting Section 1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a] *judicial proceeding*" in order to have the "requisite intent to obstruct"); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (considering application of Section 1512 and noting "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place *before judges or grand juries*"); *United States v. Sampson*, 898 F.3d 287, 300 (2d Cir. 2018) (noting Section 1512 "broadly criminalizes various forms of

witness tampering"); *United States v. Young*, 916 F.3d 368, 386 (4th Cir.), cert. denied, 140 S. Ct. 113, 205 L. Ed. 2d 33 (2019) (finding a lack of sufficient evidence to uphold defendant's obstruction of justice convictions because it found the defendant's lies to the FBI were not connected closely enough to a specific official proceeding, specifically a grand jury investigation or proceeding).

In sum, just as the "criminal investigation" in *Ermoian* did not meet the definition of an "official proceeding" under the obstruction of justice statute with the full context in mind, neither do the election certification proceedings meet that same definition here. Though the election certification proceedings may be "official," no one is "before" the Congress in those proceedings; the proceedings entail no formal investigation or consideration of facts; and there is little to no discretion on the part of the Joint Session of Congress and its Presiding Officer. No parties are summoned to attend the proceedings; no witness or evidence is produced, offered or taken; and nothing is adjudicated by Congress. As such, the certification proceedings are nothing like tribunal proceedings, and have nothing in common with the "business done in courts,'" or acts "done by the authority or direction of the court, express or implied.'" *See Ermoian*, 752 F.3d at 1170 ("'Proceeding' is a word much used to express the business done in courts " and "is an act done by the authority or direction of the court, express or implied.") (quoting Black's Law Dictionary commentary, cited *supra*).

B.    *Legislative intent of 1512(c)(2) supports this interpretation*

Again, the text and context of Sections 1512(c)(2) and 1515 make clear that Section 1512(c)(2) does not apply to every set of actions that would qualify as a "proceeding" in the

lay sense, and that it does not apply to proceedings that lack the characteristics of a tribunal convened to adjudicate or deliberate on the administration of justice. As such, the Court need not turn to legislative history to find that Count Three must be dismissed because the counting of electoral votes does not qualify as an "official proceeding" under Section 1515. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."). But that history does support the same conclusion.

1. Congress passed Section 1512 as part of the Victim and Witness Protection Act of 1982.

Section 1512 was originally passed into law as part of the Victim and Witness Protection Act of 1982. *See* Pub. L. 97-291 § 4 (1982). As indicated in the Report of the Senate Judiciary Committee accompanying the bill, "the terms [of Section 1512(a)(1)] are similar to those used by the National Commission on Reform of Federal Criminal Laws," published in 1971.[5] S. Rep. 97-532, at *16 & n.7 (1982) ((citing Final Report of the National Commission on Reform of Federal Criminal Laws (1971).[6]

---

[5] The National Commission on Reform of Federal Criminal Laws was a presidential advisory committee established in 1966 to study, formulate, and recommend legislation to Congress to improve the federal criminal justice system. *See* https://www.nixonlibrary.gov/finding-aids/fg-172-national-commission-reform- federal-criminal-laws-white-house-central-files. The Commission consisted of twelve legislators, judges, and lawyers. *See id.*; *see also* Report at v. The Report itself was subtitled "A Proposed New Federal Criminal Code (Title 18, United States Code)," and consisted of a "proposed revision of Title 18, United States Code as a work basis upon which the Congress may undertake the necessary reform of the substantive federal criminal laws." *Id.* at i.

[6] This is available at https://www.ndcourts.gov/Media/Default/Legal%20Resou rces/legal-research/criminal-code/FinalReport.pdf (hereinafter, "Commission Report").

In particular, as shown in this comparison table, it is apparent that two Sections in the Commission Report, Sections 1321 and 1322, both under the heading "Obstruction of Justice," served as models for the original Section 1512(a) enacted in 1982.

| Commission Report Sections 1321 & 1322 | Original Section 1512(a) (1982) |
| --- | --- |

