**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-cr-158 (RC)** |
| | : | |
| **KYLE FITZSIMONS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S NOTICE AND MOTION TO ADMIT EVIDENCE AS INTRINSIC EVIDENCE OR, IN THE ALTERNATIVE, AS "OTHER ACTS" EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

Kyle Fitzsimons was among the rioters violently assaulting law enforcement officers at the United States Capitol on January 6, 2021. He was under no delusion that he was part of a lawful, orderly protest that was encouraged and welcomed by the uniformed police that day. To the contrary, his goal was to subvert the peaceful transfer of power and prevent Congress from certifying the Electoral College count. As part of this effort, Fitzsimons violently assaulted uniformed police officers defending an entrance to the Capitol.

The United States, by and through its counsel, the United States Attorney for the District of Columbia, hereby provides notice of its intent to introduce evidence described herein as intrinsic evidence relevant to the charges in the superseding indictment, and moves *in limine* for a ruling on the admissibility of such evidence as intrinsic evidence. In the alternative, the Government also hereby provides notice of its intent to introduce this "other acts" evidence to prove Fitzsimons' intent, knowledge, and lack of mistake or accident in his actions during the riot at the U.S. Capitol on January 6, 2021. *See* Fed. R. Evid. 404(b)(2).[1]

---

[1] Although the Government is providing certain descriptions and specific examples of such evidence in this notice, this filing is intended to satisfy the Government's obligation under Rule 404(b) to provide notice of the "general nature" of the crimes, wrongs, or other acts evidence that

**FACTUAL BACKGROUND**

One of the most violent confrontations on January 6 occurred near an entrance to the Capitol Building in the area known as the Lower West Terrace ("LWT"). On January 6, 2021, the construction of the inaugural stage converted the stairway into a 10-foot-wide tunnel that was approximately 15 feet long. The LWT was the scene of one of the most violent confrontations between rioters and members of the U.S. Capitol Police, assisted by officers from the District of Columbia Metropolitan Police Department ("MPD"), who were arrayed inside the doorway and guarding the entrance.

The violent and physical battle for control over the LWT entrance began at approximately 2:42 pm, and continued for over two hours, during which time rioters repeatedly assaulted, threatened, pushed, sprayed, and beat law enforcement officers. The battle for the LWT entrance involved intense hand-to-hand combat, and some of the most violent acts against law enforcement, including the abduction and tasering of MPD Officer Michael Fanone and the assault of Officer Daniel Hodges. During this battle, the vastly outnumbered officers were assaulted with all manner of objects and weapons, receiving blow after blow from rioters taking turns assaulting them, all in a concerted effort to breach the doorway to the basement area of the Capitol, disrupt the certification of the Electoral College vote by force.

---

the Government intends to admit at trial, and is not an exclusive list of the specific pieces of evidence that the Government may admit in support of these areas of activity. Fed. R. Evid. 404(b)(2)(A). The defendant should also be on notice that all evidence produced to the defendant, as well as all statements disclosed during discovery, may be offered in the trial of this case, as intrinsic evidence or under Rule 404(b). Further, because the Government continues to investigate, uncover possible witnesses, review evidence, and prepare for trial, the Government reserves the right to supplement and amend this notice as pre-trial investigatory developments dictate.

From approximately 3:45 pm to 4:30 pm, Fitzsimons was one of the rioters violently attacking officers defending the LWT tunnel. As he entered the tunnel, Fitzsimons grabbed the gas mask from Officer P.N. and pulled it out of position, as another rioter sprayed P.N. in the face with a chemical agent.

Officer A.G., stationed in the archway, observed Fitzsimons fighting with another officer, who fell down. Fitzsimons attempted to drag the officer into the crowd and A.G. pulled the officer back to the police line. Fitzsimons then grabbed and held A.G.'s shoulder pad and tried to grab and take away his shield. A.G. slipped on shields that were laying on the ground, and struck Fitzsimons with his baton and kicked Fitzsimons, attempting to break free, but Fitzsimons refused to let go. A.G. was about to use his firearm on Fitzsimons when A.G. struck Fitzsimons one last time on the arm/wrist area, causing Fitzsimons to release his grip.

