**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **V.** | **:** | **CRIMINAL NUMBER 21-158 (RC)** |
| | **:** | |
| | **:** | |
| **KYLE FITZSIMONS** | **:** | |

## <u>O R D E R</u>

    **AND NOW**, this        day of              , 2022, upon consideration of

the government's Motion *in limine* to Admit Evidence as intrinsic or under Federal Rules of

Evidence 404(b), and defendant Kyle Fitzsimons's response thereto, it is hereby **ORDERED**

that the government's motion is **DENIED**.

                          **BY THE COURT:**

                          _____
                          **HONORABLE RUDOLPH CONTRERAS**
                          **United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 21-158 (RC)** |
| | : | |
| | : | |
| **KYLE FITZSIMONS** | : | |

**DEFENDANT'S RESPONSE
TO THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
<u>EVIDENCE AS INTRINSIC OR UNDER FEDERAL RULES OF EVIDENCE 404(b)</u>**

The government has filed a Motion *in limine* seeking to admit a vast array of evidence as intrinsic, or in the alternative, pursuant to Federal Rules of Evidence 404(b). The evidence includes several calls to Congressional offices as well as a December 24, 2020 Facebook post. The government contends this evidence directly proves a fact at issue and also establishes intent, knowledge, and lack of mistake. However, the government's argument that the evidence is intrinsic is contrary to D.C. Circuit law. Further, the evidence is irrelevant to Mr. Fitzsimons's intent on January 6, 2021, and the danger of unfair prejudice to Mr. Fitzsimons in this highly politicized and emotionally charged trial far outweighs any probative value. The government's Motion must therefore be denied in its entirety.

**I.      BACKGROUND**

Kyle Fitzsimons was arrested in Maine on February 4, 2021, after an arrest warrant was issued in Washington, D.C., for his conduct at the Capitol on January 6, 2021. According to security footage from the Capitol, Mr. Fitzsimons can be seen pushing and grabbing against officers who were holding a police line in an arched entranceway on the lower west terrace of the Capitol Building. As a result of this conduct, Mr. Fitzsimons is accused in a ten-count indictment

with 18 U.S.C. § 231(a)(3) (civil disorder) (Counts One and Two); 18 U.S.C. §§ 1512(c)(2), 2 (obstruction of an official proceeding) (Count Three); 18 U.S.C. § 111(a)(1) and (b) (assaulting, resisting, or impeding certain officers and inflicting bodily injury) (Counts Four and Five); 18 U.S.C. §§ 1752(a)(1), (2) and (4) (entering and remaining in a restricted building or grounds, disorderly and disruptive conduct in a restricted building or grounds, and engaging in physical violence in a restricted building or grounds) (Counts Six, Seven and Eight); and 40 U.S.C. §§ 5104(e)(2)(D) and (F) (disorderly and disruptive conduct and act of physical violence in the capitol grounds of buildings) (Counts Nine and Ten). *See* ECF No. 5.

## II.   DISCUSSION

In this Circuit, evidence is considered "intrinsic" when it is either "part of the charged offense" or an uncharged act "performed contemporaneously with the charged crime ... [that] facilitate[s] the commission of the charged crime." *United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000); *see id*. at 28–29 (rejecting the approach of other Circuits that define intrinsic evidence to encompass any evidence that "explains the circumstances" or "completes the story" as an impermissibly low threshold that would allow for Rule 404(b) to be circumvented on a "flimsy basis."). Accordingly, any evidence of the crimes charged in Mr. Fitzsimons's superseding indictment or evidence of other acts that occurred contemporaneously and to further the charged offenses can be considered intrinsic and is exempt from the Rule 404(b) analysis. *See id*. at 927 ("Evidence that constitutes the very crime being prosecuted is not [prior bad act evidence]."); *see, e.g., United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) (statement that Defendant " '[has] a gun on him now' constituted intrinsic, admissible evidence on [a] felon-in-possession charge" (alteration in original)); *United States v. Coughlin*, 821 F. Supp. 2d 35, 45 (D.D.C. 2011) (determining that evidence of the defendant's medical and athletic activities

constituted intrinsic evidence of the charged offense of making a fraudulent claim to the September 11th Victim Compensation Fund). However, intrinsic evidence remains subject to a Rule 403 balancing analysis which requires evidence be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by . . . needless presentation of cumulative evidence." *United States v. Long*, 328 F.3d 655, 662 (D.C. Cir. 2003); Fed. R. Evid. 403.

