**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | | |
| | : | | |
| v. | : | Case No.: | 21-cr-158 |
| | : | | |
| KYLE FITZSIMONS, | : | Re Document No.: | 61 |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION & ORDER**</u>

**GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT EVIDENCE AS INTRINSIC OR, IN THE ALTERNATIVE, PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

## I. BACKGROUND

Defendant Kyle Fitzsimons is facing an eleven-count indictment stemming from his actions at the United States Capitol on January 6, 2021.[1]  The charges against him include civil disorder; obstruction of an official proceeding; using a dangerous or deadly weapon on certain officers; two counts of inflicting bodily injury on certain officers; assaulting, resisting, or impeding certain officers; entering and remaining in a restricted building or grounds; disorderly and disruptive conduct in a restricted building or grounds; engaging in physical violence in a restricted building or grounds; disorderly conduct in the Capitol grounds or buildings; and act of physical violence in the Capitol grounds or buildings.  *See* 2d. Superseding Indictment, ECF No. 69.  He is accused of having violently attacked law enforcement officers stationed at the tunnel entrance of the Lower West Terrace—the location where some of the most violent acts of the day occurred—and of having physically injured some of those officers as part of an attempt to

---

[1] The second superseding indictment was filed on May 18, 2022, but the arraignment has not yet taken place.

obstruct the certification of the Electoral College vote.  *See* Gov't's Notice & Mot. Admit

Evidence as Intrinsic or, in Alt., as "Other Acts" Evidence Pursuant to Fed. R. Evid. 404(b)

("Gov't Mot.") at 2–3, ECF No. 61.

Trial is set to begin on June 13, 2022.  *See* Am. Pretrial Order, ECF No. 63.  In advance

of trial, the Government has moved to introduce a series of statements made by Fitzsimons over

the course of just over a year leading up to January 6, 2021, which it believes are probative of

Fitzsimons's motive and intent on January 6, 2021.  *See* Gov't Mot. at 5.  Specifically, the

Government seeks to introduce:

- Records of a threatening call and voicemail to a Congressional representative regarding the then-pending first impeachment of former President Trump in December 2019.  *See* Ex. A to Gov't Mot.

- Records of a call to the Congressional representative's office in March 2020, in which he asked for the telephone number of Chinese President Xi Jinping and threatened to "go out on the streets and start talking to the Chinese people that I see" when it was not provided.  *See* Ex. A to Gov't Mot.

- Records of four calls made to two Congressional offices in December 2020 in which he referenced election fraud and indicated his belief that President Biden was not lawfully elected.  *See* Gov't Mot. at 4; Exs. B, D to Gov't Mot.[2]

-  A Facebook post from December 24, 2020 on the "Lebanon Maine Truth Seekers" page in which another individual relayed a message purportedly from Fitzsimons which stated that "this election was stolen" and putting out a call "for able bodies" to form a caravan and travel to D.C. on January 6, 2021.  *See* Gov't Mot. at 5; Ex. 12 to Pretrial Detention Hr'g.

Fitzsimons has opposed the motion, arguing that the evidence is not intrinsic, is irrelevant

to Fitzsimons's conduct on January 6, 2021, and would be unfairly prejudicial.  Def.'s Resp. to

---

[2] The Government's brief lists the date of one of those calls in which Fitzsimons left a voicemail for a Congressional office as 12/20/2020, but the corresponding exhibits B and D indicate that the correct date for that voicemail is 12/29/2020.

Gov't's Mot. Lim. ("Def.'s Opp'n"), ECF No. 66.  For the following reasons, the Court will grant in part and deny in part the Government's motion.

## II.  LEGAL STANDARD

"While neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly provide for motions *in limine*, the Court may allow such motions 'pursuant to the district court's inherent authority to manage the course of trials.'" *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).  "Motions *in limine* are designed to narrow the evidentiary issues at trial." *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010).  "[T]he trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." *1443 Chapin St., LP v. PNC Bank, N.A.*, No. 08-cv-01532, 2012 WL 13225423, at *1 (D.D.C. Aug. 14, 2012).  Still, such "pre-trial ruling[s], if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations" prior to trial.  *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).  However, "a motion *in limine* should not be used to resolve factual disputes or weigh evidence." *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) (citation omitted).

