**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.:  21-158 (RC) |
| | : | |
| KYLE FITZSIMONS, | : | Re Document No.:    57 |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**DENYING DEFENDANT'S MOTION TO DISMISS COUNT III OF THE SUPERSEDING INDICTMENT**

## I.  INTRODUCTION AND BACKGROUND

As a result of his alleged participation in the events at the United States Capitol on January 6, 2021, Defendant Kyle Fitzsimons stands charged with several offenses.  *See* Superseding Indictment, ECF No. 50.  Today, the Court denies Fitzsimons's motion to dismiss Count III of the Superseding Indictment, which charges that Fitzsimons "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18," all in violation of 18 U.S.C. §§ 1512(c)(2) and 2.  Superseding Indictment at 2.

The general events of January 6, 2021 are by now well known, and the indictments filed in this case add only general descriptions of Fitzsimons's alleged involvement, so the Court will be brief in reciting the relevant facts.  At 1:00 p.m. on January 6, 2021, both houses of Congress, as well as then-Vice President Mike Pence, convened in a joint session in the Hall of the House of Representatives to carry out their constitutional and statutory duty "to certify the Electoral College vote in the 2020 presidential election."  *United States v. Montgomery*, No. CR 21-46,

2021 WL 6134591, at *2 (D.D.C. Dec. 28, 2021); *see* U.S. Const. amend. XII; 3 U.S.C. §§ 15–

18.  Fitzsimons was a member of the crowd that converged upon and entered restricted areas of

the Capitol grounds.  Superseding Indictment at 4.[1]  While there, he engaged in physical

violence, injured an officer of the United States Capitol Police and an officer of the Metropolitan

Police Department, and ultimately impeded and disrupted Congress's certification proceeding

from going forward as planned.  *See id.* at 2–5.  The mob forced Congress to evacuate the House

and Senate chambers; they were not able to return and fulfill their duty of ascertaining and

counting the electoral votes until the wee hours of the following morning.  *Montgomery*, 2021

WL 6134591, at *2.

  Only one of the Superseding Indictment's ten charges against Fitzsimons is relevant to

the instant motion.  Count III charges Fitzsimons with obstructing, influencing, and impeding

Congress's certification of the electoral vote, allegedly in violation of 18 U.S.C. § 1512(c)(2).[2]

Superseding Indictment at 2.  18 U.S.C. § 1512(c)(2) reads:

---

[1] As explained below, the Court will assume for purposes of its legal analysis of
Defendant's Motion to Dismiss that the facts alleged in the Superseding Indictment are true.

[2] Recently, the grand jury returned a Second Superseding Indictment.  Second
Superseding Indictment, ECF No. 69.  The second superseding indictment charges Fitzsimons
with violating 18 U.S.C. § 1512(c)(2) in Count II, rather than Count III, and alters the text of the
§ 1512(c)(2) charge to specify that Fitzsimons allegedly obstructed "a proceeding before
Congress, by entering and remaining on United States Capitol Grounds without authority,
committing an act of civil disorder, and engaging in disorderly and disruptive conduct."  Second
Superseding Indictment at 2.  The differences between the § 1512(c)(2) charge in Count III of
the Superseding Indictment and the § 1512(c)(2) charge in Count II of the Second Superseding
Indictment are that the Second Superseding indictment does not specify that the proceeding
Fitzsimons allegedly obstructed was the January 6 electoral certification and that the Second
Superseding indictment details the means by which Fitzsimons allegedly obstructed the
proceeding ("by entering and remaining on United States Capitol Grounds without authority,
committing an act of civil disorder, and engaging in disorderly and disruptive conduct").
*Compare* Superseding Indictment at 2 *with* Second Superseding Indictment at 2.  Still, it is
reasonably clear from the date (January 6, 2021) and place (United States Capitol grounds)
specified in Count II of the Second Superseding Indictment that Fitzsimons remains charged
with obstructing the January 6 electoral certification.  Thus, the changes between the

(c) Whoever corruptly—

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

> (2) **otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so**,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512 (emphasis added).  "Official proceeding" is defined in a subsequent section to

include "a proceeding before Congress":

> (a) As used in sections 1512 and 1513 of this title and in this section--

> > (1) the term "official proceeding" means--

> > > (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

> > > (B) **a proceeding before the Congress**;

> > > (C) a proceeding before a Federal Government agency which is authorized by law; or

> > > (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce . . . .

---

Superseding Indictment and the Second Superseding Indictment are not material to the arguments Fitzsimons raises in his motion to dismiss Count III of the Superseding Indictment, which concern the scope and constitutionality of § 1512(c)(2).  If Fitzsimons is correct regarding any of his alleged infirmities in Count III of the Superseding Indictment, Count II of the Second Superseding Indictment "will suffer from the same infirmit[ies]."  *United States v. Goff*, 187 F. App'x 486, 491 (6th Cir. 2006); *cf. United States v. Miller*, No. 21-cr-00119, 2022 WL 823070, at *15 n.3 (D.D.C. Mar. 7, 2022).  Accordingly, the Court will proceed to address the merits of Fitzsimons's motion to dismiss Count III of the Superseding Indictment despite the intervening return of the Second Superseding Indictment.  *See id.* at 490–91 (addressing the merits of a motion to dismiss an indictment even though the grand jury had returned a superseding indictment because "[t]he superseding indictment did not materially alter the nature, scope, and duration of the conspiracy charged").

18 U.S.C. § 1515(a) (emphasis added).

Fitzsimons moves to dismiss Count III, which he says fails to state an offense for three reasons.  First, Fitzsimons argues that the January 6 election certification meeting was not an "official proceeding" as that term is used in § 1515(c)(2), and, therefore, that any obstruction of the meeting would be beyond the scope of 18 U.S.C. § 1512(c)(2).  Def.'s Mot. Dismiss at 3. Second, Fitzsimons contends that the *mens rea* term in § 1512(c), "corruptly," is unconstitutionally vague, or, alternatively, is constitutional only when narrowly construed to apply only to actions taken "with the intent to obtain an unlawful advantage for oneself or an associate contrary to the due administration of justice."  *Id.* at 32.  If this narrowed understanding is correct, Fitzsimons argues, Count III fails to state an offense because it does not allege conduct that "had anything to do with interfering with a tribunal, or the flow of evidence, or anything else characteristic of the administration of justice."  *Id.* at 37.  Third, he says that "the conduct [he] has been accused of committing cannot qualify as conduct that 'otherwise obstructs, influences, or impedes' an official proceeding, within the meaning of" § 1512(c)(2).  *Id.* at 2.  According to Fitzsimons, these terms refer only to "conduct that impairs the integrity and availability of evidence," and the Superseding Indictment fails to allege any such conduct.  *Id.* at 30 (emphasis omitted).  The Court joins the weight of authority in this district in rejecting these arguments about the scope and constitutionality of § 1512(c)(2), and therefore denies Fitzsimons's motion to dismiss Count III.

