UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                                    Case No. 1:21-cr-158-RC

KYLE FITZSIMONS

## MOTION TO COMPEL DEFENDANT TO REIMBURSE
## THE COURT FOR COSTS OF HIS DEFENSE ATTORNEY

Kyle Fitzsimons, whom the Court appointed the Office of the Federal Public Defender

("FPD") to represent based on Fitzsimons's attestation that he lacked the ability to pay for

counsel, has raised at least $20,215 for his legal defense through a crowdfunding webpage. The

United States requests, pursuant to 18 U.S.C. § 3006A(f) and the All Writs Act, 28 U.S.C. §

1651, that this Court enter an order directing (1) Fitzsimons to deposit $12,300 into the Court

registry, and (2) the FPD to inform the Court if its costs to represent Fitzsimons exceed that

amount, now or at any point in the future.

### I.      Background

On February 1, 2021, United States Magistrate Judge for the District of Columbia Zia M.

Faruqui signed a warrant for Fitzsimons's arrest pursuant to a criminal complaint for four crimes

relating to his conduct on the grounds of the U.S. Capitol on January 6, 2021, including two

felonies: assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1); and civil disorder, in

violation of 18 U.S.C. § 231(a)(3). ECF No. 1. Three days later, federal agents arrested

Fitzsimons at his home in Maine. ECF No. 8.

At Fitzsimons's initial appearance in the District of Maine, Fitzsimons provided a

financial declaration detailing his assets, which led United States Magistrate Judge John H. Rich

III to appoint the FPD to represent Fitzsimons. *See United States v. Fitzsimons*, 2:21-mj-28-JHR,

ECF Nos. 5-7. Fitzsimons waived his right to an immediate detention hearing in the District of Maine; as a result, Magistrate Judge Rich ordered Fitzsimons to be detained temporarily and transferred to the District of Columbia, the prosecuting district, where the detention hearing would be held. *See id.* ECF Nos. 11-13.

Approximately three weeks later, on February 26, 2021, a grand jury sitting in the District of Columbia indicted Fitzsimons on ten charges, including five felonies, related to his conduct at the U.S. Capitol on January 6, 2021.[1] ECF No. 5. About a month later, on March 29, 2021, Magistrate Judge Faruqui held Fitzsimons's initial appearance hearing in the District of Columbia, for which Fitzsimons retained private counsel. *See* Minute Entry for March 29, 2021; ECF No. 10. Ultimately United States Magistrate Judge G. Michael Harvey ordered that Fitzsimons be detained pending trial. *See* Minute Entry for April 7, 2021; ECF Nos. 19-20, 36.

About a month later, on May 3, 2021, Fitzsimons's retained private attorneys filed a motion seeking to withdraw as counsel and asking the Court to appoint the FPD to represent him. ECF No. 23. In support of their motion, Fitzsimons's private attorneys noted that Fitzsimons had been incarcerated for three months and is "indigent, making the appointment of counsel appropriate." *Id.* The Court granted the motion. ECF No. 25. On May 12, 2021, the FPD entered its appearance on Fitzsimons's behalf. ECF No. 26. The FPD has represented Fitzsimons—at taxpayer expense—ever since.

Since then, a crowdfunding webpage was created for Fitzsimons's legal defense. As of June 1, 2022, 266 people had given a total of $20,215:

---

[1] The indictment has been superseded twice. The current indictment charges Fitzsimons with eleven counts, six of which are felonies. *See* ECF No. 69.



See https://givesendgo.com/StoptheSmear.   As of June 9, 2021, however, the webpage no longer appeared to be active and does not appear to have been reactivated since then.

Although the webpage indicates that it was created by Molly DeMarco and that she will receive any funds donated through it, investigation into Fitzsimons' family indicates that DeMarco is his cousin. Moreover, Fitzsimons has established on a series of recorded jail calls with family members that he has control of the GiveSendGo fundraising site and/or that the funds raised in his name by DeMarco are intended to directly benefit him. For example, in a recorded jail call with his mother on May 22, 2021, at approximately 1:02 p.m., Fitzsimons stated:

> I wanted to see if I could get some of that, ah, money over [. . .] So this is what we need to do: we need to get in touch with Molly and get the Venmo money sent to Justine. Justine has a Venmo and Molly said she can transfer it that way. [. . .] So get Justine's Venmo and tell Molly to give her like a thousand bucks.