| | |
|---|---|
| Section 1321(1):<br><br>(1)   Tampering. A person is guilty of a Class C felony if he uses force, threat, deception or bribery:<br><br>   (a)   with intent to influence another's testimony in an *official proceeding*; or<br><br>   (b)   with intent to induce or otherwise cause another:<br><br>      (i)   to withhold any testimony, information, document or thing from an *official proceeding*, whether or not the other person would be legally privileged to do so;<br><br>      (ii)   to violate Section 1323 (Tampering with Physical Evidence);<br><br>      (iii) to elude legal process summoning him to testify in an *official proceeding*; or<br><br>      (iv)  to absent himself from an *official proceeding* to which he has been summoned.<br><br>Section 1322(1):<br><br>(1) Offense. A person is guilty of a Class C felony if, believing another may have information relating to an offense, he deceives such other person or employs force, threat or bribery with intent to *hinder, delay or prevent communication of such information to a law enforcement officer*. . . .<br><br>Commission Report, §§ 1321(1), 1322(1), at 113-14, 116 (emphasis added).[7] | Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—,<br><br>   (1)   influence the testimony of any person in an *official proceeding*;<br><br>   (2) cause or induce any person to—,<br><br>      (A) withhold testimony, or withhold a record, document, or other object, from an *official proceeding*;<br><br>      (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an *official proceeding*;<br><br>      (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an *official proceeding*; or<br><br>      (D)  be absent from an *official proceeding* to which such person has been summoned by legal process; or<br><br>   (3)   *hinder, delay, or prevent the communication to a law enforcement officer* or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be fined not more than $250,000 or imprisoned not more than ten years, or both. Pub. L. 97-291 § 4(a) (1982) (emphasis added). |

---

[7] Section 1323 of the Commission Report, referenced above, provided in relevant part: "A person is guilty of an offense if, believing an official proceeding is pending or about to be instituted or believing process, demand or order has been issued or is about to be issued, he alters, destroys, mutilates, conceals or removes a record, document or thing with intent to impair its veracity or availability in such official proceeding or for the

As shown on the left side of the table above, Section 1321 of the Commission Report, titled "Tampering With Witnesses and Informants in Proceedings," Commission Report at 113, addressed obstruction of "official proceedings." In contrast, Section 1322(1), titled "Tampering with Informants in Criminal Investigations," *id.* at 116, addressed obstruction in investigations and other proceedings *prior to* the institution of an official proceeding.

In parallel on the right side of the table, the first incarnation of subsection 1512(a) tracked the Commission's proposals closely. Subsections 1521(a)(1) and (2) adopted the structure, substance, and much of the specific language of subsection 1321(1) from the Commission's Report (addressing official proceedings), while subsection 1521(a)(3) tracked Section 1322(1) (addressing investigations). Like the Commission's proposed Section 1321, Section 1512(a)(1) and (2) first laid out certain *actus rei* (intimidation, physical force, threats, or misleading conduct), followed by a set of intended results that are nearly identical to the Commission's proposed language. Section 1512(a)(3), in turn, includes the identical language addressing "hinder[ing], delay[ing], or prevent[ing] the communication [of relevant information] to a law enforcement officer" from the Commission's proposal in Section 1322, while omitting any mention of official proceedings. *Compare* Pub. L. 97-291 § 4 (1982), with Commission Report §§ 1321, 1322.

The definitions in the Commission Report confirm this intentional delineation between actions taken to obstruct official proceedings, on the one hand, and actions taken to obstruct investigations prior to the institution of an official proceeding, on the other. "Official proceeding" was defined by the Commission as a proceeding involving the taking

---

purposes of such process, demand or order." Commission Report, § 1323(1).

of evidence:

> a proceeding heard or which may be heard before any government agency or branch or public servant authorized to *take evidence under oath*, including any referee, hearing examiner, commissioner, notary or other person taking testimony or a deposition in connection with any such proceeding

Commission Report, § 109 (ad), at 9 (emphasis added).

In contrast, the Commission's definition of "law enforcement officer," as used in Section 1322(1), confirms that that Section addressed investigations prior to the institution of an official proceeding: "a public servant authorized by law or by a government agency or branch to *conduct or engage in investigations or prosecutions for violations of law*." *Id.* § 109(w), at 8 (emphasis added).

Today, subsections 1512(a)(2) and (b) follow the same structure as the original subsection 1512(a), and Sections 1321 and 1322 in the Commission Report, continuing to differentiate between official proceedings and investigations:[8]

> (a)(2) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

---

[8] Subsection 1512(a)(1) similarly differentiates between intent to obstruct an "official proceeding" versus an investigation with a slightly different structure:

(a)(1) Whoever kills or attempts to kill another person, with intent to—

(A) prevent the attendance or testimony of any person in an *official proceeding*;

(B)  prevent the production of a record, document, or other object, in an *official proceeding*; or

(C)  prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

18 U.S.C. § 1512(a)(1) (emphasis added).

(A)  influence, delay, or prevent the testimony of any person in an *official proceeding*;

(B)  cause or induce any person to—

(i)  withhold testimony, or withhold a record, document, or other object, from an *official proceeding*;

(ii)  alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an *official proceeding*;

(iii)  evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an *official proceeding*; or

(iv)  be absent from an *official proceeding* to which that person has been summoned by legal process; or

(C)  *hinder, delay, or prevent the communication to a law enforcement officer* or judge of the United States of information relating to the commission or possible commission of a federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

. . .