Fitzsimons got up and moved towards the middle of the archway; he lowered his shoulder and charged at the line of officers. After officers fought him off, Fitzsimons retreated back into the crowd.

After the riot, Fitzsimons was identified in part based on an interview he gave to the press pictures, along with photographs he provided which documented presence at the Capitol on January 6. Fitzsimons also called into a local town meeting and admitted his participation.

As law enforcement continued to investigate Fitzsimons, it obtained evidence that prior to January 6, 2021, Fitzsimons made several angry and threatening calls to Congressional offices representing his district, including the following:

- On December 17, 2019, Fitzsimons called the Washington, D.C. office of a Congresswoman and spoke to a staff member. Fitzsimons yelled the entire time and was very aggressive during the call. Referring to the then pending first impeachment trial of former President Trump, Fitzsimons said that if the Congresswoman voted for impeachment he would "give it to her hard" and said "we're coming for her." Later that same day the defendant also left a voicemail at this Congressman's local office expressing a similar sentiment (described further in Exhibit A, attached, and Exhibit C, which will be provided to the Court separately.).

- On March 19, 2020, Fitzsimons called the Congresswoman's office and spoke to a staff member. During the call, Fitzsimons demanded the telephone number for Chinese President, Xi Jinping, and when the staff member said he/she could not provide it, Fitzsimons became angry. Fitzsimons identified himself as "Kyle Fitzsimons, the man who wants to start a war." Fitzsimons said he would go out on the streets and start talking to Chinese people he saw." Fitzsimons' tone was again noted to be very aggressive and angry.

- On December 15, 2020, Fitzsimons called the Congresswoman's office and spoke to a staff member. Fitzsimons called the election a "disgusting show of power by the elites" and told the Congresswomen "do your job."

- On December 18, 2020, Fitzsimons called the Congresswoman's office and spoke with a staff member. Fitzsimons said that the electoral college vote "is corrupt" and "total garbage." He urged the Congresswoman to dispute the election results in January. He stated that Biden is a corrupt skeleton and that "this is going to be Civil War."

- On December 20, 2020, Fitzsimons called the office of a Congressman and left a voicemail. In the message, Fitzsimons asked for the Congressman's "courage" to dispute what he referred to as "a garbage election." Fitzsimons asked if the Congressman had the "courage to object" on the 6th, and said that he "had the courage to object to my entire life going forward if this is done to me." *See* Exhibit and D..

- On December 21, 2020, Fitzsimons called the Congresswoman's office and spoke with a staff member. Fitzsimons said that President Biden "is owned by Chinese communists" and "they put him into office by election fraud."

In many of these calls, Fitzsimons identified himself directly, and Fitzsimons identity as the caller is also evidenced by the telephone number he called from, as well as the staff member recognizing his voice from frequent calls.

Fitzsimons was arrested on February 4, 2021. On February 26, 2021, a grand jury returned a ten-count indictment charging the Defendant with the following charges: 18 U.S.C. § 231(a)(3) (civil disorder) (Counts One and Two); 18 U.S.C. §§ 1512(c)(2), 2 (obstruction of an official proceeding) (Count Three); 18 U.S.C. § 111(a)(1) and (b) (assaulting, resisting, or impeding certain officers and inflicting bodily injury) (Counts Four and Five); 18 U.S.C. §§ 1752(a)(1), (2) and (4) (entering and remaining in a restricted building or grounds, disorderly and disruptive

conduct in a restricted building or grounds, and engaging in physical violence in a restricted building or grounds) (Counts Six, Seven and Eight); and 40 U.S.C. §§ 5104(e)(2)(D) and (F) (disorderly and disruptive conduct and act of physical violence in the capitol grounds of buildings). *See* ECF No. 5. On November 10, 2021, the grand jury returned a superseding indictment that updated the charging language of certain counts but made no other substantive changes. *See* ECF No. 50.

The defendant pleaded not guilty and trial is scheduled for June 13, 2022.

## ARGUMENT

Through this Notice and Motion, the Government provides notice of its intent to admit evidence of Fitzsimons' calls to Congressional staff offices described above as well as his December 24, 2020 Facebook post. The Government submits that these statement are intrinsic to the crimes charged in the superseding indictment and also serve to establish, among other things, Fitzsimons' intent, knowledge, and lack of mistake or accident.