Federal Rule of Evidence 404(b) applies to extrinsic evidence of other crimes or bad acts. "Convictions are supposed to rest on evidence relevant to the crime charged, not on evidence of other, unrelated bad acts suggesting nothing more than a tendency or propensity to engage in criminality." *United States v. Sheffield*, 832 F.3d 296, 307 (D.C. Cir. 2016) (quoting *United States v. McGill*, 815 F.3d 846, 878 (D.C. Cir. 2016)). Thus, Rule 404(b) precludes the admission of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith." The rule against introducing character evidence, also known as "propensity evidence," is not based on the idea that the evidence of a defendant's character is irrelevant. On the contrary, it is based "on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds." *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985); *see also Michelson v. United States*, 335 U.S. 469, 475-76 (1948) (finding that prior bad acts evidence offered to show propensity "is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge").

A two-step test governs admissibility of evidence in connection with Rule 404(b) in the D.C. Circuit. *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1989), cert. denied, 498

U.S. 825 (1990). First, the Court must determine whether the evidence is "probative of some material issue other than character." *United States v. Clark*, 24 F.3d 257, 264 (D.C. Cir. 1994). Second, if the Court finds the evidence relevant to a non-character issue, it still will be excluded if it is inadmissible under any other "general strictures limiting admissibility." *Miller*, 895 F.2d at 1435. Most important among these strictures is Rule 403. *United States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992). Under Rule 403, prior crimes evidence will be excluded if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by . . . needless presentation of cumulative evidence." *Long*, 328 F.3d at 662; Fed. R. Evid. 403. The government fails both steps of the test in this case.

A.      **The Government's Evidence Is Not Intrinsic**

As detailed in the government's motion *in limine*, the government has moved for admission of four calls allegedly made by Mr. Fitzsimons in December of 2020 as intrinsic evidence. This Circuit has a heightened standard for considering evidence as intrinsic. *See Bowie*, 232 F.3d at 928–29. Uncharged acts are only intrinsic if they are "part of the charged offense" or "performed contemporaneously with the charged crime […] if they facilitate the commission of the charged crime." *Id.* at 928.

Here, the government's evidence fails to meet the standard articulated in *Bowie*. The calls made by Mr. Fitzsimons are not part of the charged offense, were not performed contemporaneously with the charged crime, and did not facilitate the charged crime. The phone calls merely provide background information and "explain the circumstances" for why Mr. Fitzsimons might have attended the January 6 rally. Evidence that "explains the circumstances" or "completes the story" does not meet the D.C. Circuit's standard for admitting intrinsic evidence. *Id.*

Significantly, admitting evidence that merely "completes the story" would allow the government to unjustifiably bypass Rule 404(b). "We see no reason to relieve the government and the district court from the obligation of selecting from the myriad of non-propensity purposes available to complete most any story." *Id*. at 929. The government is attempting to do exactly what this Circuit attempts to avoid—circumvent the strictures of 404(b). For these reasons, the December 2020 phone calls are not intrinsic, and as explained *infra*, the government's evidence cannot meet the requirements of 404(b).

**B.      The Government's Evidence is Not Probative of a Material Issue Pursuant to Federal Rule of Evidence 404(b)**

In the alternative, the government seeks to introduce the four December 2020 phone calls pursuant to Federal Rule of Evidence 404(b). Also pursuant to Rule 404(b), the government seeks to introduce a December 19, 2019 phone call to a congresswoman discussing President Trump's impeachment trial and a March 19, 2020 phone call during which Mr. Fitzsimons seeks the phone number for Chinese President Xi Jinping. Finally, the government attempts to introduce a December 24, 2020 Facebook post in the Lebanon Maine Truth Seekers page from an unknown person sharing an alleged conversation with Mr. Fitzsimons.