"In evaluating the admissibility of proffered evidence on a pretrial motion *in limine* the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402." *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 66 (D.D.C. 2014).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Under Rule 402, only relevant evidence is admissible.  Fed. R.

Evid. 402.  Relevant evidence may still be excluded by a court if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## III.  ANALYSIS

Federal Rule of Evidence 404(b) governs the use of "other crimes, wrongs, or acts" in trials, making such evidence inadmissible to prove that "on a particular occasion the person acted in accordance with" a certain character trait, but allowing such evidence for other permissible purposes.  Fed. R. Evid. 404(b)(1–2).  Only acts "extrinsic" to the charged crime are subject to those limitations, whereas "acts 'intrinsic' to the crime are not."  *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016).  In other words, "Rule 404(b) only applies to truly 'other' crimes and bad acts; it does not apply to 'evidence . . . of an act that is part of the charged offense' or of 'uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime.'"  *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).  The Court disagrees with the Government's argument that the December 2020 phone calls and Facebook post are "intrinsic" evidence but finds that the December 2020 phone calls are nonetheless admissible under Rule 404(b).  However, the Court finds that the December 2019 and March 2020 phone calls are inadmissible and will defer ruling on the December 2020 Facebook post.

### A.  Intrinsic Evidence

Evidence is intrinsic when it "is of an act that is part of the charged offense" or is of "uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime."  *Bowie*, 232 F.3d at 929.  This Circuit has explicitly rejected

the more permissive approach to defining intrinsic evidence embraced by other circuits "because 'all relevant prosecution evidence explains the crime or completes the story' to some extent, and the fact that 'omitting some evidence would render a story slightly less complete cannot justify circumventing Rule 404(b) altogether.'" *McGill*, 815 F.3d at 879 (quoting *Bowie*, 232 F.3d at 929). To be "intrinsic," evidence must be more than merely relevant to a charged crime, otherwise "Rule 404(b) would be a nullity." *Bowie*, 815 F.3d at 929.

The December 2020 calls and Facebook post[3] were made in the weeks leading up to January 6, 2021 and were therefore not "contemporaneous" with Fitzsimons's actions on that day. *See United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 159 (D.D.C. 2020) (finding that evidence of the defendant's uncharged involvement with an unlawful website domain that was deactivated "one month before" charged offenses was not intrinsic); *United States v. Thorne*, No. 18-cr-389, 2020 WL 122985, at *13 (D.D.C. Jan. 10, 2020) ("The well-established rubric in this Circuit for distinguishing intrinsic from extrinsic evidence rests largely on temporal proximity . . . ."). Nor did the calls "facilitate" Fitzsimons's unlawful conduct by helping to bring it about. *See United States v. Roberson*, No. CR 21-102, 2022 WL 35643, at *5 (D.D.C. Jan. 4, 2022) (noting that "facilitate" is limited to acts that "promote, help forward or assist in bringing about a particular end or result" (quoting Facilitate, Oxford English Dictionary (3d ed. 2009))).

The Government's argument instead turns on the fact that the calls and posts are probative of one element of the obstruction of an official proceeding charge, which requires the Government to prove that "the defendant attempted to or did obstruct or impede any official

___

[3] The Government does not argue that the earlier phone calls from December 2019 and March 2020 are intrinsic evidence. Gov't Mot. at 6 n.2.

proceeding." Gov't Mot. at 5 (citing 18 U.S.C. § 1512(c)(2)).  The Government believes the

messages show a clear link between Fitzsimons's beliefs about election fraud and his willingness

to use violence to overturn the election.  There is no doubt that the calls and messages are

relevant to that element, as Fitzsimons describes in his own words his disagreement with the

2020 election results and his intention to travel to Washington, D.C. on January 6, 2021 as a

result.  But the Court agrees with the defense that this is not enough to make the phone calls and

post "intrinsic."  The statements are not themselves so directly connected with Fitzsimons's later

unlawful actions that they can be considered "direct evidence of a fact in issue."  *Bowie*, 232

F.3d at 929 (citations omitted).  "[E]vidence is not generally rendered intrinsic simply because it

completes the story or explains the circumstances behind a charged offense."  *United States v.*

*Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015).  The connection between Fitzsimons's calls and

Facebook post and his actions of attempting to forcibly storm the Capitol is not so direct as to

clear this high bar.[4]  The evidence is therefore more appropriately considered under Rule 404(b).