## II.  LEGAL STANDARD

"An indictment's main purpose is to inform the defendant of the nature of the accusation against him."  *United States v. Ballestas*, 795 F.3d 138, 148–49 (D.C. Cir. 2015) (cleaned up). Thus, the Federal Rules of Criminal Procedure require only that the indictment include "a plain,

concise, and definite written statement of the essential facts constituting the offense charged."

Fed. R. Crim. P. 7(c).  A defendant may move to dismiss counts of an indictment for "failure to

state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  A court considering such a motion must

"assume[] the truth of th[e] factual allegations" in the indictment.  *Ballestas*, 795 F.3d at 149.

Indeed, the court's review is limited to "the four corners of the indictment."  *United States v.*

*Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009).  This limitation "affords deference to the

'fundamental role of the grand jury.'"  *United States v. Mostofsky*, No. CR 21-138, 2021 WL

6049891, at *2 (D.D.C. Dec. 21, 2021) (quoting *Ballestas*, 795 F.3d at 148).  "Adherence to the

language of the indictment is essential because the Fifth Amendment requires that criminal

prosecutions be limited to the unique allegations of the indictments returned by the grand jury."

*United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).  "A court accordingly cabins its

analysis to the face of the indictment and, more specifically, the language used to charge the

crimes."  *Mostofsky*, 2021 WL 6049891, at *2 (cleaned up).

## III.  ANALYSIS

### A.  The Electoral Count is an "Official Proceeding"

Fitzsimons's first argument is that the relevant definition of "official proceeding" as used

in 18 U.S.C. § 1512(c)(2)—"a proceeding before the Congress," 18 U.S.C. § 1512(a)(1)(B)—

applies only to "tribunal-like proceedings before Congress related to the administration of justice,"

and that the January 6th electoral vote certification meeting was not such a proceeding.  Def.'s Mot.

Dismiss at 2.  This Court recently joined several other judges in this district in rejecting a very

similar set of arguments, and does the same here.  *United States v. Andries*, No. CR 21-93, 2022 WL

768684, at *4–7 (D.D.C. Mar. 14, 2022) (rejecting a defendant's argument that an "official

proceeding" must "involve[] adjudicative or at least 'quasi-adjudicative responsibilities'" and must

be "an adjudicative proceeding involving witness testimony and evidence" and citing other similar opinions from courts in this district (citations omitted)).

In *Andries*, the Court analyzed dictionary definitions of the relevant statutory terms, case law interpreting them, and their statutory context to conclude that the plain meaning of "proceeding before the Congress" as used in 18 U.S.C. § 1512(a)(1)(B) is "a formal convocation at which Congress has convened to conduct its official business."  2022 WL 768684, at *4–7.  The Court further explained that the defendant's assertions about the statute's purpose and legislative history— principally that Congress passed 18 U.S.C. § 1512(c)(2) as part of a statute principally concerned with obstruction of justice in corporate fraud cases, the Sarbanes-Oxley Act of 2002—were not persuasive and in any event could not override the statute's plain meaning.  2022 WL 768684, at *3, *7.  Next, the Court held that whatever "the precise contours of formality necessary to constitute an official proceeding" and whatever the scope of Congress's "official business," "there is a wealth of indicators that the electoral count session is a formal convocation for the carrying out of Congress's official business":

> The Constitution requires the Vice President, acting as President of the Senate, to "open all the certificates" of the electoral results "in the presence of the Senate and House of Representatives."  U.S. Const., art. II, § 1, cl. 3; *id.* amend. XII.  The "votes shall then be counted."  *Id.*  The Electoral Count Act, Pub. L. No. 45-90, 24 Stat. 373 (1887), specifies the procedures to be followed.  A Joint Session of the Senate and the House of Representatives must meet "at the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15.  The presiding officer (the President of the Senate) opens the certificates of the electoral votes and hands them to tellers appointed by each House, who make a list of the votes.  *Id.*  When announcing each certificate, the presiding officer calls for objections, if any, which must be made in writing and signed by both one Senator and one Member of the House of Representatives.  *Id.* Thereafter, the Senate and the House withdraw to consider each objection, and "each Senator and Representative may speak to such objection or question five minutes, and not more than once."  *Id.* § 17.  The presiding officer must cut the debate off after two hours.  *Id.*  He also has the "power to preserve order" during the session.  *Id.* § 18.  The Act details where the presiding officer, the Speaker, the Senators, the Representatives, the tellers, and others are to sit in the chamber.  *Id.*

§ 16.  And it commands that the session "not be dissolved until the count of electoral
votes shall be completed and the result declared."  *Id.*

*Id.* at *5 (quoting *United States v. Sandlin*, No. 21-CR-88, 2021 WL 5865006, at *4 (D.D.C. Dec. 10,

2021)).

Fitzsimons presents a few points in support of his preferred interpretation of "official

proceeding" that the *Andries* opinion did not expressly discuss, but none of them change the Court's

conclusion.  Fitzsimons points out that the code title of 18 U.S.C. § 1512, "Tampering with a

victim, witness, or an informant," seems principally to relate to adjudicative tribunals.  Def.'s

Mot. Dismiss at 12–13.  But this code title was in place before the Sarbanes-Oxley Act added the

new subsection (c) to the pre-existing subsections of § 1512; it therefore sheds little light on the

meaning of § 1512.  *Montgomery*, 2021 WL 6134591, at *15 (citing 18 U.S.C. § 1512 (2000)).

Indeed, the Sarbanes-Oxley session-law title that added § 1512(c), if anything, suggests a

broader scope: "Tampering with a record *or otherwise impeding an official proceeding*."  *Id.*

(quoting Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807

(emphasis omitted)).