3

Based on their familiarity with Fitzsimons's family developed over the course of this investigation, law enforcement agents know that "Justine" is the name of Fitzsimons's wife, from whom he is now estranged, and "Molly" refers to his cousin, Molly DeMarco.

In a related call three days later, on May 25, 2021, Fitzsimons called "Molly" [DeMarco] directly. A few minutes into the call, DeMarco stated, "I'm still trying to figure out, you know what you want me to do, like, with the money and everything? [. . .] It was very hard for me to raise that money, and no one in our family was willing to share that GiveSendGo but me." DeMarco told Fitzsimons not to send money to other people but rather "I want you to worry about you in there, because you are going to need money…but, if you're going the public defender route, or whatever it is you're doing, you know, that's a little different, but you are still going to need money for things."

Viewed in conjunction with each other, the May 22 and May 25, 2021, recorded jail phone calls between Fitzsimons and his mother and Fitzsimons and DeMarco, respectively, demonstrate that the funds raised via the GiveSendGo account were intended to benefit Fitzsimons in any manner he saw fit. In fact, the May 25, 2021, call with DeMarco explicitly shows that DeMarco sought instruction from Fitzsimons as to how the money should be distributed and spent. While the GiveSendGo account/campaign may have been created by DeMarco, Fitzsimons was the de facto controller of it.

These points are underscored by another recorded jail call between Fitzsimons and DeMarco that occurred approximately one year later, on May 21, 2022, at approximately 12:55 p.m. During that call, Fitzsimons and DeMarco made the following statements:

> DEMARCO: people have been donating to your, um, fundraiser. [. . .] I just have to manually, for some reason, transfer it to your account. . . because GiveSendGo goes through Stripe. So, I just have to log into Stripe

> and transfer it into your account every few days. [. . .] People have been
> donating. There's a lot of people too, that are like, that are subscribed.
> Like every month they donate to you.
>
> FITZSIMONS: What did we get up to?
>
> DEMARCO: Well, um, it's at like, 4-something, 4-9 something…I did the
> math and it should carry your truck until like Spring or something like
> that.

The May 21, 2022, call with DeMarco demonstrates that not only were the funds being raised in

Fitzsimons' name and transferred to Fitzsimons, but also that the funds were and are being used

for Fitzsimons' personal expenses, such as his truck payments. In effect, by providing Fitzsimons

with free legal representation while he raises money off his legal jeopardy, the taxpayers are

subsidizing Fitzsimons' truck payments and other personal expenses.

While the GiveSendGo account captured in the photograph above appears to have been

removed from the website some time between June 1 and June 9, 2022, Fitzsimons' efforts to

raise and keep money for himself, while simultaneously claiming a lack of financial resources so

that the taxpayers foot his legal bills, did not stop at that point. On June 16, 2022, at

approximately 6:17 p.m., Fitzsimons called his mother from jail. A few minutes into the call,

they had the following exchange:

> FITZSIMONS: Have you talked to Molly recently?
>
> MOTHER: No.
>
> FITZSIMONS: Yeah, she's uh, she's not answering my calls. [. . .] She took
> down that thing that was helping to pay bills. [. . .] I was wondering if there
> was any way you could put up a new one?
>
> MOTHER: I don't know, I'd have to look into it, Kyle. I'm not that savvy.

The United States has not identified a currently active fundraising account for Fitzsimons, either

on GiveSendGo or several other prominent platforms the government has searched. The United

States has not yet reviewed Fitzsimons' recent recorded jail calls or every fundraising platform, however.

## II.      Legal Memorandum

The Criminal Justice Act ("CJA") requires district courts to provide legal counsel for criminal defendants charged with a felony when they are unable to pay for an attorney. 18 U.S.C. § 3006A(a)(1)(A). By that same token, the plain language of the CJA authorizes the Court to order repayment of court-appointed attorney fees and expenses if it finds that funds are available to the defendant to pay such fees.