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1)  influence, delay, or prevent the testimony of any person in an *official proceeding*;

(2)  cause or induce any person to—

(A)  withhold testimony, or withhold a record, document, or other object, from an *official proceeding*;

(B)  alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an *official proceeding*;

(C)  evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an *official proceeding*; or

(D)  be absent from an *official proceeding* to which such person has been summoned by legal process; or

(3)  *hinder, delay, or prevent the communication to a law enforcement officer* or judge of the United States of information

> relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release [sic], parole,, [sic] or release pending judicial proceedings;
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(a)(2) & (b) (emphasis added).

This structure and language, as originally adopted from the Commission Report and carried through to the current statute, illustrates Congress's intent to address obstruction of justice both in official proceedings at which evidence is taken, and the gathering of information and evidence in investigations prior to the institution of an official proceeding. In such context, the word "official" is used to differentiate between the periods before and after an investigation has concluded and a formal case has been instituted. Prior to the institution of such an official proceeding, the provisions addressing investigations, such as subsections 1512(a)(2)(C) and (b)(3), apply, while after institution, subsections 1512(a)(2)(A) and (B) and (b)(1) and (2) apply to the official proceedings.

Although Congress did not explicitly adopt the definition of "official proceeding" from the Commission Report, its considered adoption of the same structure and language of the operative sections of the Report, as stated in the Senate Judiciary Committee Report—including the differentiation between obstruction of the administration of justice before and after an investigation is concluded and an official proceeding is instituted— supports limiting the definition of "official proceeding" in Section 1512 to proceedings at which evidence is taken.

  2. <u>Section 1515's definition of "official proceeding" was made law as part of the Victim and Witness Protection Act of 1982.</u>

The legislative history behind Section 1515 provides the further assurances to this

Court that Congress intended to have Section 1515's definition of "official proceeding" apply only to proceedings related to the administration of justice.

Section 1515's definition of "official proceeding" was made law as part of the Victim and Witness Protection Act of 1982. See PUB. L. 97-291, § 4(a), Oct. 12, 1982, 96 Stat. 1252. As reflected in the Senate Judiciary Committee's Report on Senate Bill 2420, the bill as originally proposed created Section 1512 to create "offenses against witnesses, victims, or informants which occur before the witness testifies or the informant communicates with law enforcement officers," and used what was originally intended to be Section 1514 to define the terms used in Section 1512 and 1513, including "official proceeding." S. REP. 97-532 at 14, 22. In discussing the interplay between a proposed "broad residual clause" included within Section 1512 and the definition of "official proceeding" in Section 1514, as reflected in the report, the legislation intended to make it an offense if a person "corruptly, by threats of force, or by any threatening letter or communication, intentionally influences, obstructs, or impedes or attempts to influence, obstruct, or impede the enforcement and prosecution of federal law under which an official proceeding is being conducted, or the exercise of a legislative power of inquiry." *Id.* at 17 (emphasis added). As the report continued, the proposed legislation was

> an outgrowth of congressional recognition of the variety of corrupt methods by which the *proper administration of justice* may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined. In the committee's view, this observation leads to the conclusion that the purpose of preventing an *obstruction or miscarriage of justice* cannot be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses. There must also be protection against the rare type of conduct that is the product of the inventive criminal mind and which also *thwarts justice*. Some examples of such conduct,

actually prosecuted under the current residual clauses, which would probably not be covered in this series without a residual offense clause, are as follows:

(i)     a conspirator arranging to have an unnecessary abdominal operation in order to cause a mistrial of an ongoing trial in which he was a defendant.

(ii)    persons plying the illiterate administrator of an estate with liquor and obtaining documents from him which they then used in an effort to have a *civil case* dismissed.

(iii)   the defendant planting an illegal bottle of liquor on the victim's premises in order to discredit the victim, who was planning on being a *witness against the defendant* in a separate case.

(iv)    a conspiracy to cover up the Watergate burglary and its aftermath by having the central intelligence agency seek to interfere with an ongoing FBI *investigation* of the burglary.

In order to reach such cases, as well as the example previously referred to in which the conduct was found not to come within the scope of the current residual clause, the committee determined to include subsection (a)(3). The committee does not intend that the doctrine of ejusdem generis be applied to limit the coverage of this subsection. Instead, the analysis should be functional in nature to cover conduct the function of which is to tamper with a witness, victim, or informant in order to *frustrate the ends of justice*. For example, a person who induces another to remain silent or to give misleading information to a federal law enforcement officer would be guilty under subsection (a)(3), irrespective of whether he employed deception, intimidation, threat, or force as to the person.

The first branch of the proposed subsection, referring to the 'enforcement and prosecution of federal law' is designed to carry forward the basic coverage in 18 U.S.C. 1503. The latter two branches of the subsection, referring to the 'administration of a law under which an official proceeding is being conducted' and to the 'exercise of a legislative power of inquiry,' are designed to continue the general scope of the final paragraphs of 18 U.S.C. 1505.