### I. Evidence of Defendant's Intent to Obstruct the Certification of the Election Intrinsic Evidence of his Crimes

Direct evidence of a fact in issue is considered intrinsic to the offense and is admissible at trial. *See United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003). Such intrinsic evidence is distinguishable from character evidence, which is, of course, not properly admitted to prove that a person acted in accordance with that character. Federal Rule of Evidence 404(a)(1), 404(b)(1).

Here, Fitzsimons is charged with, among other things, Obstruction of an Official Proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2. The elements of this offense are: 1) the defendant attempted to or did obstruct or impede any official proceeding; and 2) the defendant acted corruptly. *See* 18 U.S.C. § 1512(c)(2); The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit at § 1512(c)(2). To establish the first element,

the Government will have to prove that Fitzsimons' conduct on January 6 was part of an effort obstruct the certification, or to aid and abet others to do so. In other words, for this particular charge, the Government will have to show that his attacks on the police were not just motivated by a hatred for the police officers, but were part of an effort by Fitzsimons and other rioters to get inside the Capitol to stop or delay the certification.

Fitzsimons' calls to Congressional offices in December 2020[2] are direct evidence of his motive and intent on January 6. Not only do Fitzsimons' words demonstrate his belief that the election was fraudulent, but his words, in combination with his tone and demeanor, demonstrate a level of hostility and anger that connects this belief to his decision to engage in violence on January 6. Similarly, Fitzsimons' Facebook message demonstrates the link in his mind between what he perceived of as a "stolen election" and his desire to be in Washington, D.C. on January 6. The evidence is thus relevant and admissible as intrinsic evidence of his intent to obstruct the certification on January 6.

**II. Other Acts Evidence is Admissible to Prove Intent and Absence of Mistake or Accident**

To the extent they are not intrinsic evidence, all of Fitzsimons' calls to Congressional offices, as well as his Facebook message, are admissible under Fed. R. Evid. 404(b) as evidence of motive, intent and absence of mistake or accident. As noted above, the Facebook message and his December 2020 calls demonstrate Fitzsimons' motive and intent to interfere with the certification on January 6. But this evidence, along with Fitzsimons' pre-election calls to Congressional offices, also demonstrate Fitzsimons' hostility towards the Government, in particular Congress, and his belief that threats and violence are appropriate means to pursue

[2] The Government does not contend that Fitzsimons' December 2019 and March 2020 calls are part of intrinsic evidence, but as discussed below, they are admissible under Rule 404(b).

political goals. Because this evidence is not being offered as simple propensity evidence, but because it tends to show that Fitzsimons' violence was part of an effort to influence or affect the Government's conduct, it is admissible under Rule 404(b).

**a. Legal Principles**

Evidence of another crime, wrong, or act, is admissible provided it is not used to prove a person's character, to show propensity to commit the crime or act in a certain way. As the D.C. Circuit has summarized:

> Federal Rule of Evidence 404(b) authorizes admission of "[e]vidence of other crimes, wrongs, or acts" provided it is offered not "to prove the character of a person in order to show action in conformity therewith" but rather "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010).

Other acts evidence is properly admissible in the government's case-in-chief to anticipate a defendant's likely defense of lack of intent or knowledge; it need not be reserved for cross-examination or rebuttal. *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."), *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985) ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is a lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may take the defendant at his word and introduce the evidence in its case-in-chief"), *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge

before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

A two-pronged test determines whether evidence of "other acts" is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) ("A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity [to commit crime]?"). Second, the evidence is subject to the balancing test of Rule 403, so that it is inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Miller*, 895 F.2d at 1435; *see also United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013).

**b. Fitzsimons' Calls and Comments are Probative of Motive, Intent and Not Unduly Prejudicial**

With respect to the first factor, it is significant that, "under Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *Miller*, 895 F.2d at 1436 (emphasis in original). In other words, Rule 404(b) "is a rule of inclusion rather than exclusion" and it is "quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Douglas*, 482 F.3d at 596; *United States v. Bowie*, 232 F.3d 923, 929-30 (D.C. Cir. 2000), *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*), *United States v. Lawson*, 410 F.3d 735, 740 (D.C. Cir. 2005). The D.C. Circuit previously observed, "[o]nly one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more

likely than men generally to have committed the act in question." *Miller*, 895 F.2d at 1436 (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[8], at 404-52 (1989)).