As to the first factor in determining admissibility under Rule 404(b), the Court must determine whether the evidence is "probative of some material issue other than character." *United States v. Clark*, 24 F.3d 257, 264 (D.C. Cir. 1994).  The proponent is required to "identify a specific purpose that 'is of consequence in determining the action.'" *Id.* (quoting FED. R. EVID. 401(b)).

The government offers evidence of Mr. Fitzsimons's phone calls and Facebook post as evidence of his intent to obstruct the certification of the election. None of the proffered evidence is probative of Mr. Fitzsimons's intent. The December 2020 phone calls evince Mr. Fitzsimons's

attempt to lawfully lobby his congressional representatives and say nothing about his own intent on January 6, 2021. Mr. Fitzsimons truly believed what he was told by President Trump and major news outlets: that the election was fraudulent and stolen. Believing this, Mr. Fitzsimons called his congressional representatives and tried to convince them to do their job as elected officials. A congressperson, pursuant to 3 U.S.C. § 15, may object to a state's election results. Knowing this, Mr. Fitzsimons called his congressional representatives to encourage them to object to the certification.

In the December 15, 2020 call to a Congresswoman, Mr. Fitzsimons told the Congresswoman to "do your job." In the December 18, 2020 call, Mr. Fitzsimons told the same Congresswoman that the electoral college vote "is corrupt" and "total garbage," and once again urged the Congresswoman to dispute the election results on January 6. On December 20, 2020, Mr. Fitzsimons called a Congressman and asked for the Congressman's courage to dispute the election on January 6. Finally, on December 21, 2020, Mr. Fitzsimons told a Congresswoman's staff member that President Biden "is owned by Chinese communists" and "they put him into office by election fraud." The calls urge his congressional representatives to object to the certification of the election through lawful means and say nothing about Mr. Fitzsimons's intent on January 6, 2021. It is far too speculative to infer that because Mr. Fitzsimons wanted his congresspeople to lawfully advocate for a certain political position, that Mr. Fitzsimons would resort to unlawful means to get his way.

Even though Mr. Fitzsimons's calls urge lawful action, his beliefs will be seen as extreme and unpopular. The calls say nothing about his intent of January 6, 2021, but will impugn Mr. Fitzsimons's character and portray him as a political extremist. Jurors will be unable to resist the impulse to convict Mr. Fitzsimons based on his character. *Michelson v. United States*, 335 U.S.

469, 475–76 (1948) ("it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." Since propensity evidence may not be used to "prov[e] that a person's actions conformed to his character," *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc), this evidence must be precluded.

With regard to the December 24, 2020 Facebook post, Mr. Fitzsimons did not even make the post. The post was made by an unknown person with an unknown relationship with Mr. Fitzsimons. There is no indicia of reliability, as the post purports to relay a message from Mr. Fitzsimons through a third-party. Even taking the post at face-value, it says nothing about Mr. Fitzsimons's intent to obstruct the certification of the election or engage in any act of violence on January 6th . The post is merely acknowledging that supporters of then President Trump were allegedly living in and around the area; and offering to provide transportation or share ride to Washington, D.C. to for the electoral college count which was rumored to be contested by several states. There is no indication that violence would take place or that any act contrary to law would occur.

Finally, the December 19, 2019 phone call to a congresswoman discussing President Trump's impeachment trial and the March 19, 2020 phone call during which Mr. Fitzsimons seeks the phone number for Chinese President Xi Jinping are not at all probative of Mr. Fitzsimons's intent or actions on January 6, 2021. These phone calls are an attempt to attack Mr. Fitzsimons' character and paint him as a dangerous extremist. The phone calls are entirely unrelated to the election and the protests on January 6, 2021 and must not be admitted pursuant to Rule 404(b).

### C.    The Evidence Fails Rule 403's Prejudice-Probity Balancing Test

Even assuming, *arguendo*, that the proffered evidence is admissible for a non-character purpose, the evidence must be excluded under the second factor of the 404(b) analysis. Under the second factor, evidence will be excluded if it is inadmissible under any other "general strictures limiting admissibility." *Miller*, 895 F.2d at 1435. Even if offered for a proper purpose, the government's proffered evidence cannot withstand scrutiny under Rule 403. At the Rule 403 balancing stage, the Court must "assess the probative value of the evidence as compared to the risk of unfair prejudice." *United States v. Hitselberger*, 991 F. Supp. 2d 108, 127 (D.D.C. 2014) (quoting *United States v. Larrahondo*, 885 F. Supp. 2d 209, 227 (D.D.C. 2012)).

Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.  The Supreme Court has explained that "what counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997).

Even without this proffered evidence, this trial promises to be highly charged and inescapably political. As detailed in Mr. Fitzsimons' Motion to Transfer Venue, it is nearly impossible for Mr. Fitzsimons to receive a fair trial by an impartial jury that comports with the Fifth and Sixth Amendments. *See* ECF No. 47. Mr. Fitzsimons has already been vilified in the media as a "racist conspiracy theorist," a "racist xenophobe," and "a freaking dangerous lunatic." The D.C. public is poisoned against the January 6 rally participants. The city has gone through unprecedented closures, a military takeover, and a state of emergency. The blame for the disruption to daily life is laid upon the "ideologically-motivated violent extremists with

objections to the exercise of governmental authority and the presidential transition." *National Terrorism Advisory System Bulletin*, Department of Homeland Security (Jan. 27, 2021, 11:00 AM) https://www.dhs.gov/sites/default/files/ntas/alerts/21_0127_ntas-bulletin.pdf. The proffered evidence will lump Mr. Fitzsimons in with this group of political extremists.

This evidence carries a grave risk that the jury's passions will be inflamed by the Rule 404(b) evidence to such an extent it would convict him based on his character rather than the strength and quality of the evidence of the charged crime. The jury will be unable to compartmentalize this evidence for proper evidentiary purposes and set aside their ensuing biases to reach a fair verdict. The calls show that Mr. Fitzsimons is very passionate about his political beliefs. He called the election "corrupt" and "total garbage." He referred to President Biden as "owned by Chinese communists" and "a corrupt skeleton." While none of this information says anything about Mr. Fitzsimons's intent on January 6, a jury will be unable to view Mr. Fitzsimons as anything but a political fanatic. Simply put, the government's proffered evidence will take the effect of being a character smear and will leave the jury with the impression that Mr. Fitzsimons is a dangerous political extremist and guilty of the charged conduct without a fair examination of his actions on January 6th . This is wholly improper given the nature of this case and that the evidence is completely unnecessary to prove the government's case.

Absent the supercharged politicization of this case, the questions of fact are relatively straightforward: Mr. Fitzsimons is seen on video pushing and grabbing against officers who were holding a police line in an arched entranceway on the lower west terrace of the Capitol Building. These calls and the Facebook post are simply not necessary for the government to prove motive or intent. Furthermore, as noted above, this case it not complicated, yet the government's proffered Rule 404(b) is fairly voluminous in comparison to the direct evidence of his alleged

guilt. Presentation of the other bad acts evidence would result in potentially multiple mini-trials and will also risk further confusing the issues presented to the jury. Complicating and further politicizing this trial with uncharged bad acts will undoubtedly confuse the jury as to what elements need to be proven in connection with the charged crimes and which evidence was offered for which purpose, heightening the risk of unfair prejudice.

For these reasons, the government's proffered bad acts evidence must be excluded in its entirety under Rule 403's prejudice-probity balancing test.

## III.    CONCLUSION

The government's attempt to overcomplicate this trial with evidence impugning Mr. Fitzsimons's character and further igniting political fervor should not be countenanced by this Court. The proffered evidence fails to withstand scrutiny under Federal Rules of Evidence 404(b) and 403. For these reasons, as well as those set forth above, Mr. Fitzsimons respectfully requests that the Court deny the government's Motion *in limine* in its entirety.

Respectfully submitted,


/s/ *Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

10

## <u>CERTIFICATE OF SERVICE</u>

I, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender

Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the

foregoing Response to the government's Motion *in limine* to Admit Evidence Under Federal

Rule of Evidence 404(b) to be served by Electronic Case Filing ("ECF") upon Brandon Regan

and Puja Bhatia, Assistant United States Attorneys, United States Attorney's Office, 555 4th St.,

NW, Washington, DC 20530.


/s/ *Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender


DATE:         March 22, 2022