### B.  Federal Rule of Evidence 404(b)

Evidence of other crimes, wrongs, or bad acts is not admissible under Federal Rule of

Evidence 404(b) to prove that a person acted in accordance with a particular character trait, but it

is admissible if offered for a purpose such as "proving motive, opportunity, intent, preparation,

plan, knowledge, identity, absence of mistake, or lack of accident."  *See* Fed. R. Evid. 404(b);

*United States v. Morrow*, 2005 WL 3159572, at *3 (D.D.C. Apr. 7, 2005); *see also United States*

*v. Pindell*, 336 F.3d 1049, 1056 (D.C. Cir. 2003); *United States v. Miller*, 895 F.2d 1431, 1435

---

[4] In another recent Capitol riot case, the Government attempted to admit a series of text
messages with a codefendant regarding the Stop the Steal Rally as either intrinsic evidence or
pursuant to Rule 404(b).  *See* Gov't Mot. Lim. at 14–15, *United States v. Thompson*, 1:21-cr-
161, ECF No. 55.  The Court admitted that evidence in part under Rule 404(b) rather than as
intrinsic evidence.  *See* Order at 1–2, *United States v. Thompson*, 1:21-cr-161, ECF No. 69.

(D.C. Cir. 1990).  This Circuit has made clear that Rule 404(b) "was intended not to define the set of permissible purposes for which bad-acts evidence may be admitted but rather to define the one impermissible purpose for such evidence."  *Miller*, 895 F.2d at 1436 (emphasis omitted).

Courts conduct a two-part analysis to determine admissibility in the Rule 404(b) context.  *See Miller*, 895 F.2d at 1435.  First, the Court considers whether the evidence is "probative of some material issue other than character."  *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994); Fed. R. Evid. 404(b).  Then, if the evidence is relevant for a permissible purpose, the Court should conduct a balancing test under Rule 403 and exclude the evidence if its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001) (quoting Fed. R. Evid. 403).  The Court will conduct this two-step inquiry for each category of other acts that the government seeks to introduce.

### 1.  December 2019 Phone Calls

This category involves evidence of a phone call Fitzsimons made to the D.C. office of his Congressional representative and a voicemail left at the same representative's local office on December 17, 2019.  *See* Gov't Mot. at 3.  The calls referenced the first impeachment trial of President Trump, which was ongoing at the time.  *Id.*  His tone was described as aggressive, and he mentioned beliefs about the "deep state" in addition to expressing displeasure with the impeachment proceedings.  Ex. A to Gov't Mot.  In addition, the record of the call quotes him as saying that if the Representative votes for impeachment, he would "give it to her hard" and that "we're coming for her."  *Id.*  The Government argues that these calls demonstrate "Fitzsimons' hostility towards Congress and his willingness to use threats, including threats of violence[,] in pursuit of his political beliefs."  Gov't Mot. at 9.  In contrast, Fitzsimons characterizes them as a

constituent reaching out to his representative on a current issue of public importance.  Def.'s Opp'n at 5–6.

Rule 404(b) "is quite permissive," *United States v. Jenkins*, 928 F.2d 1175, 1180 (D.C. Cir. 1991), and evidence will be allowed under 404(b) so long as it meets the low threshold of relevance to an issue "other than the defendant's character or propensity." *Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000).  The calls have at least some relevance to Fitzsimons's motive and intent on January 6 because they demonstrate his particular anger over Congressional actions Fitzsimons considered antagonistic to former President Trump.  *See United States v. Duran*, 884 F. Supp. 558, 562 (D.D.C. 1995) (finding threatening statements made in a call to a U.S. Senator were "highly probative of motive and intent to assassinate the President"); *United States v. Slatten*, 395 F. Supp. 3d 45, 97 (D.D.C. 2019) (determining a contractor's general "anti-Iraqi animus" was relevant to the charge of murder of an Iraqi civilian); *United States v. Gamarra*, No. 17-cr-65, 2021 WL 1946348, at *3 (D.D.C. May 14, 2021) (holding that a defendant's prior threat against a different sitting President three years earlier was relevant to the present charge of threatening the President).  In other words, the calls tend to make Fitzsimons's motive and intent to obstruct the certification of the election results—a fact "of consequence in determining the action"—somewhat "more . . . probable than it would be without the evidence."  *See Fed. R. Evid.* 401; *see also United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993) ("[T]here is no such thing as 'highly relevant' evidence or . . . 'marginally relevant' evidence.  Evidence is either relevant or it is not.").[5]  The Court nevertheless determines that these calls should be excluded