Fitzsimons also refers to surrounding code sections, all of which he says deal only with

"obstruction of tribunal-like proceedings" like criminal, agency, and congressional

investigations.  Def.'s Mot. Dismiss at 13–14 (citing 18 U.S.C. §§ 1501–10, 1513–14a, 1516–

20).  To Fitzsimons, this structure means that "official proceeding" in § 1512(c) must be

interpreted only to reach tribunal-like proceedings, those that relate to the administration of

justice, and associated investigations.  *Id.* at 14.  But Congress's express choice to use broad

language in defining "official proceeding" to reach "a proceeding before the Congress," 18

U.S.C. § 1515(a)(1)(B), belies this structural inference.  As the Court explained in *Andries*,

Congress, which the Constitution primarily tasks with *legislating*, "hardly ever adjudicates," or

holds tribunals, or administers justice. *See* 2022 WL 768684 at *4 n.3, *6 (discussing congressional adjudication in the context of impeachment proceedings and proceedings to judge the qualifications of its own members). It would have been odd to use the broad phrase "a proceeding before the Congress" to refer to such a narrow and ancillary set of Congress's activities. Indeed, one of the very provisions Fitzsimons relies on shows how easily Congress could have limited § 1512(c) to a narrower range of congressional action if it had wished to do so. *See* 18 U.S.C. § 1505 (making it unlawful to use a threat or force to obstruct "the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress.").

Fitzsimons's discussions of legislative history run into the same problems. Fitzsimons says that in drafting the original version of § 1512 (passed as part of the Victim and Witness Protection Act of 1982, Pub. L. 97-291 § 4, 96 Stat. 1248 (1982)), Congress incorporated significant portions of model legislation proposed in the Final Report of the National Commission on Reform of Federal Criminal Laws (1971). Def.'s Mot. Dismiss at 17. Fitzsimons contends that this Report, and Congress's use of it, suggest that the words "official proceeding" in § 1512 serve to delineate between mere investigations and the formal proceedings at which evidence is taken that follow them. Def.'s Mot. Dismiss at 16–22. But as Fitzsimons acknowledges, Congress did not adopt the Report's definition of "official proceeding" to mean proceedings at which evidence is taken under oath. *Id.* at 19, 22. Instead, it adopted a definition of "official proceeding" that expressly includes, in addition to judicial proceedings and federal agency investigations, "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1). Whatever its relevance to understanding other definitions of "official proceeding," the dichotomy Fitzsimons draws between investigations and adjudicative hearings at which evidence is formally taken is not especially instructive for understanding the meaning of "a proceeding before the Congress."

Unlike law enforcement or administrative agencies, Congress (at least usually) does not engage in fact-finding investigations and then present evidence it has gathered in a formal judicial or administrative enforcement hearing.  *Cf. Andries*, 2022 WL 768684, at *6 n.4 (discussing examples of congressional proceedings, such as markups and hearings, that do not involve the appearance of any external party).

Along similar lines, § 1515, the definition provision, was also passed as part of the Victim and Witness Protection Act of 1982.  Fitzsimons stresses that the accompanying Senate report repeatedly referred to the Act's purpose of guarding against obstruction of "the proper administration of justice" and similar phrases.  Def.'s Mot. Dismiss at 23–24 (quoting S. Rep. No. 97-532, at 18–19 (1982)).  But once again, Congress does not engage in the adjudicative or enforcement function of "administ[ering] justice"; its primary functions relate to legislation.  *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020) (noting that Congress's power to investigate is "justified solely as an adjunct to the legislative process" and that "Congress may not issue a subpoena for the purpose of 'law enforcement' or to 'try' someone . . . for any crime or wrongdoing" (citations omitted)).  Whatever the import of the legislative history accompanying the Victim and Witness Protection Act of 1982, it cannot override Congress's express textual choice to extend the definition of "official proceeding" to cover, without textual limitation, "a proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B).

Shifting to the legislative history of the Sarbanes-Oxley Act, Fitzsimons, like the defendant in *Andries*, observes that when Congress added § 1512(c), it may have been primarily concerned with closing a "loophole that allowed a defendant to escape liability for individual evidence spoliation."  *United States v. Reffitt*, No. 21-cr-32, 2022 WL 1404247, at *9 (D.D.C. May 4, 2022); *see* Def.'s Mot. Dismiss at 26.  But as the Court will explain below, the legislative

history does not clearly suggest that Congress intended § 1512(c)'s coverage to be *limited* to this specific form of obstruction.  And in any event, legislative history cannot displace the plain meaning of the text in context.

Finally, Fitzsimons insists that his interpretive position is "consistent with" a Department of Justice Criminal Resource Manual, which states that § 1512 "proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers."  Def.'s Mot. Dismiss at 27 (citation omitted). As Judge Mehta has explained, however, "the Manual predates the enactment of section 1512(c)—the Manual was last published in 1997—and therefore sheds no light on the scope of the code provision at issue here."  *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718, at *7 (D.D.C. Dec. 20, 2021) (citations omitted).  Moreover, "the Manual's generalized statements cannot alter the plain meaning of the statutory text."  *Id.*  As the Court has explained, under that plain meaning, the January 6 certification was "a formal convocation at which Congress . . . convened to conduct its official business," *Andries*, 2022 WL 768684, at *4–7, and, therefore, was an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).

### B.  Section 1512(c)(2) is Not Void for Vagueness under the Fifth Amendment

Fitzsimons next argues that the word "corruptly" in 18 U.S.C. § 1512(c) "lacks definition and remains too vague to provide constitutionally-required notice."  Def.'s Mot. Dismiss at 36. But a statute satisfies the Fifth Amendment when it, "either standing alone *or as construed*, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997) (emphasis added).  And in *Andries*, this Court interpreted "corruptly" in § 1512(c), to require, at least, that the defendant act with an improper purpose and

an intent to obstruct.[3]  2022 WL 768684 at *11.  The Court explained that this definition

eliminated the vagueness concerns associated with such potential definitions of "corruptly" as

"immoral" and "depraved."  *Id.*; *see* Def.'s Mot. Dismiss at 35 (expressing concern with such

definitions and citing *United States v. Poindexter*, 951 F.2d 369, 378–79 (D.C. Cir. 1991)[4]).