Specifically, if—at any time after counsel is appointed—the court "finds that the person is financially able to obtain counsel or make partial payment for the representation, it may … authorize payment as provided in subsection (f), as the interests of justice may dictate." *Id.* § 3006A(c); *see United States v. Wilson*, 597 F.3d 353, 357 (6th Cir. 2010) ("What the [CJA] gives with one hand to a criminal defendant 'financially unable' to pay for legal services it takes away with the other if the defendant turns out to be 'financially able' to obtain counsel"). Under subsection (f) of the Act,

> [w]henever … the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid … to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

*Id.* § 3006A(f).

Section 3006A(f) is not limited in time. Rather, the CJA's reimbursement provision is extremely broad, permitting a court to require payment of CJA-funded defense costs "*[w]henever* … the court finds that funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f) (emphasis added).

6

The current attorney case compensation maximum under the CJA is $12,300. 18 U.S.C. §
3006A(d)(2) (providing that the attorney case compensation maximums increase simultaneously
by the aggregate percentage increases in the maximum hourly non-capital rate, rounded to the
nearest $100). Payment in excess of this maximum amount may be made for "extended" or
"complex" representation whenever the district judge certifies that the amount of the excess
payment is necessary to provide fair compensation and the payment is approved by the chief
judge of the circuit or his designee. 18 U.S.C. § 3006A(d)(3).

Here—although trial is set to begin on August 16, 2022—this Court has the authority to
enter a reimbursement order now. *See United States v. Pacheco-Romero*, 995 F.3d 948, 959
(11th Cir. 2021) (affirming decision to order reimbursement of CJA fees before payment voucher
submitted), *citing United States v. Robertson*, 980 F.3d 672, 677 (9th Cir. 2020) ("The plain
language of [section 3006A(f)] makes it clear that the district court acted within its discretion
when it ... ordered reimbursement and payment for future defense costs before sentencing."
(internal quotation marks omitted)). If necessary and justified, the Court may issue a
supplementary reimbursement order after sentencing, or even after any appeal. *See* 7A Guide to
Judiciary Policy § 210.40.40 (instructing courts to "direct the person to pay the available excess
funds to the clerk of the court at the time of [counsel's] appointment or from time to time after
that").

That said, this Court must first "make an 'appropriate inquiry' as to the availability of the
funds for payment as required under subsection (f)." *United States v. Homrighausen*, 366 F.
App'x 76, 77 (11th Cir. 2010) (citing *United States v. Bursey*, 515 F.2d 1228, 1236, 1238 (5th
Cir. 1975)). And, this Court "must base the reimbursement order on a finding that there are
specific funds, assets, or asset streams (or the fixed right to those funds, assets or asset streams)

7

that are (1) identified by the court and (2) available to the defendant for the repayment of the court-appointed attorneys' fees." *United States v. Moore*, 666 F.3d 313, 322 (4th Cir. 2012).

Fitzsimons meets this criteria. As of the date of this filing, it appears that Fitzsimons has access to $20,215 through GiveSendGo and/or DeMarco. People have donated money for the express purpose of paying for Fitzsimons's legal defense, and therefore, those funds should be used to reimburse the CJA Fund (and, by extension, the taxpayers) for the costs of Fitzsimons's representation.

Accordingly, the United States requests that this Court issue an order directing (1) Fitzsimons to deposit $12,300 into the Court registry, and (2) the FPD to inform the Court if its costs to represent Fitzsimons exceed that amount, now or at any point in the future.

Dated August 4, 2022.

Respectfully Submitted,

For the United States:

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney
Florida State Bar No. 1026025
United States Attorney's Office, Detailed
601 D Street, N.W.
Washington, DC 20530
Phone: (813) 274-6370
E-mail: Michael.Gordon3@usdoj.gov

*/s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
United States Attorney's Office, Detailed
601 D Street, N.W.
Washington, DC 20530
Phone: (214) 659-8604
E-mail: Douglas.Brasher@usdoj.gov

9

**CERTIFICATE OF SERVICE**

I certify that on August 4, 2022, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system, which will send a notice of electronic filing to all parties of

record.

/s/ Michael M. Gordon
MICHAEL M. GORDON
Assistant United States Attorney