*Id.* at 18-19 (emphasis added). Despite this extensive consideration, the proposed "broad residual clause" was ultimately removed from the proposed legislation. *See* 128 CONG.

REC. 26810 (statement by Sen. John Heinz: "Subsection (3) of section 1512(a) of the Senate passed bill, general obstruction of justice residual clause of the intimidation section, was taken out of the bill as beyond the legitimate scope of this witness protection measure. It also is probably duplicative of obstruction of justice statutes already in the books."). However, the proposed definition of "official proceedings" that was part of what was originally intended to be Section 1514 remained intact and moved to its current location in Section 1515. *See id.* at 26807 (showing how amended version of bill moved Section 1514's definitions to Section 1515).

Although the "broad residual clause" in the "official proceeding" definition initially served did not then make it into law, the origin of the definition, particularly that it was introduced into the universe of obstruction statutes as part of an effort to address creative means of frustrating the administration of justice, confirms that it only includes proceedings related to that purpose and not proceedings like the counting of electoral votes.

3.      Congress added subsection 1512(c) as part of the Sarbanes-Oxley Act of 2002.

Congress amended Section 1512 in 2002 to add what is presently subsection 1512(c), the provision under which Mr. Fitzsimons is charged. In doing so, Congress limited the Section to actions affecting "official proceedings" but provided no further clarification as to the scope or meaning of the term. *See* Pub. L. 107-204 § 1102 (2002). *See also* 18 U.S.C. § 1512(c).

Section 1512(c) was passed as part of the Sarbanes- Oxley Act of 2002, "[a]n Act to protect investors by improving the accuracy and reliability of corporate disclosures made

25

pursuant to securities laws, and for other purposes." SARBANES- OXLEY ACT OF 2002,

Pub. L. No. 107-204, 116 Stat. 745. The Section was added in part to ensure that there

would be liability for those who destroyed records before an "official proceeding" had

convened even if they did not foresee one convening (so long as their intent is to ensure

that the records would be unavailable), and even if they acted alone (rather than caused

others to act in ways that obstructed justice), largely in reaction to Arthur Andersen LLP

having evaded criminal liability under Section 1512(b)(2). *See Arthur Andersen LLP v.*

*United States*, 544 U.S. 696, 707-07. The Senate Judiciary Committee report described the

Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons

who defraud investors in publicly traded securities or alter or destroy evidence in *certain*

*Federal investigations*." S. REP. NO. 107-146, at 2 (2002) (emphasis added). The

Committee Report noted that much of Arthur Andersen's document destruction was

"undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting

work related to Enron." *Id.* at 4. Congress was adamant that "[w]hen a person destroys

evidence with the intent of obstructing any type of investigation and the matter is within

the jurisdiction of a federal agency, overly technical legal distinctions should neither

hinder nor prevent prosecution and punishment." *Id.* at 6-7.

　　In short, the Act's preamble and the legislative history shows that Congress Section

1512(c) was aimed particularly at preventing corporations and their employees from

destroying records relevant to federal securities investigations. And not only did the

addition of this subsection not broaden or change the meaning of "proceeding" in Section

1515, but the history of the addition reinforces the notion that 1512 exists to preserve the

integrity of certain types of proceedings, that is, proceedings with characteristics of a

tribunal, at which evidence is taken, and matters are adjudicated or deliberated. This

confirms that proceedings that lack these characteristics, which include the counting of the

electoral votes that took place on January 6, are not "official proceedings."

C.   *The Department of Justice's Criminal Resource Manual supports this interpretation.*

The defense position on the meaning of "official proceeding" is also consistent with

the Department of Justice's own interpretation, as reflected in their Criminal Resource

Manual discussing the application of Section 1512:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.

CRIMINAL RESOURCE MANUAL, CRM 1729, Department of Justice (emphasis added).[9]

D.   *Summary*

The allegation that Mr. Fitzsimons obstructed the certification of the electoral

college vote is not a crime under 18 U.S.C. § 1512(c). Indeed, no court has ever interpreted

an "official proceeding" as that term is used in Section 1512(c) to apply to a ceremonial

function such as the certification of the electoral college vote. The Government is asking

this Court to go well beyond the plain meaning of the term "proceeding," its use in the

grammatical context of the "official proceeding" definition, the broader statutory context,

and the legislative history to allow this prosecution to go forward. Mr. Fitzsimons

---

[9] This is available at https://www.justice.gov/archives/jm/criminal-resource- manual-1729-protection-gov-ernment-processes-tampering-victims-witnesses-or) (last visited 11/28/2021).

respectfully requests that the Court decline the invitation and dismiss Count Three.