Here, the proffered evidence is not offered generally to prove Fitzsimons' general character, but specifically to show Fitzsimons' hostility towards Congress and his willingness to use threats, including threats of violence in pursuit of his political beliefs. Fitzsimons' aggressive tone and literal threat to "give it to her hard" if the Congresswoman voted differently than he wanted, or his angry threats to "start a war" by harassing Chinese people, demonstrates Fitzsimons' view that threats are an appropriate part of political discourse, and helps explain why he believed he was justified in attacking the police defending the Capitol on January 6. Fitzsimons references to "Civil War" and his invocation of "my entire life going forward" demonstrate Fitzsimons' belief in an existential threat that justified his resort to violence. In the context of this case, this is not merely angry hyperbole; it is evidence of his motive and intent to obstruct on January 6. *See United States v. Duran*, 884 F. Supp. 558, 562 (D.D.C. 1995) (threatening statements to friends and family regarding the President and the United States Government, as well as threatening statement to office of U.S. Senator after passage of the Crime Bill, admissible under Rule 404(b) to show motive and intent to kill the President).

With respect to the second factor, the proffered evidence is not unfairly prejudicial. The D.C. Circuit has emphasized that exclusion of otherwise relevant evidence is not appropriate if the evidence is merely prejudicial; the prejudice must be "unfair." *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (internal quotation marks omitted). In close cases, the rule tilts toward admission. *See United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) ("[T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship

to the offense charged.") (internal quotation marks omitted). The proffered evidence consists of recordings and witnesses testifying about Fitzsimons' statements. There is nothing disturbing or shocking about it, and thus its prejudicial effect does not "substantially outweigh" its probative value.

In any case, any prejudice that may result from introduction of Fitzsimons' statements may be cured by a proper limiting instruction. As this Court has recognized, "[t]he D.C. Circuit has consistently minimized the residual risk of prejudice [from 404(b) evidence] not by exclusion, but by issuing limiting instructions to the jury." *United States v. Young*, No. 12-CR-0042 (BAH), 2013 WL 12430550, at *6 (D.D.C. July 22, 2013) (citing cases). The Court can instruct the jury to consider evidence of Fitzsimons' calls and Facebook comments only in relation to his motive, intent, and lack of mistake or accident. When a clear limiting instruction is provided to a jury, "'it must be presumed that the jury conscientiously observed it.'" *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 367 (1963) (quoting *United States v. Harris*, 211 F.2d 656, 659 (7th Cir. 1954)). Accordingly, the Government submits that the Court should – consistent with the general rule of inclusion in such instances – permit testimony regarding this probative, relevant evidence, and guard against any undue prejudice by providing a limiting instruction.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Government respectfully provides the Court and the defendant notice of its intent to introduce evidence of the phone calls from Fitzsimons described

above and his December 24, 2020 Facebook comment as intrinsic evidence and/or other acts evidence pursuant to Rule 404(b).

Dated March 7, 2022.

Respectfully Submitted,

For the United States:

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Robert Juman*
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailed
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov

*/s/ Brandon Regan*
Brandon Regan
Assistant United States Attorney
MD Attorney No. 1312190043
United States Attorney's Office,
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (202)252-7759
E-mail: brandon.regan@usdoj.gov



Law Enforcement Sensitive / For Official Use Only

# UNITED STATES CAPITOL POLICE

## Investigations Division

## REPORT OF INVESTIGATION



| Victim/Complainant: Rep. Chellie Pingree (ME) | Subject: FITZSIMONS, Kyle Bartholemew | | Date of Occurrence: December 17, 2019 | Date First Reported: December 17, 2019 |
|---|---|---|---|---|
| Type of Case: Direction of Interest | | CFN: N/A | CCN: N/A | USCP ID Case #: 2019-008785 |