---

[5] Fitzsimons contends that the Government does not need this evidence to prove motive or intent in light of the "direct evidence" available in this case, namely, video footage of Fitzsimons "pushing and grabbing against officers who were holding a police line in an arched entranceway on the lower west terrace of the Capitol Building."  Def.'s Opp'n at 9–10.  The Court disagrees.  The video evidence does not directly speak to Fitzsimons's intent.  Fitzsimons

based on the balancing test of Rule 403, under which "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Although the calls are relevant, their probative value is quite low.  While the tone of the call was hostile, it is far from clear that Fitzsimons's statements constitute a literal threat of violence rather than referencing the electoral consequences of the representative's support for impeachment.  *See* Ex. A to Gov't Mot. (stating "we'll swap you out in a heartbeat").  Moreover, Fitzsimons does not mention the certification of the Electoral College or even the upcoming election in these calls.  *Id.*

On the other side of the scale, there is a legitimate risk that these calls would portray Fitzsimons in a way that is unfairly prejudicial.  In particular, Fitzsimons's references to the "deep state" risk suggesting to the jury that he is an unhinged political extremist.[6]  The risks of unfair prejudice and of complicating the presentation of evidence in this case substantially outweigh the slight probative value of these calls.  Accordingly, the Government's motion is denied with respect to the December 2019 phone calls.

---

has not stipulated to his motive or intent, and even if he had "the prosecution is entitled to prove its case by evidence of its own choice . . . a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."  *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997); *see also United States v. Crowder*, 141 F.3d 1202, 1207 (D.C. Cir. 1998) (applying this principle to other acts evidence related to knowledge and intent); *Gamarra*, 2021 WL 1946348, at *3 ("The threshold for admissibility is relevance, not necessity.").

[6] Fitzsimons has recently moved to waive his right to a jury trial.  Although the portion of the Rule 403 balancing test "concerning unfair prejudice has a highly limited application, if any at all" in a bench trial, *see Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. 11-cv-1623, 2015 WL 13680822, at *1 (D.D.C. June 12, 2015), the slight potential for prejudice along with the risk of wasting time and undue delay would nonetheless substantially outweigh the slight probative value of this evidence in the context of a bench trial, as well.

2.  March 2020 Phone Call

In the March 2020 phone call, Fitzsimons called the same Congressional office near the beginning of the COVID-19 pandemic, demanding the phone number of Chinese president Xi Jinping and threatening to "go out on the streets and start talking to the Chinese people that I see" if it was not given to him.  Ex. A to Gov't Mot.  It does not appear that he referenced the upcoming election, any particular Congressional action, or even then-President Trump.  *Id.*  The defense is therefore correct that the relevance of this conversation to Fitzsimons's intent or motive on January 6, 2021 is highly tenuous.  *See* Def.'s Opp'n at 7.  Indeed, it is hard to see the probative value of this particular call at all other than "to prove that the defendant is a person of bad character and thus predisposed to commit the crime for which he is on trial," which is, of course, the exact inference prohibited by Rule 404(b).  *See United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980).

Still, assuming without deciding that this call would pass the low bar of Rule 404(b), the Court determines that it doubtlessly fails the Rule 403 balancing test.  The irrational nature of Fitzsimons's demands and the racial animus he expresses risk inflaming the jury against him.[7] *See Old Chief*, 519 U.S. at 180 ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged . . . . commonly, though not necessarily, an emotional one." (quotations omitted)); *Foskey*, 636 F.2d at 523 ("It is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'" (citation omitted)).  Considering the charged nature of Fitzsimons's statements in

---

[7] Again, even in the event this matter is conducted as a bench trial, the risk of wasting time and undue delay also substantially outweigh the nearly nonexistent probative value of this call.

this call and their highly attenuated connection to the charges in this case, the Court determines that the March 2020 phone call would be unfairly prejudicial under Rule 403 and denies the Government's motion in that respect.