Further, the Court concluded that a requirement of proof of an improper purpose, even if

susceptible to vague applications at the edges, "sets out a 'comprehensible normative standard,'

if an 'imprecise' one—enough to pass vagueness muster."  *Andries*, 2022 WL 768684, at *11

(quoting *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017)).  Though the Court

did not endeavor "to set forth with precision when an individual has or has not acted with an

improper purpose," it contrasted some examples of presumably proper attempts to influence

official proceedings—which involved "the vindication of legal rights," "the pursuit of ends

widely recognized as acceptable or ordinary in the relevant field," and/or  "conduct widely

acceptable and ordinary in the relevant field"—against those undertaken with an improper

purpose, a hallmark of which might be the use of "[u]nusual or illegal conduct."  *Id.* at 11.

Because "corruptly," so construed, is clear enough to satisfy the Fifth Amendment, the

Court rejects Fitzsimons's alternative suggestion that the term can only be saved from

unconstitutional vagueness if construed to mean "'to act with the intent to obtain an unlawful

advantage for [oneself] or an associate' in a tribunal-like forum concerned with the administration

---

[3] The Court also did "not foreclose the possibility that acting in an independently criminal
manner may be another means, aside from acting with an improper purpose, of satisfying the §
1512(c)(2) corruption element," and concluded that this interpretation "would not present any
vagueness problem." *Andries*, 2022 WL 768684 at *11 (first citing *Sandlin*, 2021 WL 5865006,
at *12–14; and then citing *United States v. Nordean*, No. CR 21-175, 2021 WL 6134595, at *10–
12 (D.D.C. Dec. 28, 2021)).

[4] In *Andries*, the Court explained in detail why *Poindexter*, which dealt with a
grammatically distinct use of the word "corruptly" in a different statutory provision, does not
suggest that "corruptly" as used in § 1512(c) is unconstitutionally vague.

of justice." Def.'s Mot. Dismiss at 36 (alteration in original). To the extent that Fitzsimons's

argument on this point doubles as a claim that this is the correct interpretation of "corruptly," the

Court rejects it. It would make little textual sense to interpret "corruptly" to limit § 1512(c)'s

scope to tribunal-like proceedings involving the administration of justice when, as explained in

Part A, Congress's definition of "official proceeding" expressly extends the provision's coverage

to proceedings that do not share these features, namely proceedings before Congress. Moreover,

Fitzsimons provides little textual reason to think that the word "corruptly" can apply only to

tribunal-like or justice proceedings. He refers to the Seventh Circuit's pattern jury instructions

for 18 U.S.C. § 1512, which say that "[a] person acts 'corruptly' if he or she acts with the

purpose of wrongfully impeding the due administration of justice." Def.'s Mot. Dismiss at 37

(quoting William J. Bauer Pattern Crim. Jury Instructions of the Seventh Cir. 629 (Comm. on

Fed. Crim. Jury Instructions of the Seventh Cir. 2020)). But he omits the fact that these

instructions expressly borrow their language from the pattern instruction for 18 U.S.C. § 1503,

which, in contrast to § 1512's prohibition on obstruction of official proceedings, including

congressional proceedings, "prohibits corruptly influencing, obstructing, or impeding 'the due

administration of justice.'" *Reffitt*, 2022 WL 1404247, at *6 (quoting 18 U.S.C. § 1503(a)).

Given the differences in context between "corruptly" in § 1503 and in § 1512, the Court declines

to follow the Seventh Circuit pattern instructions in defining "corruptly" to relate solely to the

administration of justice for purposes of § 1512(c). *See id.*

      Fitzsimons does not develop his suggestion that "corruptly" requires acting to obtain an

unlawful advantage for oneself or an associate.[5] And in any event, while "the desire to gain an

---

[5] Indeed, the Seventh Circuit instruction Fitzsimons relies on does not include this requirement. William J. Bauer Pattern Crim. Jury Instructions of the Seventh Cir. 629 (Comm. on Fed. Crim. Jury Instructions of the Seventh Cir. 2020)).

advantage" may "typically" be "the motive for a person to act corruptly," it need not always be reason for corrupt action. *Id.* Accordingly, the Court rejects Fitzsimons's argument that Count III must be dismissed because the term "corruptly" is either unconstitutionally vague or applies only to conduct designed to thwart the administration of justice to obtain an improper advantage.

## C.  Section 1512(c)(2) Extends Beyond Conduct that Impairs the Integrity or Availability of Evidence

Having failed in his arguments regarding the terms "official proceeding" and "corruptly," Fitzsimons trains his most substantial challenge on the remaining principal terms of statute: "otherwise obstructs, influences, or impedes."  18 U.S.C. § 1512(c)(2).  Fitzsimons argues that this text must be read to cover only acts that obstruct a proceeding in the same way as the obstructive acts listed in § 1512(c)(1); that is, acts that "impair[] the availability or integrity of evidence."  Def.'s Mot. Dismiss at 29–30 (citation omitted).  Alternatively, Fitzsimons claims that the statute is at least ambiguous, and accordingly "invoke[s] the rule that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'"  Def.'s Mot. Dismiss at 38 (quoting *Yates v. United States*, 574 U.S. 528, 547–48 (2015)).  It is worth repeating the statute:

> (c) Whoever corruptly—
>
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> >
> > (2) **otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so**,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512 (emphasis added).  As the Court will explain, the statutory text of § 1512(c)(2) in context unambiguously does not include the limitation Fitzsimons reads into it.  Section 1512(c)(2) extends to corrupt obstruction of an official proceeding even when the obstructive act

Case 1:21-cr-00158-RC   Document 77   Filed 05/26/22   Page 14 of 27

does not involve the impairment of evidentiary documents, records, objects, or other types of

evidence.[6]

The meanings of the operative verbs are plain enough, and do not suggest any limitation

to actions that impair documents or other types of evidence.  As Judge Moss explained:

> "Obstruct" means "[t]o make difficult or impossible; to keep from happening; [to] hinder."  Obstruct, Black's Law Dictionary (11th ed. 2019); *see also* Obstruct, Webster's Third New International Dictionary 1558 (1993) (defining "obstruct" as "to be or come in the way of; hinder from passing, action, or operation"). "Influence" means "to affect or alter the conduct, thought, or character of by indirect and intangible means."  Influence, Webster's Third New International Dictionary 1160 (1993); *see also* Influence, Black's Law Dictionary (11th ed. 2019) (defining the noun form of influence as the "[u]se of pressure . . . or power . . . to induce action or change the decisions or acts of another").  And "impede" means "to hold up" or "block."  Impede, Webster's Third New International Dictionary 1132 (1993).  As the Supreme Court recently observed in a similar context, "[t]he statutory words 'obstruct or impede' are broad" and "can refer to anything that 'block[s].'"  *Marinello v. United States*, —— U.S. ——, 138 S. Ct. 1101, 1106 (2018) (quoting Obstruct, Black's Law Dictionary (10th ed. 2014); and Impede, Webster's New International Dictionary 1248 (2d ed. 1954)).