**COUNT THREE FAILS TO ALLEGE CONDUCT THAT "OTHERWISE OBSTRUCTS, INFLUENCES, OR IMPEDES ANY OFFICIAL PROCEEDING"**

Count Three fails for a second, separate reason that also reinforces the first (*i.e.*, the argument that the counting of the electoral votes does not qualify as an "official proceeding"). That is, Count Three fails to allege an *actus reus* that falls within 18 U.S.C. § 1512(c)(2). This is a second ground for dismissal of Count Three.

Because Section 1512(c)(2) only prohibits "otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding," only acts that fall within that clause violate the act. And "entering and remaining in the United States Capitol without authority, committing an act of civil disorder, and engaging in disorderly and disruptive conduct," which is what the Superseding Indictment alleges Mr. Fitzsimons did to obstruct, does not fall within that "otherwise" clause.

This is because, again, the "otherwise" clause must be construed in light of 1512(c) as a whole, and the broader context for that provision. Again, Supreme Court case law demonstrates that this is so, as the Department of Justice's own Attorney General recently explained. Relying on *Begay v. United States*, 553 U.S. 137 (2008), and *Yates* (discussed above), the former Attorney General explained:

> [I]t is clear that use of the word 'otherwise' in the residual clause [of Section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision. Unless it serves that purpose, the word 'otherwise' does no work at all and is mere surplusage. [An] interpretation of the residual clause as covering any and all acts that influence a proceeding reads the word 'otherwise' out of the statute altogether. But any proper interpretation of the clause must give effect to the word 'otherwise'; it must do some work.

Memorandum from William Barr to Deputy Attorney General Rod Rosenstein and

Assistant Attorney General Steve Engel of June 8, 2018 (hereinafter "Barr Memo") at 4.[10]

After discussing *Begay* and *Yates*, and how those cases emphasized that "specific examples

enumerated prior to the residual clause are typically read as refining or limiting in some

way the broader catch-all term used in the residual clause," he continued,

> Consequently, under the statute's plain language and structure, the most natural and plausible reading of 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms of obstruction — *i.e.*, impairing the availability or integrity of evidence — but cause this impairment in a different way than the enumerated actions do. Under this construction, then, the "catch all" language in clause (c)(2) encompasses any conduct, even if not specifically described in 1512, that is directed at undermining a proceeding's truth-finding function through actions impairing the integrity and availability of evidence.

*Id.* at 4-5 (emphasis added).[11]

The former Attorney General noted that case law reflects this application of the

---

[10] This is available at https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf (last visited 11/20/21).

[11] Although *Yates* was a plurality opinion, Justice Alito's concurring opinion also supports the former Attorney General's and the Defendants' position. According to Justice Alito, the statute's list of nouns, its list of verbs, and its title all stood out as showing that the statute in question did not reach the conduct of the defendant in that case. *Yates*, 574 U.S. at 549 (Alito, J., concurring). Regarding the nouns, Justice Alito considered the application of both noscitur a sociis and ejusdem generis to find that the term "tangible object" should refer to "something similar to records or documents." *Id.* at 549–50. In this case, Section 1512(c)(1) refers to "a record, document, or other object." There is no allegation that Mr. Fitzsimons interfered with any such item, much less any evidence. Justice Alito then looked at the verbs and noticed some glaring problems trying to apply those verbs to any tangible object. Id. at 551 ("How does one make a false entry in a fish?"). Because there was no evidence interfered with by the Fitzsimons (nor will there ever be), the verbs in Section 1512(c) have no object to reference. Finally, Justice Alito pointed to the title of the statute: "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy" and noted "This too points toward filekeeping, not fish." *Id.* at 552 (emphasis added). As Mr. Fitzsimons has already addressed above, the title of Section 1512 clearly supports a finding that it was not intended to apply to all forms of obstructive conduct.

residual clause as only applying to "attempts to interfere with, or render false, evidence that would become available to a proceeding" or "to prevent the flow of evidence to a proceeding." *Id*. at 5 (citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance); *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation)); *see also e.g. United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (involving false testimony to a grand jury); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (involving intentional false statements to court during a preliminary injunction hearing); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th Cir.2007) (involving a defendant having others falsely claim ownership of a firearm); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) (involving defendant's "attempt[s] to orchestrate" grand jury witness's testimony by sending notes to an attorney who in turn "coached" the witness); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (involving false statements in a court proceeding); *United States v. Pugh*, 945 F.3d 9, 28 (2d Cir. 2019) (involving destruction of several USB drives and deletion of data); *see also Burge*, 711 F.3d at 809 (involving providing false answers to interrogatories in a civil law suit filed by a person seeking damages for mistreatment while in police custody, explaining that §1512(c)(1) "covers obstructive conduct in the form of physical destruction of documents and records" whereas § 1512(c)(2) covers 'otherwise' obstructive behavior to include giving false statements in interrogatories relating to a civil law suit). As the former Attorney General correctly observed, "the natural and plausible reading of 1512(c)(2)" requires some conduct that impairs the integrity and availability of some *evidence.*