**INITIAL REPORT**

On 12/17/19 USCP TAS was advised by staff for Rep. Pingree of a concerning call and voicemail from phone number to the DC office on 12/17/19. Staff provided the following email statement:

*****begin staff email contents*****

“Good morning, Our Washington office took a threatening call from Kyle Fitzsimons of Lebanon, Maine, today. He began by asking the staffer if she had seen the news and how people all over the nation were rebuking the impeachment, but the call quickly escalated. He said that if Chellie votes for impeachment, he was going to “give it to her hard” and that “we’re coming for her.” He yelled the entire time and was very aggressive. He also mentioned quite a few times that the deep state is real. He was calling from - . I see that he is on the local Cannabis Committee, has testified at pro-gun events, and is 36-years old. We are anticipating a protest outside our office tomorrow, so if you are able to provide a photo, that could be helpful. I know you must be VERY busy!”

*****end contents*****

Later on 12/17/19 staff for Rep. Pingree reported a voicemail from the same phone number which was left for the Portland, ME district office. Staff provided a digital copy of the voicemail which contained the following statements:

*****begin transcript*****

"Hi this is a message from a concerned constituent in the first district of Maine. I live in Lebanon. My name is Kyle Fitzsimons. . I am disgusted with the democrats witch hunt of the president, and I want Chellie to think long and hard about her vote as it is exposed that the FBI abused the FISA process to spy on American citizens. You better think about that before you toss your vote down the hole. Pingree is an old name in Maine. You own a lot of land upstate. But guess what, we'll swap you out in a heartbeat. You're a loser. Absolute heartbeat. Think about your vote."

*****end *****

**DATABASE CHECKS**

LE database search of the phone number revealed a subscriber of Kyle FITZSIMONS and revealed the following personal identifiers: DOB, SSN and address.

USCP RMS and PIX searches of FITZSIMONS were negative for prior contact.

WALES / NCIC / FBI III check disclosed that FITZSIMONS has no current wants / warrants and the following criminal history:

- 2008-10-16: unlawfully dealing fireworks, fleeing, reckless driving, DWAI

LINX checks of FITZSIMONS revealed the following:

- Putnam Co. S.D. - arrest in Oct. 2008 - FITZSIMONS was speeding when Officer attempted a traffic stop. Subject fled eventually crashing into a wall. Vehicle contained alcohol and marijuana.

SA Wilson received a photo from Magloclen and created a photo sheet of FITZSIMONS.



*This report is the property of the United States Capitol Police. Neither the document nor its contents may be disseminated to persons or organizations outside the US Capitol Police without the express written permission of a designated Command Official, the Duty Watch Commander, or an official of the Investigations Division.*

**EXHIBIT A**

**OPEN SOURCE RESEARCH**
Babel Street searches for FITZSIMONS were negative for additional information.

Facebook search for FITZSIMONS revealed his profile page (https://www.facebook.com/
No threats or concerning posts were visible on the page at the time of review.

Google search for FITZSIMONS revealed the following:

- https://www.lebanon-me.org/cannabis-committee - city website identifying him as a member of the "Cannabis Committee"
- https://www.foxbangor.com/news/item/47844-hundreds-testify-at-gun-bill-hearings/ - Quote from Kyle which says he is a gun owner.

**DISPOSITION**
SA Wilson updated congressional staff and provided a photo of FITZSIMONS.

SA Wilson recommended the case be closed and the information be retained for future use.

---

**SUPPLEMENTAL REPORT**
On 03/19/20 USCP TAS received the following email from Rep. Pingree's staff regarding FITZSIMONS:
*****begin staff email contents*****
"Good afternoon, My colleague just took a difficult call from Kyle Fitzsimons of Lebanon, Maine. You have been notified about him in the past. He certainly sounds unhinged, and it is not helped by the administration referring to this as the Chinese virus… "I just took a concerning call from one our friends on the spreadsheet, Kyle Fitzsimons. He called in demanding that I give him the phone number for President Xi Jinping, and when I was trying to explain that I didn't have that information but I was happy to help him with another issue, he escalated very quickly. He wants a personal apology from President Xi, and if we don't get him that number, he's going to "go out on the streets and start talking to the Chinese people that I see." He said many times that he wanted to start a war and when I asked him for a name, he said "This is Kyle Fitzsimons, the man who wants to start a war." He was aggressive and angry, and even taunted me a little bit. When he said he was going to start talking to Chinese people in Maine, he said things like "What do you think about that, huh?" I got the feeling he was trying to goad me into a fight. [Staff member] DC staffer He is a gun rights advocate. Not sure if local police or Maine State Police are aware of him."
*****end contents*****

**DISPOSITION**
SA Wilson updated congressional staff.

Case remains CLOSED.