### 3.   December 2020 Phone Calls

The Court next considers a series of four phone calls to Congressional offices made in December 2020, after President Biden had been elected but before the electoral college vote had been certified.  Each of the four calls made reference to Fitzsimons's belief that the election was illegitimate and fraudulent.  *See* Gov't Mot. at 4.  During three of those calls, Fitzsimons spoke with a staffer and made comments such as calling the election "corrupt" and a "disgusting show of power by the elites" and stated, "this is going to be a Civil War."  *Id.*  In a fourth call, Fitzsimons left a voicemail asking that the Congressperson have the "courage" to dispute a "garbage election" and said that he would be in D.C. on January 6.

These calls directly link Fitzsimons's beliefs about election fraud to his decision to travel to D.C. on January 6 and show that Fitzsimons was not there simply as a tourist or to support the outgoing President—he was there because of the certification of the electoral college vote. While Fitzsimons did not advocate or express the intent to engage in unlawful activity in the calls, his statements are directly relevant to what the Government claims is Fitzsimons's motive and purpose that day: to obstruct the certification of the electoral college vote, by violence if necessary.  *See Duran*, 884 F. Supp. at 562 (holding that threatening statements made in a call to a U.S. Senator were "highly probative of motive and intent to assassinate the President"); *Slatten*, 395 F. Supp. 3d at 97 (finding evidence of defendant's general "anti-Iraqi animus" was relevant to the charge of murder of an Iraqi civilian); *Gamarra*, 2021 WL 1946348, at *3 (holding that the defendant's prior threat against a different sitting President three years earlier

11

was relevant to the present charge of threatening the President).  "In order to be relevant, the Government's proposed Rule 404(b) evidence does not have to *prove* the Defendant's intent, it need only make it more probable that the Defendant possessed the requisite intent."  *United States v. Hite*, 916 F. Supp. 2d 110, 117 (D.D.C. 2013).  Fitzsimons's clear opposition to the certification of the electoral college vote does exactly that.

Nor is the evidence unfairly prejudicial.  Merely demonstrating Fitzsimons's politics is not enough to be *unfairly* prejudicial or *substantially* outweigh the probative value of the evidence, which is the standard for exclusion under Rule 403.  *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party.  Virtually all evidence is prejudicial . . . .  The prejudice must be unfair." (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir.1977) (alterations omitted)).  The positions and actions Fitzsimons advocates are not themselves unlawful, which if anything could bolster the theory that he was there to peacefully and lawfully express his political views.

In addition, "bad acts evidence is typically 'not barred by Rule 403 where such evidence did not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged.'"  *United States v. Wilkins*, 538 F. Supp. 3d 49, 78 (D.D.C. 2021) (quoting *United States v. Fuertes*, 805 F.3d 485, 494 (4th Cir. 2015) (cleaned up)).  Fitzsimons's derogatory comments about the election and the President-elect are not "any more sensational or disturbing" than the charged offenses.  *Id.*  Any offensive implications in the calls pale in comparison to the severity of the violence Fitzsimons is accused of participating in that day.

Fitzsimons's concern that a D.C. jury will consider his views distasteful and convict him on that basis is pure speculation and fails to account for *voir dire* and limiting instructions.[8]  *See United States v. Weisz*, 718 F.2d 413, 432 (D.C. Cir. 1983) (affirming "the value of *voir dire* as a means to identify prospective jurors who might be prejudiced against a defendant by the nature of evidence to be presented at trial"); *United States v. Young*, No. 12-cr-0042, 2013 WL 12430550, at *6 (D.D.C. July 22, 2013) ("The D.C. Circuit has consistently minimized the residual risk of prejudice not by exclusion, but by issuing limiting instructions to the jury."). This Court has already held that "[i]f an impartial jury actually cannot be selected, that fact should become evident at the *voir dire*.  The defendant will then be entitled to any actions necessary to assure that he receives a fair trial."  Minute Order of Dec. 14, 2021 (quoting *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976)).  Fitzsimons's generalized concerns about prejudice due to his political beliefs do not persuade the Court that these calls are unfairly prejudicial.