*Montgomery*, 2021 WL 6134591, at *10.

---

[6] This conclusion accords with the weight of other decisions in similar cases in this district, including *Montgomery*, 2021 WL 6134591, at *18; *Nordean*, 2021 WL 6134595, at *8; *United States v. Mostofsky*, No. CR 21-138, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021); *United States v. Grider*, No. CR 21-0022, 2022 WL 392307, at *6 (D.D.C. Feb. 9, 2022); *Caldwell*, 2021 WL 6062718, at *11; *Sandlin*, 2021 WL 5865006, at *6; Order, *United States v. Reffitt*, No. 21-cr-32, ECF No. 81 at 4 (D.D.C. Dec. 29, 2021); and *United States v. Bozell*, No. 21-CR-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022).  After these decisions, facing yet another similar argument from a January 6 defendant, Judge Nichols found the text ambiguous and relied on the rule of lenity to conclude "that § 1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding."  *Miller*, 2022 WL 823070, at *15; *see also United States v. Fischer*, No. 21-CR-00234, 2022 WL 782413, at *4 (D.D.C. Mar. 15, 2022) (Judge Nichols reiterating his conclusion from *Miller*).  Other judges who have analyzed similar arguments after and in light of *Miller* have stood by the conclusion that § 1512(c)(2) is not so limited.  *Reffitt*, 2022 WL 1404247, at *7; *United States v. McHugh*, No. CR 21-453, 2022 WL 1302880, at *1 (D.D.C. May 2, 2022); *United States v. Puma*, No. CR 21-0454, 2022 WL 823079, at *12 & n.4 (D.D.C. Mar. 19, 2022); Minute Order, *United States v. Hughes*, No. 21-cr-00106 (D.D.C. May 9, 2022).

14

Of course, these verbs in § 1512(c)(2) are linked to § 1512(c)(1) by the word "otherwise."  The Court accepts *Miller*'s conclusion that "[w]hen § 1512(c) became law, 'otherwise' had three different definitions that are plausible in this context: 'in a different way or manner: differently'; 'in different circumstances: under other conditions'; and 'in other respects.'"  2022 WL 823070, at *6 (quoting *Otherwise*, Webster's Third New Int'l Dictionary of the English Language Unabridged (2002)).  Each of these definitions suggests that the "obstruct[ion], influenc[ing], or imped[ing]" covered in § 1512(c)(2) must somehow be different than the actions covered in § 1512(c)(1), namely "alter[ation], destr[uction], or conceal[ment]" of "a record, document, or other object . . . with the intent to impair the object's integrity or availability in an official proceeding."  18 U.S.C. § 1512(c).

Thus, based on the plain meaning of the statutory terms in their immediate context, the Court arrives at an understanding of the meaning of § 1512(c)(2): it "gives defendants fair warning in plain language that a crime will occur in a different ('otherwise') manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents[,] records[,]"or other types of evidence.  *See United States v. Petruk*, 781 F.3d 438, 446–47 (8th Cir. 2015).  Its function in the statutory scheme is to "operate[] as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction, which is listed in (c)(1)."  *Id.* at 447 (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)).

In *United States v. Miller*, Judge Nichols identified "a number of problems" with a similar reading of the statute, 2022 WL 823070, at *6, but, upon examination of Judge Nichols's thorough reasoning, this Court concludes that these objections do not undermine its reading or

render the statute ambiguous.[7]  Judge Nichols was concerned that reading subsection (c)(2) to cover acts that do not relate to evidentiary objects fails to give meaning to the word "otherwise," in that subsection (c)(2) would "have the same scope and effect as if Congress had instead omitted the word 'otherwise.'"  *Id.* at *7.  But this observation simply points out that § 1512(c) follows a fairly routine statutory structure: listing specific prohibited acts in one subsection (here tampering with records) and then using the word "otherwise" in a subsequent, "catch-all" subsection to broaden the statute's coverage to include "the 'myriad means that human ingenuity might devise to permit a person to'" engage in the mischief the statute seeks to prevent (here obstruction of an official proceeding).  *See McHugh*, 2022 WL 1302880, *6–7 (quoting *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) and collecting supporting interpretations of similarly-structured statutes).  Thus, Congress may have wished to be especially sure to prohibit document destruction while simultaneously wishing to prohibit other forms of obstruction that it may not have been able to foresee exhaustively.  *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009) ("[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns . . . .").

---

[7] Judge Nichols characterized the interpretation he addressed as reading "otherwise" to "essentially serve[]as a clean break between subsections (c)(1) and (2), and thus" as rendering "the only question [to be] whether [the defendant] 'corruptly . . . obstruct[ed], influence[d], or impede[d] any official proceeding, or attempt[ed] to do so.'"  *Miller*, 2022 WL 823070, at *6. This description does not quite line up with the Court's reading.  "Otherwise" does not serve as a "clean break" that causes subsection (c)(1) to be *irrelevant* to the meaning of subsection (c)(2). Rather, it connects the two clauses by clarifying that the obstructive acts covered in subsection (c)(2) must be different in some way from the evidence-related obstructive acts listed in subsection (c)(1).  Therefore, the Court's reading is not susceptible to *Miller*'s first criticism of the clean-break reading, that this reading ignores the fact that all relevant definitions of otherwise "impl[y] a relationship to something else—here, subsection (c)(1)."  *Id.*  Under the Court's reading," "otherwise" does indicate a relationship to subsection (c)(1), namely one of contrast.