This is entirely consistent with the legislative history of Section 1512(c)(2) as noted by the former Attorney General and discussed above. The legislative history of Section 1512(c)(2) "was expressly designed to 'clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records.'" Barr Memo at 5-6 (quoting S. REP. NO. 107-146, at 14-15). Stated differently, "[t]he legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swathes of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibitions on the impairment of evidence." Barr Memo at 6. The former Attorney General also observed that "[r]eading the residual clause as an all-encompassing proscription cannot be reconciled either with the other subsections of § 1512, or with the other obstruction provisions in Title 18 that must be read in *pari passu* with those in § 1512." Barr Memo at 5. If this Court were to interpret Section 1512(c)(2) as the government wants it to — as an all-encompassing catch-all to include something so unique as protesting the election certification proceedings — "clause (c)(2) would render all the specific terms in clause (c)(1) surplusage; moreover, it would swallow up all the specific prohibitions in the remainder of § 1512 — subsections (a), (b), and (d)." *Id*. And, as Mr. Barr continued, "[m]ore than that, it would subsume virtually all other obstruction provisions in Title 18 It is not too much of an  exaggeration to say that, if § 1512(c)(2) can be read as broadly as being proposed, then virtually all Federal obstruction law could be reduced to this single clause." *Id*.; *see also Marx v. General Revenue Corp*., 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

In sum, the canons of construction employed by the Court in *Begay* and *Yates*, the text, structure, and the practical application of Section 1512(c)(2) as demonstrated in caselaw, as well as its legislative history all support a holding that the "otherwise" clause in Section 1512(c)(2) must be construed in a similar vein to the terms that are in clause one. Thus, in order for Count Three to sufficiently allege a violation, it must allege some allegation that Mr. Fitzsimons's conduct undermined a proceeding's "truthfinding function through actions impairing the integrity and availability of evidence." Barr Memo at 4-5. Because no such allegation exists in the Superseding Indictment here (nor can there ever be one), this Court should dismiss Count Three of the Superseding Indictment alleging a violation of Section1512(c)(2).

## SECTION 1512(c)(2) IS UNCONSTITUTIOANLLY VAGUE BECAUSE "CORRUPTLY" IS VAGUE

The Court should dismiss Count Three of the Superseding Indictment for a third and related reason, which is that Section 1512(c)(2) fails to provide constitutionally required notice of what it prohibits, as applied to Congressional proceedings, because what it means to otherwise obstruct, influence, or impede such a proceeding "corruptly" is vague. In the alternative, if there is any construction of "corruptly" that would enable the statute to pass constitutional muster, it is that "corruptly" as used in Section 1512(c)(2) means to act with the intent to obtain an unlawful advantage for oneself or an associate contrary to the due administration of justice. But because the Superseding Indictment against Mr. Fitzsimons fails to allege anything relating to the administration of justice, the Court should dismiss in any case.

In order to comply with the requirements of due process, a statute must give fair

warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). A statute is unconstitutionally vague under the due process clause if "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)) ("[A] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries ... pursue their personal predilections.'"); *Connally v. General Construction Company*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."). The allegations against Mr. Fitzsimons in Count Three of the Superseding Indictment fail in both respects.

A.    *"Corruptly," as used in Section 1512(c)(2), is unconstitutionally vague.*

In *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir. 1991) the Court of Appeals for this Circuit ruled that the word "corruptly" is prone to causing vagueness, in a case concerning Section 1505, which criminalizes

> [w]hoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

Congress later added the definition of "corruptly" now applicable to it via Section 1515(b)), but in *Poindexter*, the court analyzed the text without that context. The court stated that the word "corruptly" in the text "must have some meaning, because otherwise the statute would criminalize all attempts to 'influence' congressional [proceedings] – an absurd result that Congress could not have intended in enacting the statute." *Poindexter*, 951 F.2d at 377 (analyzing application of §1505 as applied to making false statements to Congress).

The court also found that dictionary alone did not make clear what that meaning is. First, there are several dictionary definitions:

> "[C]orruptly" is the adverbial form of the adjective "corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness . . . of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others."

*Id.* at 378 (quoting *United States v. North*, 910 F. 2d 843, 881-82 (D.C. Cir. 1990)). Poindexter argued that, "so defined, 'corruptly' is vague as used in section 1505." *Id.* at 1378. Mr. Fitzsimons argues that, so defined, "corruptly" as used in Section 1512 is as well.