[end report]

| CASE STATUS: ☐ OPEN ☒ CLOSED ☐ SUSPENDED ☐ OTHER: | | |
|---|---|---|
| INVESTIGATOR:<br>SA Sean Wilson | SIGNATURE: | DATE:<br>03/03/2022 |
| SUPERVISOR:<br>SSA Joseph McAtee | SIGNATURE: | DATE:<br>03/03/2022 |



*This report is the property of the United States Capitol Police.*
*Neither the document nor its contents may be disseminated to persons or organizations outside the US Capitol Police without the express written permission of a designated Command Official, the Duty Watch Commander, or an official of the Investigations Division.*

**-EXHIBIT A**




Law Enforcement Sensitive / For Official Use Only

# UNITED STATES CAPITOL POLICE
## Investigations Division

## REPORT OF INVESTIGATION




| Victim/Complainant: Rep. Jared Golden (ME) | Subject: FITZSIMONS, Kyle Bartholemew | Date of Occurrence: December 17, 2019 | Date First Reported: December 17, 2019 |
|---|---|---|---|
| Type of Case: Direction of Interest | CFN: N/A | CCN: N/A | USCP ID Case #: 2019-008785 |

**INITIAL REPORT**
On 12/29/2020, USCP TAS was advised by congressional staff for Rep. Golden of a concerning voicemail from phone number to the Caribou, ME district office which was left at approximately 4:06pm on the same day as reported. Staff provided an audio file of the voicemail which contained the following statements:
*****begin voicemail contents*****
Mr. Jared Golden, or staffer listening, I am a constituent of Maine, my name is Kyle Fitzsimons. I live at in Lebanon. I am asking for your courage sir. Courage, to dispute what we all know is a garbage election. Will you have the courage to object on the 6th? Cause I certainly have the courage to object to my life going forward if this is done to me. My name is Kyle Fitzsimons and I'll be in DC on the 6th. Enjoy your day.
***end contents***

**DATABASE CHECKS**
On 03/04/2021 IA Horan conducted background checks for FITZSIMONS which revealed the following:
USCP RMS: 2019-008785
USCP PD-76: Negative
USCP NOI: Negative
PIX: Negative
LINX: No new information since last check
WALES / NCIC / FBI III:
- 2008-10-16: unlawfully dealing fireworks, fleeing, reckless driving, DWAI

**OPEN SOURCE RESEARCH**
On 03/24/2021 SA O'Toole conducted open source research which revealed numerous results regarding FITZSIMON's arrest due to his participation in the January 6 h riots at the US Capitol building.

**ADDITONAL NOTES**
On 3/24/2021 SA O'Toole forwarded findings to USCP/FBI TFOs.

**DISPOSITION**
On 4/08/2021 SSA Pezzuti advised that staff was updated regarding the above.

SA O'Toole recommended the case be closed and retained.

[end report]

| CASE STATUS: ☐ OPEN ☒ CLOSED ☐ SUSPENDED ☐ OTHER: | | |
|---|---|---|
| INVESTIGATOR: SA Sean Wilson | SIGNATURE: | DATE: 03/03/2022 |
| SUPERVISOR: SSA Joseph McAtee | SIGNATURE: | DATE: 03/03/2022 |



*This report is the property of the United States Capitol Police.*
*Neither the document nor its contents may be disseminated to persons or organizations outside the US Capitol Police without the express written permission of a designated Command Official, the Duty Watch Commander, or an official of the Investigations Division.*

**EXHIBIT B**

# EXHIBIT C
# Recording of 12/17/19 Voicemail

# EXHIBIT D
# Recording of 12/29/20 Voicemail