The Rule 403 balance "should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged," which is the case here.  *See United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) (quotations omitted). Accordingly, the Court will grant the Government's motion with respect to the December 2020 phone calls.

### 4.  December 2020 Facebook Post

That leaves the December 24, 2020 Facebook post made by another individual, purportedly on Fitzsimons's behalf.  The Government did not attach the post to its motion or

---

[8] And, should this case be tried as a bench trial, "the portion of the rule concerning unfair prejudice has a highly limited application, if any at all," in that context.  *Paleteria La Michoacana, Inc.*, 2015 WL 13680822, at *1.

describe it in any depth, but the post was previously submitted to the Court in connection with Fitzsimons's motion to revoke pretrial detention.  *See* Ex. 12 to Pretrial Detention Hr'g.  The message reiterates Fitzsimons's belief that the 2020 election was stolen and inquires about interest "in organizing a caravan to Washington D.C. for the Electoral College vote count on Jan. 6th, 2021."  *Id.*  This post is relevant to Fitzsimons's intent and motive for the same reasons the December 2020 phone calls were relevant, and if anything shows a more direct link between the certification and Fitzsimons's desire to be in D.C. to contest what he believed was a stolen election.  It is also not unfairly prejudicial for many of the same reasons.  The only aspect of the post that could potentially cause an unfairly prejudicial reflection on Fitzsimons's character is one sentence in which he expresses an overtly conspiratorial belief.  *See id.* ("[W]e are being slow walked towards Chinese ownership by an establishment that is treasonous and all too willing to gaslight the public into believing the theft was somehow the will of the people.").  Still, this sentence is not so provocative that it risks the jury deciding the case based on Fitzsimons's propensity rather than his actions or that it cannot be overcome by *voir dire* and a limiting instruction.

Nonetheless, Fitzsimons raises the relevant point that because the post was made by an unidentified third party and the Government has not provided any indicia of reliability that it in fact originated with Fitzsimons.  *See* Def.'s Opp'n at 7.  Whether a statement bears sufficient "indicia of reliability" is generally considered in the context of admitting and weighing otherwise admissible hearsay evidence.[9]  *See, e.g.*, *Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 178 (D.C. Cir. 2013) ("Administrative agencies may consider hearsay evidence as long as it

---

[9] Fitzsimons does not cite to any cases at all in support of this argument, whether related to Rule 404(b), 403, or hearsay, making the exact nature of this objection somewhat unclear.

'bear[s] satisfactory indicia of reliability.'" (quoting *Crawford v. U.S. Dep't of Agric.*, 50 F.3d 46, 49 (D.C. Cir. 1995) (cleaned up)); *Al-Bihani v. Obama*, 590 F.3d 866, 879 (D.C. Cir. 2010) ("[T]he question a habeas court must ask when presented with hearsay is . . . what probative weight to ascribe to whatever indicia of reliability it exhibits."); *Fed. Trade Comm'n v. CCC Holdings Inc.*, No. CV 08-2043, 2009 WL 10631282, at *1 (D.D.C. Jan. 30, 2009) (declining to consider hearsay that lacked indicia of reliability in a preliminary injunction motion).

The Court perceives that the Facebook post may present a hearsay issue, or potentially risk misleading the jury even if technically admissible under a hearsay exception. But the Court declines to decide those issues without more information and the benefit of briefing from the parties. It will therefore defer ruling on the admissibility of the Facebook post and allow the parties to present any more specific arguments they may have at trial.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Government's Motion *in Limine* to Admit Evidence as Intrinsic or, in the Alternative, Pursuant to Federal Rule of Evidence 404(b) (ECF No. 61) is **GRANTED IN PART AND DENIED IN PART** as follows:

- The Government's motion to admit the December 2019 phone calls pursuant to Federal Rule of Evidence 404(b) is **DENIED**;

- The Government's motion to admit the March 2020 phone call is **DENIED**;

- The Government's motion to admit the December 2020 phone calls pursuant to Federal Rule of Evidence 404(b) is **GRANTED**; and

- Ruling on the Government's motion to admit the December 2020 Facebook post is **DEFERRED**.

**SO ORDERED.**

Dated: May 24, 2022                                      RUDOLPH CONTRERAS
                                                        United States District Judge