Moreover, "otherwise" does additional work in that it "'signals a shift in emphasis' from actions directed at evidence to actions directed at the official proceeding itself." *Montgomery*, 2021 WL 6134591, at *12 (citation omitted) (observing that the "official proceeding" is the direct object of the verbs in subsection (c)(2), while subsection (c)(1) assigns the "record, document, or other object" as the direct object of the "alter[ation], destr[uction], mutilat[ion], or "conceal[ment]," and adds the requirement that the defendant act with the intent to impair the object's use in an official proceeding).  Fitzsimons is therefore wrong to say that if a defendant has not interfered with any evidence, "the verbs in section 1512(c) have no object to reference." Def.'s Mot. Dismiss at 29 n.11.  The verbs "obstructs, influences, or impedes" take as their object the "official proceeding," here the January 6 election certification.  18 U.S.C. § 1512(c)(2).

The next "problem" *Miller* identified was *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on non-relevant grounds by Johnson v. United States*, 576 U.S. 591 (2015).  In *Begay*, the Supreme Court interpreted a portion of the Armed Career Criminal Act which defined "violent felony" in part to include a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  553 U.S. at 140 (quoting 18 U.S.C. § 924(e)(2)(B) (2000 ed.)).  The Supreme Court held that the crimes listed in the phrase (burglary, arson, or extortion), served as examples illustrative of the kinds of crimes that fell within the "otherwise" clause.  *Id.* at 142.  In other words, the "otherwise" clause reached only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves"  *Id.* at 143.  To instead read the clause to reach *all* crimes that involved a serious potential risk of injury to another would rob the example crimes of a significant function.  *See id.* at 142.  Along the way, the Supreme Court rejected the

argument that the word "otherwise" was "*sufficient* to demonstrate that the examples do not limit the scope of the clause." *Id.* at 144 (emphasis in original).  The Supreme Court explained that "the word 'otherwise' *can* (we do not say *must*) refer to a crime that is similar to the listed examples in some respects but different in others—similar, say, in respect to the degree of risk it produces, but different in respect to the 'way or manner' in which it produces that risk." *Id.* at 144 (citation omitted).

*Begay*'s reasoning is not inconsistent with this Court's interpretation of "otherwise" in § 1512(c)(2).  As the sentence just quoted indicates, the Supreme Court did not come close to holding that the word "otherwise" always, or even usually, suggests similarity between the terms it connects.  And the Supreme Court adopted the same definition of "otherwise" the Court has used here: "in a different way or manner."  *Id.* at 144 (quoting *Otherwise*, Webster's Third New International Dictionary 1598 (1961)).

In the light of *Begay*'s "remarkably agnostic" discussion of the word "otherwise," *Montgomery*, 2021 WL 6134591, at *11, the differences between that word's use in § 924(e)(2)(B)(ii) and in § 1512(c)(2) are simply too great for *Begay* to provide much instruction on the proper interpretation of "otherwise" in this case, *cf. Yates*, 574 U.S. at 537 ("[I]dentical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute.").  In contrast to § 924(e)(2)(B)(ii), in which the word "otherwise" follows specific examples and appears in the same provision, "otherwise" in § 1512(c)(2) kicks off a new subsection "set off both by a semicolon and a line break."  *Sandlin*, 2021 WL 5865006, at *6 (quoting *Loughrin v. United States*, 573 U.S. 351, 359 (2014) for the proposition that such a structure may indicate that two clauses have "separate meanings").  Nor does "otherwise" in § 1512(c)(2) directly follow, and demand comparison to, a list of examples

18

like the list *Begay* held to limit the text following "otherwise" in § 924(e)(2)(B)(ii). *See United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17 (D.D.C. 2009); *McHugh*, 2022 WL 1302880, at *5 (observing that unlike in § 924(e)(2)(B)(ii), "§ 1512(c) does not include "a continuous, parallel list of adjectival terms").

Moreover, and in part because of § 1512(c)'s separate-subsection structure, the Court's interpretation of "otherwise" does not rob any of the words in § 1512(c) of their function in the way that *Begay* feared a more expansive interpretation of the "otherwise" clause in § 924(e)(2)(B)(ii) might have rendered the example crimes unnecessary. *See Begay*, 553 U.S. at 142. As the Court has noted, § 1512(c)(1) focuses coverage on actions directed to records, etc., and undertaken with the intent to prevent the record from being used in an official proceeding; § 1512(c)(2) serves as a catch-all in part by shifting to focus on actions directed toward the official proceeding itself. *See Montgomery*, 2021 WL 6134591, at *12; *McHugh*, 2022 WL 1302880, *6–7. To be sure, many obstructive actions may violate both subsections. But "substantial 'overlap between . . . two clauses . . . is not uncommon in criminal statutes,'" *Montgomery*, 2021 WL 6134591, at *12 (quoting *Loughrin*, 2021 WL 6134591, at *12), so this feature does not cast doubt on the Court's interpretation.

Also animating *Miller*'s skepticism about interpreting § 1512(c)(2) to reach beyond conduct related to evidence was the broader structure of § 1512 and surrounding provisions. It would be odd, according to *Miller*, for a broad prohibition on a wide range of obstructive acts to appear in the "middle-back" of § 1512, a section whose other provisions "criminalize fairly discrete conduct in narrow contexts." 2022 WL 823070, at *11 ("As examples, subsection (a) criminalizes, among other things, killing another person to prevent the attendance of a person at an official proceeding, 18 U.S.C. § 1512(a)(1)(A), or using physical force (or a threat of it)

against a person with the intent to cause someone to withhold testimony from an official

proceeding, *id.* § 1512(a)(2)(B)(i).  Subsection (b), in turn, focuses on verbal conduct, such as

knowingly using threats with intent to influence, delay, or prevent some testimony at an official

proceeding.  *Id.* § 1512(b)(1).  And subsection (d) criminalizes the intentional harassment of a

person and thereby hindering, delaying, preventing, or dissuading any person from attending or

testifying in an official proceeding.  *Id.* § 1512(d)(1).").  Along similar lines, *Miller* was

concerned that reading § 1512(c)(2) to expand beyond document-related conduct would cause it

to subsume many of the narrower, specific provisions found in § 1512.  *Id.* at *12.