The Court of Appeals acknowledged, and this Court must as well, that "on its face, the word 'corruptly' is vague; that is, in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Id.* at 378. And, just as the court found that "corruptly influencing" a congressional inquiry "does not at all clearly encompass lying to Congress, which is, by way of contrast, clearly a violation of § 1001,"

*id.*, this Court must acknowledge that the conduct alleged in the instant Indictment –
which also would clearly violate another statute (40 U.S.C. § 5104) – does not clearly fall
within "corruptly . . . otherwise obstructing, influencing, or impeding" an official
proceeding, using the dictionary definitions of "corruptly." That is because "[t]he various
dictionary definitions of the adjective 'corrupt'" are themselves vague. *Id.* "Words like
'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific – indeed they may
be less specific – than 'corrupt.'" *Id.* at 378-79. Because of this, the Court of Appeals for
this Circuit found the word "corruptly" as used in Section 1505 "too vague to provide
constitutionally adequate notice that it prohibits lying to the Congress." *Id.* at 379.

Applying the logic of *Poindexter*, the only way the use of the word in Section 1512
can avoid the same fate is if the text or other context "clearly indicates a more specific
meaning of the term 'corruptly,'" and Mr. Fitzsimons's "conduct comes within that
meaning." *Id.* at 379 (considering whether the use of the word, the legislative history of
1505, or judicial gloss on the statute provided a clear indication of a more specific meaning
of the word in that statute, and ultimately concluding that it did not).

In *Poindexter*, the court first considered whether the usage of the word "corruptly"
gave it more definition. *Id.* at 379. The court noted that

> the verb "corrupt" may be used transitively ("A corrupts B," i.e., "A
> causes B to act corruptly") or intransitively ("A corrupts," i.e., "A
> becomes corrupt, depraved, impure, etc."). So too, the adverbial
> form "corruptly" may have either the transitive or the intransitive
> sense. *See* 3 Oxford English Dictionary 974 (2d ed. 1989)
> ("corruptly" may mean either "by means of corruption or bribery,"
> i.e., by means of corrupting another, or acting oneself "in a corrupt
> or depraved manner").

*Id.* at 379. But the court found that this analysis did not evade the vagueness in the word

itself because

> either a transitive or an intransitive interpretation would still be unconstitutionally vague . . . if specific content is not given to the word 'corruptly.' Reading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does reading it to prohibit one from acting 'immorally' or 'improperly' oneself.

*Id*. The same issue is presented here: No matter how "corruptly" is used in Section 1512(c)(2) – transitively or intransitively – the word lacks definition and remains too vague to provide constitutionally-required notice.

> B.   *If "corruptly" has a narrower definition, it means "acting with the intent to obtain an unlawful advantage for [oneself] or an associate" in a tribunal-like forum concerned with the administration of justice.*

If the Court turns to the context surrounding Section 1512(c)(2), legislative history, and judicial gloss, all explored above in the discussion about "official proceeding," it will find at least some evidence of a more specific meaning for "corruptly." That context provides evidence that *if* Congress meant something narrower than "wrongfully" when it used "corruptly" in Section 1512(c)(2), then it meant "to act with the intent to obtain an unlawful advantage for [oneself] or an associate" in a tribunal-like forum concerned with the administration of justice. That is, the context and history of Section 1512(c), show that, in drafting Section 1512(c)(2), if Congress had in mind anything more than the unconstitutionally vague concept of "wrongfulness" when it used "corruptly," Congress had in mind protecting the integrity of proceedings in which parties come "before" tribunal-like bodies that are administering justice from those who act with the intent of interfering with the administration of justice, or the intent of obtaining an unlawful advantage in such fora. *See also United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017) (stating

that pressuring a witness to lie to investigators "falls comfortably within the ambit of the statute"); *United States v. Jones*, 207 F. Supp. 3d 576, 584 (E.D.N.C. 2016) (stating that attempting to cause a federal magistrate judge to compel a phone company to produce text messages to a law enforcement officer for which no law enforcement basis exists is understood to be proscribed by the statute).

Indeed, the definition that the Seventh Circuit's model jury instructions for Section 1512 reflect this understanding of "corruptly," providing that

> A person acts "corruptly" if he or she acts with the purpose of wrongfully impeding the due administration of justice.