   A look at the historical development of the statute reveals that this structure is not as odd

as it might at first seem.  The Sarbanes-Oxley Act added § 1512(c) to a preexisting version of

§ 1512.  As all seem to accept, the prosecution of Arthur Andersen LLP in the aftermath of the

Enron scandal had "exposed a loophole in then-existing federal obstruction statutes."  *McHugh*,

2022 WL 1302880, at *7.  18 U.S.C. §§ 1503(a) and 1505 prohibited a wide range of obstructive

conduct, but only when directed toward proceedings that were already pending.  *Id.*  "On the

other hand, § 1512 applied to *all* official proceedings, pending or not, but prohibited only

*indirect* obstruction: harming, threatening, or harassing another person to induce them to obstruct

the proceeding." *Id.* (emphasis in original and citation omitted).  The Sarbanes-Oxley Act's

addition of § 1512(c) was part of the effort to "close this loophole" by creating direct liability for

obstructive conduct, including document destruction.  *Id.* at *8; *see Miller*, 2022 WL 823070, at

*11.  In this context, the overlap that concerned Judge Nichols makes sense.  As Judge Bates

explained:

> the category of "direct obstruction" criminalized by paragraph (c)(2) *includes* the
> forms of indirect obstruction prohibited by the rest of § 1512.  Like squares and
> rectangles, every example of indirect obstruction—say, threatening a witness to
> keep them from testifying at a hearing—is also an example of (or an attempt at)

> direct obstruction, since the act of threatening the witness itself obstructs, influences, or impedes the hearing.  By adding a new prohibition on direct obstruction to § 1512, Congress did not *duplicate* pre-existing provisions, *contra Miller*, 2022 WL 823070, at *12, but instead expanded the statute to include additional forms of obstructive conduct, necessarily creating overlap with the section's other, narrower prohibitions.

*McHugh*, 2022 WL 1302880, at *8 (emphasis in original).

Indeed, even Fitzsimons's narrowed, evidence-focused interpretation of § 1512(c)(1) would create overlap with some neighboring provisions, such as § 1512(a)(1)(B)'s prohibition on killing another person in order to prevent the production of a document in an official proceeding. *See id.* ("[T]he canon against surplusage merely favors that interpretation which *avoids* surplusage, not the construction substituting one instance of superfluous language for another." (quoting *United States v. Ali*, 718 F.3d 929, 938 (D.C. Cir. 2013)).  Congress could only have avoided *all* overlap with the pre-existing statutory structure it was adding to by repealing "§ 1512's pre-existing prohibitions on indirect obstruction and rewrit[ing] the statute to create a single, blanket obstruction offense," a dramatic step it "was under no obligation to take." *Id.* at *9.  Against this background, and against the plain meaning of the broad language of § 1512(c), the Court does not find Congress's decision to place the new subsection (c) in the "middle-back" of § 1512, rather than, say, at its beginning or end, to be a salient indicator of the subsection's meaning. *See id.* at *8 n.14 (explaining that, contrary to *Miller*, 2022 WL 823070, at *12, the "elephants in mouseholes" canon does not apply because § 1512(c)(2), interpreted to extend beyond spoliation, does not fundamentally alter a regulatory scheme in an ancillary provision or using vague terms, but rather uses plain, broad terms).

*Miller* drew its own conclusion from the statutory history, based on the fact that when Congress drafted the new § 1512(c), it borrowed language from the pre-existing indirect-liability prohibitions in § 1512(b)(2).  2022 WL 823070, at *12.  Section 1512(b)(2)(B) made it unlawful

to use intimidation, threats, corrupt persuasion, or misleading conduct to cause another person to "alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding," just like the new § 1512(c)(1) makes it unlawful directly (and corruptly) to "alter[], destroy[], mutilate[], or conceal[] a record, document, or other object, or attempt[]to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." *Id.* at *12 (quoting 18 U.S.C. § 1512(b)(2) (1996)); 18 U.S.C. § 1512(c) (2002)).  Congress lifted the same language from § 1512(b)(2)(B) when it enacted § 1512(a)(2)(B)(ii)'s prohibition on using physical force or the threat of physical force to cause another person to tamper with a record with the intent to impair its use in an official proceeding. *See id.*

*Miller* thought it a "fair inference that, by adding subsection (c) to fill the gap in § 1512, and by drawing heavily from a single provision out of four already included in subsection (b), Congress intended subsection (c) to have a narrow, limited focus—just like subsection (b)(2)(B)." *Id.*  That seems right for subsection (c)(1), the part of § 1512(c) that actually borrowed its language from subsection (b), but not for subsection (c)(2), which both added "otherwise,"—i.e., "in a different way or manner"—to set itself off from the borrowed language in subsection (c)(1), and used its own new, broad language: "obstructs, influences, or impedes." Thus, *Miller*'s examination of the relationship between subsections (b) and (c) of § 1512 proves too much: Congress's choice to use new, expansive language for subsection (c)(2), rather than to follow the specific borrowing approach it used for subsection (c)(1), underscores that subsection (c)(2) should be read broadly.  *Cf. McHugh*, 2022 WL 1302880, at *10.

In sum, contrary to *Miller*, § 1512(c)(2) unambiguously means "that a crime will occur in a different ('otherwise') manner compared to § 1512(c)(1) if the defendant 'obstructs, influences,

or impedes any official proceeding' without regard to whether the action relates to documents[,] records[,]" or types of evidence.  *See Petruk*, 781 F.3d at 446–47.  Fitzsimons proposes to find support for his contrary narrowed reading, or for the proposition that the text is at least ambiguous such that the rule of lenity favors his interpretation, by invoking the Supreme Court's decision in *Yates v. United States*, 574 U.S. 528 (2015), as well as legislative history.[8]  But these sources do not support Fitzsimons's reasoning or inject ambiguity into the statute.