Pattern Criminal Jury Instructions of the Seventh Circuit (2020 ed.) at 629 (emphasis added).[12]

And every court of appeals that has considered the definition of "the due administration of justice" has held that it refers to judicial proceedings or investigations. *United States v. Richardson*, 676 F.3d 491, 502-503 (5th Cir. 2012) ("[O]bstructing the due administration of justice means interfering with the procedure of a judicial hearing or trial."); *United States v. Brenson*, 104 F.3d 1267, 1279-80 (11th Cir. 1997) ("due administration of justice" means "judicial procedure" and "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving thoughtful testimony when subpoenaed"); *United States v. Warlick*, 742 F.2d 113, 116 (4th Cir. 1984) (defining obstruction of the "administration of justice" as acts that "thwart the

---

[12] These are available at https://www.ca7.uscourts.gov/pattern-jury-instructions/pattern_criminal_jury_instructions_2020edition.pdf (last visited Nov. 3, 2021).

judicial process"); *United States v. Rasheed*, 663 F.2d 843, 851 (9th Cir. 1981)

("administration of justice" commences with "a specific judicial proceeding"); *see also*

*United States v. Delgado*, 984 F.3d 435, 453 (5th Cir. 2021) ("a person acts 'corruptly'

under [§ 1512(c)(2)] when they act knowingly and dishonestly, with specific intent to

subvert or undermine the due administration of justice"); *United States v. Friske*, 640 F.3d

1288 (11th Cir. 2011) ("corruptly" means acting "with an improper purpose and to engage

in conduct knowingly and dishonestly with the specific intent to subvert, impede or

obstruct the [forfeiture proceeding]. . ." (citing *United States v. Mintmire*, 507 F.3d 1273,

1289 (11th Cir. 2007) (brackets original, emphasis added)).

      Of course, as discussed already, there is no allegation in this case that Mr.

Fitzsimons's conduct had anything to do with interfering with a tribunal, or the flow of

evidence, or anything else characteristic of the administration of justice. As such, the Court

should dismiss Count Three because Section 1512(c)(2) is unconstitutionally vague insofar

as "corruptly" is fatally vague. But even if "corruptly" is not fatally vague because it has

this narrower meaning, the Court should dismiss Count Three for failure to charge an

offense.

## THE RULE OF LENITY PROVIDES CONFIRMATION THAT THE COURT SHOULD DISMISS COUNT THREE

      Finally, if recourse to any of the "traditional tools of statutory construction leaves

any doubt" about the meaning of "corruptly obstructing, influencing, or impeding a

proceeding before Congress," as those terms are used in Section 1512(c)(2), this Court

could also invoke the rule that "ambiguity concerning the ambit of criminal statutes should

be resolved in favor of lenity." *Yates*, 574 U.S. at 547-48 (quoting *Cleveland v. United*

*States*, 531 U.S. 12, 25 (2000), in turn quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). As it was in *Yates*, "[t]hat interpretative principle is relevant here, where the Government urges a reading of [Section 1512(c)(2)] that exposes individuals to 20-year prison sentences" for obstructing any proceeding before Congress in any manner that it deems "corrupt." *Id.* (citing *Liparota v. United States*, 471 U.S. 419, 427 (1985)) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

"In determining the meaning of "corruptly obstructing, influencing, or impeding a proceeding before Congress," as those terms are used in Section 1512, as it was for the Court in interpreting Section 1519 in *Yates*, it would also be "appropriate, before [choosing] the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Id.* (quoting *Cleveland*, 531 U.S. at 25, in turn quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222 (1952)). Because Congress failed to do so, and the government has accused Mr. Fitzsimons such that it is not "clear and definite" that his conduct violates Section 1512(c)(2), this Court should dismiss Count Three of the Superseding Indictment against him.

## CONCLUSION

For all of these reasons, and such others as may be advanced in further briefing on this motion, and a hearing on this matter, Mr. Fitzsimons respectfully requests that the Court dismiss Count Three of the Superseding Indictment.[13]

---

[13] Undersigned counsel borrowed much of the argument herein, with permission,

Respectfully submitted,

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender for the
Eastern District of Pennsylvania

---

from counsel for several defendants also charged with obstruction in the wake of January 6. These include: counsel for codefendants Randy Knowlton (Ronald Sullivan Jr., Esq., T. Brent Mayr, Esq., and Camille Wagner), and Patrick Montgomery (Dani Jahn, Esq.), in Case No. 21-cr-00046-RDM; counsel for Bruno Cua in Case No. 21-cr-00107-RDM (Jonathan Jeffress, Esq., and William E. Zapf, Esq., of KaiserDillon PLLC); and counsel for Ethan Nordean in Case No. 21-cr-175-TJK (David B. Smith, Esq., and Nicholas D. Smith, Esq., of David B Smith PLLC).

## **CERTIFICATE OF SERVICE**

I, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the foregoing Defendant's Motion for Transfer to be served by Electronic Case Filing ("ECF") upon Brandon Regan and Puja Bhatia, Assistant United States Attorneys, United States Attorney's Office, 555 4th St., NW, Washington, DC 20530.

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

DATE:       January 6, 2022