Fitzsimons relies on *Yates* principally for its discussion of two canons of statutory interpretation, *ejusdem generis* and *noscitur a sociis*.  *See* Def.'s Mot. Dismiss at 11, 29 n.11. But the differences between § 1512(c) and 18 U.S.C. § 1519, the statute at issue in *Yates*, illustrate why those canons do not apply to this case.  In *Yates*, both a four-justice plurality opinion and a separate opinion concurring in the judgment by Justice Alito held that 18 U.S.C. § 1519's prohibition on the knowing "alter[ation], destr[uction], mutilat[ion], conceal[ment], cover[ing] up, falsifi[cation], or mak[ing] of a false entry in any record, document, or *tangible object*" with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States" did not apply to the defendant's throwing overboard of a fish in order to thwart a federal officer's investigation into the unauthorized catching of undersized fish.  574 U.S. at 532, 544–45 (plurality opinion); *id.* at 550 (Alito, J., concurring in the judgment).  Though a fish was a

---

[8] Fitzsimons also collects cases discussing § 1512(c)(2) prosecutions for conduct that *did* interfere with evidence.  Def.'s Mot. Dismiss at 29–30.  But "at least one court of appeals has affirmed a § 1512(c)(2) conviction where the defendant's obstructive conduct did not relate to evidence."  *Sandlin*, 2021 WL 5865006, at *9 (discussing *United States v. Reich*, 479 F.3d 179 (2d Cir. 2007) (Sotomayor, J.), which involved a defendant who had forged a judicial order to "trick[] the opposing party into withdrawing a mandamus petition—conduct directed not at altering evidence that would be used in the proceeding but rather at stopping the proceeding altogether").

"tangible object" in a literal sense, both opinions concluded that "tangible object" in § 1519 referred only to objects like those preceding the term in the statutory list, objects "used to record or preserve information." *Id.* at 544–45 (plurality opinion); *id.* (Alito, J., concurring in the judgment).

Both the plurality and Justice Alito relied, in part, on *noscitur a sosciis* and *ejusdem generis*. *Id.* at 543–46 (plurality opinion); *id.* at 549–50 (Alito, J., concurring in the judgment). *Noscitur a sosciis* stands for the principle that "a word is known by the company it keeps," and helps courts "to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" *Id.* at 543 (citation omitted); *see also Overdevest Nurseries, L.P. v. Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021) ("The traditional canon of construction, *noscitur a sociis*, dictates that words grouped *in a list* should be given related meaning." (quoting *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (emphasis added)). The "related canon" of *ejusdem generis* "counsels" that "where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates*, 574 U.S. at 546 (citation omitted and cleaned up). These canons apply neatly to the interpretation of "tangible object" in § 1519, which is directly adjacent to and serves as the general end of a list of more specific words: "record, document, or tangible object." 18 U.S.C. § 1519.

But these canons do not apply neatly to "otherwise obstructs, influences, or impedes" in § 1512(c). These verbs do not come as the general end of the list of more specific verbs in subsection (c)(1) ("alters, destroys, mutilates, or conceals"), nor do they appear in a single list alongside them. *See Caldwell*, 2021 WL 6062718, at *18 ("[B]oth the *ejusdem* and the *noscitur*

canon apply when the term in question is directly preceded by a list of terms." (quoting

*Overdevest Nurseries, L.P.*, 2 F.4th at 983)).  Rather, the "alters, destroys, mutilates, or conceals"

list appears in subsection (c)(1), which "describes one way to obstruct, influence, or impede an

official proceeding: through evidence spoliation."  *Id.*  Subsection (c)(2), set off, it bears

repeating, by a semicolon and a line break, creates a "distinct offense[]" with its own list of

verbs: "otherwise obstructs, influences, or impedes."  *Sandlin*, 2021 WL 5865006, at *6.

Besides the semicolon and line break, the two lists are separated by the intervening subsection

(c)(1) intent requirement, the phrasing of which does not fit with that of subsection (c)(2) ("with

the intent to impair the object's integrity or availability for use in an official proceeding").

Therefore, unlike § 1519, *noscitur a sociis* and *ejusdem generis* do not guide the proper

interpretation of § 1512(c)(2).  *See Caldwell*, 2021 WL 6062718, at *18; *Sandlin*, 2021 WL

5865006, at *6; *Nordean*, 2021 WL 6134595, at *8; *Montgomery*, 2021 WL 6134591, at *14.

Another difference between this case and *Yates*: in the latter, both the plurality and

Justice Alito were motivated by the fact that a broader interpretation of the statute would make

nonsense of certain combinations of the statutory terms: "How does one make a false entry in a

fish?" 574 U.S. at 551 (Alito, J., concurring in the judgment); *see id.* at 545–46 (plurality

opinion).  Reading § 1512(c)(2) to extend beyond evidence-related conduct does not present any

similar problem.  In fact, focusing on the verbs of the two different subsections within § 1512(c)

underscores their differences in scope.  Subsection (c)(1)'s verbs ("alters, destroys, mutilates, or

conceals") would make little sense if applied to the object of the verbs in subsection (c)(2), an

"official proceeding."  Nor could one take subsection(c)(2)'s verbs ("obstructs, influences, or

impedes") and cleanly apply them to the objects of the verbs in subsection (c)(2), "record,

document, or other object."  *Montgomery*, 2021 WL 6134591, at *14.

Fitzsimons closes with a general discussion of legislative history, which cannot alter the Court's understanding of the plain text of § 1512(c)(2) in context. *See* Def.'s Mot. Dismiss at 31. "Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Miller*, 2022 WL 823070, at *13 (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)). It is true that several statements by members of Congress suggest that Congress's primary intent in passing § 1512(c) in the wake of the Enron/Arthur Andersen debacle was to protect against document shredding, and in particular, to close the loophole that existed with respect to direct liability for document shredding. *McHugh*, 2022 WL 1302880, at *11 (collecting statements); *Miller*, 2022 WL 823070, at *14 (collecting statements). But Fitzsimons has not cited any legislative history indicating that Congress affirmatively wished to stop there; to the contrary, Senator Hatch explained that § 1512(c) would "strengthen[] an existing federal offense that is often used to prosecute document shredding *and other forms of obstruction of justice*." *McHugh*, 2022 WL 1302880, at *11 (quoting 48 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch)).

In any event, "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Montgomery*, 2021 WL 6134591, at *16 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)). As the Court has explained, § 1512(c) unambiguously extends beyond conduct that relates to impairment of evidentiary documents, records, objects, or other types of evidence. Therefore, the rule of lenity has no role to play in this case. *See McHugh*, 2022 WL 1302880, at *12 ("[T]o invoke the rule of lenity, a court must conclude that 'there is a grievous ambiguity or uncertainty

in the statute . . . .'") (quoting *United States v. Burwell*, 690 F.3d 500, 515 (D.C. Cir. 2012) (en banc)).  The Court denies Fitzsimons's motion to dismiss Count III.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count III of the Superseding Indictment (ECF No. 57) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  05/26/2022                                                    RUDOLPH CONTRERAS
                                                                      United States District Judge