**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**KYLE FITZSIMONS,**<br><br>**Defendant.** | **Case No. 21-cr-158-RC** |

# NON-PARTY CABLE NEWS NETWORK, INC.'S MOTION TO QUASH AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

LEAVE TO FILE GRANTED

8/10/2022

Charles D. Tobin (D.C. Bar No. 256308)
Chad R. Bowman (D.C. Bar No. 484150)
Matthew E. Kelley (D.C. Bar No. 1018126)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington D.C. 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-229
bowmanchad@ballardspahr.com

*Attorneys for Non-Party Cable News Network, Inc.*

Non-Party Cable News Network, Inc. ("CNN"), a news organization that received a criminal trial subpoena for unpublished newsgathering records, respectfully files this Motion to Quash by and through undersigned counsel.

## INTRODUCTION

Through an Eastern District of Pennsylvania-captioned subpoena dated July 20, 2022, addressed to "CNN," and served in the District of Columbia on the corporate agent for the separate CNN Productions, Inc., defendant Kyle Fitzsimons ("Defendant") seeks to require non-party Cable News Network, Inc. ("CNN") to produce "raw," unpublished news interview footage pursuant to Federal Rule of Criminal Procedure 17(c). Procedural defects aside, Defendant's document subpoena should be quashed both because it seeks discovery beyond the scope of Rule 17(c) and because the newsgathering material sought by the subpoena is protected from compelled disclosure by the First Amendment and federal common law.

## RELEVANT FACTS

### A. Charges Against Defendant

As the Court knows, Defendant faces an eleven-count indictment stemming from his actions at the U.S. Capitol on January 6, 2021. *See generally* May 24, 2022 Mem. Op. & Order at 1-2, ECF No. 74. Defendant "is accused of having violently attacked law enforcement officers stationed at the tunnel entrance of the Lower West Terrace—the location where some of the most violent acts of the day occurred—and of having physically injured some of those officers as part of an attempt to obstruct the certification of the Electoral College vote." *Id.*

According to the Criminal Complaint, Capitol building surveillance footage showed Defendant, wearing a dark sweater and white butcher's coat, at the terrace archway, where he "moved to the front of the group of rioters" and assaulted officers. *See* Criminal Compl. at 2,

ECF No. 1.[1] The Criminal Complaint includes screen-grab from both Capitol surveillance footage and police body-worn camera video footage, showing Defendant "lower[ing] his shoulder and charg[ing] at the line of officers," "grabbing at officers," "swinging at officers," and "engaging with officers." *Id.* at 3-5. As the Court noted, several of these video recordings were filed by the Government in support of Defendant's pre-trial detention and formed a basis for "Magistrate Judge Harvey's thoughtful opinion that the weight of the evidence against Defendant was strong." Mem. Op. of Dec. 6, 2021 at 9, ECF No. 54. In making those judicial records—including video footage of Defendant clashing with police—available to the public, the Court concluded that that "the Exhibits provided the Court with significant information on the Defendant's contribution to '[t]his violent challenge to a constitutionally mandated process.'" *Id.* Indeed, they "informed the Court that Defendant belonged to the specific 'class of cases' involving individuals engaged in 'violent, assaultive conduct . . . against the various law enforcement officers in that police line' from law enforcement's perspective that day." *Id.* (citation omitted).

The operative Indictment charges Defendant with assaulting and injuring three specific officers, identified as "Officer S.B." (Count Three), "Detective P.N." (Count Four), and "Sergeant A.G." (Count Five). *See* 2d. Superseding Indictment, ECF No. 69.

**B. The CNN Interview of Aquilino Gonell**

On June 3, 2021, CNN telecast an interview of two Capitol Police officers, including Sergeant Aquilino Gonell—presumably, "Sergeant A.G.," one of the three officers identified in the Second Superseding Indictment. The 5-minute, 29-second telecast segment containing

---

[1] The U.S. Department of Justice also posted the Criminal Complaint at https://www.justice.gov/usao-dc/case-multi-defendant/file/1365566/download.

portions of the interview was embedded into a web article the following day, and remains available online. *See* Whitney Wild & Jeremy Herb, *"I thought I was going to lose my life": Capitol Police officers share their harrowing January 6 stories for the first time*, CNN (June 4, 2021), https://www.cnn.com/2021/06/03/politics/capitol-police-officers-exclusive-interview-january-6/index.html. During the telecast, Gonell does not mention Defendant, and the Defendant does not appear in any of the footage shown during the telecast. *Id.* Rather, Gonell generally discusses his experience during many hours of fighting to keep rioters out of the Capitol, and the physical and emotional toll the incident took on him. *Id.*

In addition to the interview with CNN, Sgt. Gonell has provided sworn testimony to the House Select Committee to Investigate the January 6th Attack on the U.S. Capitol, submitting written testimony on January 27, 2021 and oral testimony on July 27, 2021. He has also more recently testified in other criminal cases involving those accused of participating in the January 6, 2021 violence, including a March 4, 2022 sentencing hearing for Duke Edward Wilson and a July 26, 2022 sentencing hearing for Mark Ponder.[2]

**C. The Defendant's Subpoena**

On July 25, 2022, nearly 14 months after the CNN interview and just three weeks before the scheduled August 16 bench trial in this case, Defendant served a records subpoena in the District of Columbia on a registered agent for CNN Productions, Inc. The subpoena, addressed simply to "CNN," was on a form identified as the U.S. District for the Eastern District of

---

[2] *United States v. Ponder*, 21-cr-259-TSC (D.D.C); *United States v. Wilson*, No. 21-345-RCL (D.D.C.); *see also, e.g.*, Spencer Hsu, *D.C. man is 2nd to receive longest sentence in Jan. 6 police assault*, WASH. POST (July 26, 2022), https://www.washingtonpost.com/dc-md-va/2022/07/26/ponder-sentencing-jan6-prison/ (noting Gonell testimony).

Pennsylvania, and a proof of service showed that the subpoena was for "Thomas Dibiase – Capitol Police General Counsel." *See* Decl. of Chad R. Bowman ("Bowman Decl."), Exhibit A.

The subpoena requests "Any and all raw footage from an interview with Capitol Police Officer Aquilino Gonell, which aired on CNN on June 4, 2021. Documents accepted in lieu of personal appearance." *Id.*

By telephone conference on Monday, August 1, 2022, counsel for CNN conferred with defense counsel who issued the subpoena. Bowman Decl. ¶ 3. Counsel for CNN noted likely procedural problems with the subpoena—including that the it may have been served on the wrong corporate entity—but on the substance attempted to narrow the document request to telecast footage in light of CNN's policy of objecting to compelled disclosure of unpublished newsgathering materials. *Id.* Counsel for the defense declined to narrow the subpoena, explaining a perceived need to learn whether Sgt. Gonell said anything in the June 2021 CNN interview about receiving his injuries that was not part of his congressional testimony or his testimony in other criminal cases. *Id.* Defense counsel offered to reconsider the subpoena if she was allowed to review the footage, or perhaps if CNN was prepared to make representations about the contents of the raw footage. *Id.*

Following consideration, CNN communicated through counsel on August 5, 2022 that it had identified just over two hours of June 2021 interview footage of Sgt. Gonell within its possession and declined to make the unpublished materials available to counsel or to make representations about its contents. *Id.* ¶ 4. CNN also explained that it would bring this motion to quash promptly and requested that counsel for the Defendant so inform the Court at the August 5, 2022 pre-trial conference. *Id.* This motion followed.

## ARGUMENT

### I. The Court Should Grant CNN's Motion Under Rule 17 Because Compelling the Production of Newsgathering Materials Would Be Unreasonable Here

Before even reaching the issue of the reporter's privilege, the Court should grant the motion under the Federal Rules of Criminal Procedure. As the Supreme Court explained in *United States v. Nixon*, 418 U.S. 683 (1974), a Rule 17(c) document subpoena is "not intended to provide a means of discovery in criminal cases." *Id.* at 698 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)). Rather, "Rule 17(c) may be used to obtain only evidentiary materials." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *see also Bowman Dairy Co.*, 341 U.S. at 219 (same). Thus, the courts have recognized a fundamental distinction between

> exculpatory material in the possession of the prosecution, generally available [to a criminal defendant] under the teachings of *Brady v. Maryland*, and exculpatory *evidence* in the possession of third parties. Only the latter is retrievable under a rule 17(c) subpoena; naked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within the rule.

*United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (emphasis added). Under Rule 17(c), therefore, a party seeking discovery must show that the documents sought "are evidentiary and relevant" and that the subpoena "is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700 (citing *Iozia*). Indeed, "Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation." *In re Sealed Case*, 121 F.3d 729, 754-55 (D.C. Cir. 1997).

Rule 17 provides that "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). A district court should grant a motion to quash a subpoena issued pursuant to Rule 17(c) in the absence of a showing that the

subpoena satisfies the applicable "standards of relevance, materiality and necessity." *United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989); *see also United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) ("Rule 17(c), which is not a discovery device, confines a subpoena duces tecum to admissible evidence, authorizes the quashing of the subpoena if it is 'unreasonable or oppressive' and indulges pretrial inspection of subpoenaed papers only upon a showing" that satisfies the *Nixon* test) (footnotes omitted). Where a subpoena does not meet those standards, and is instead deemed a "'fishing expedition'" into the news media's unpublished materials, courts regularly quash such forays. *See United States v. Schneider*, 2003 U.S. Dist. LEXIS 27324, at *16-18 (N.D. Cal. Nov. 18, 2003) (quashing subpoena to news organization as "unreasonable" and "cumulative" where it sought potentially contradictory or illuminating statements by defendant, despite ample other interviews and statements in party's possession); *United States v. Carriles*, 263 F.R.D. 400, 405-06 (W.D. Tex. 2009) (same, where criminal defendant failed to establish news materials were sufficiently relevant and admissible); *United States v. Rosenschein*, 2020 U.S. Dist. LEXIS 127220, at *14 (D.N.M. July 20, 2020) (same).

Here, it is clear that the subpoena represents just such a "fishing expedition" that is precluded under Rule 17(c). As noted above, the events of January 6, 2021—and more specifically of Defendant's actions—are captured on Capitol surveillance video and on police body worn camera video, which in significant part form the evidentiary basis for the charges in this case. Defendant has no reason to believe that unsworn outtakes of a June 2021 media interview by one of three police officers Defendant allegedly injured on January 6, 2021 is somehow "exculpatory." Rather, he appears to hope that Sgt. Gonell might have said something in the unaired potions of the interview that might become admissible as impeachment material at

trial—and that the officer has not already said in his sworn congressional testimony or testimony in other January 6-related prosecutions. This theory is entirely speculative, and fails the "standards of relevance, materiality and necessity." *North*, 708 F. Supp. at 404. Because of the speculative quality of requests like Defendant's here, courts applying Rule 17(c) frequently quash subpoenas to journalists seeking impeachment material as premature, where the witness has not even yet taken the stand. *See Cuthbertson*, 651 F.2d at 195 (reversing denial of news media's motion to quash because the record did not "disclose . . . any potential use of the [subpoenaed] materials as evidence in the trial other than for purposes of impeachment"); *Rosenschein*, 2020 U.S. Dist. LEXIS 127220, at *14 (quashing defendant's subpoena to news media where relevance of purported impeachment material that defendant sought was "weak"); *Carriles*, 263 F.R.D. at 405-06 (same); *United States v. Hendron*, 820 F. Supp. 715, 718 (E.D.N.Y. 1993) (same, noting witness had not even given impeachable testimony).

In addition, as the Supreme Court has held in evaluating Rule 17 subpoenas, "what is reasonable depends on the context." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (internal marks omitted). Here the subpoenaed materials are unpublished newsgathering materials. The strong federal policy to protect newsgathering is expressed not only in the evidentiary privileges recognized around the country, *see infra* Part II, but also in the U.S. Department of Justice Guidelines, which serve to "safeguard[] the essential role of the free press in fostering government accountability and an open society." 28 C.F.R. § 50.10(a)(2). The Attorney General broadened that policy last year, barring compulsory process on members of the news media except in the most extraordinary circumstances, and extending that bar to "the full range of compulsory process" and making clear the prohibition "applies regardless of whether the compulsory legal process seeks testimony, physical documents, telephone toll records,

metadata, or digital content."[3] Allowing speculative discovery of the press here, on the basis that an unsworn statement in unpublished newsgathering information might theoretically become useful to the defense for purposes of impeachment, would expose a host of media organizations to similar speculative subpoenas in similar January 6 prosecutions. That would undeniably chill news reporting about this topic of clear national importance—the "violent breach of the Capitol" that "was a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). In this context, the unreasonable burden on CNN, and on the media generally, also weighs in favor of quashing the subpoena under Rule 17(c).

**B. The Subpoena is Also Properly Quashed Because Unpublished Newsgathering Materials Are Privileged Under the First Amendment and the Common Law**

In addition to being unreasonable under Rule 17, the subpoena also seeks materials subject to a qualified reporter's privilege. The D.C. Circuit has made it clear that, absent extraordinary circumstances, news organizations cannot be compelled to disclose information created in the course of his newsgathering. No such circumstances are present here.

1. A Qualified Reporter's Privilege Applies In This Case

Although there is no federal shield law for journalists, despite the existence of such statutory protections in most states,[4] a number of federal Circuits, including the D.C. Circuit,

---

[3] *See* Press Release, *DOJ Formally Adopts New Policy Restricting Use of Compulsory Process to Obtain Reporter Information*, DOJ (July 19, 2021), https://www.justice.gov/opa/pr/doj-formally-adopts-new-policy-restricting-use-compulsory-process-obtain-reporter-information; *see also* Attorney General Memo on Compulsory Process, https://www.justice.gov/ag/page/file/1413001/download.

[4] The District of Columbia, for example, affords journalists substantial protection against the compelled disclosure of "[a]ny news or information" they procure "in the course of pursuing professional activities that is not itself communicated in the news media," D.C. Code §§ 16-4702(1)-(2) & 16-4703. As of 2021, "40 states and the District of Columbia have enacted statutes, known as 'shield laws,' that give journalists some form of privilege against compelled

(continued...)

recognize a reporter's privilege based on either the First Amendment or common law. *See, e.g.*, *Shoen v. Shoen*, 5 F.3d 1289, 1292 & n.5 (9th Cir. 1993) (surveying cases and noting that the First, Second, Third, Fourth, Fifth, Eighth, Tenth, and D.C. Circuits have recognized a privilege for journalists). The D.C. Circuit has applied the qualified privilege in both civil and criminal cases. *United States v. Ahn*, 231 F.3d 26, 36 (D.C. Cir. 2000) (criminal case); *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981) (civil action).[5] At least five other Circuits have similarly recognized a qualified privilege in criminal cases.[6]

Most relevant here, in *Ahn* a criminal defendant "sought to subpoena" several television reporters whose stations had "broadcast reports detailing [his] arrest." 231 F.3d at 35-37. The journalists "filed a motion to quash arguing that reporters possess a qualified privilege not to

(...continued)
production of confidential or unpublished information." *Introduction to the Reporter's Privilege Compendium*, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, https://www.rcfp.org/introduction-to-the-reporters-privilege-compendium/.

[5] The D.C. Circuit has rejected the existence of the constitutional privilege only in the context of federal grand jury investigations. *See In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964, 970 (D.C. Cir. 2005) (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). Yet, even in that context, some protections remain. *Branzburg*, 408 U.S. at 709 (Powell, J., concurring) ("Certainly, we do not hold . . . that state and federal authorities are free to annex the news media as an investigative arm of the government" (internal marks omitted)).

[6] *See, e.g.*, *United States v. LaRouche Campaign*, 841 F.2d 1176, 1181 (1st Cir. 1988) ("disclosure of such confidential material would clearly jeopardize the ability of journalists and the media to gather information and, therefore, have a chilling effect on speech"); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) ("information may only be compelled from a reporter claiming privilege if the party requesting the information can show that it is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources"); *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) ("We see no legally-principled reason for drawing a distinction between civil and criminal cases when considering whether the reporter's interest in confidentiality should yield to the moving party's need for probative evidence."); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) ("the interests of the press that form the foundation for the privilege are not diminished because the nature of the underlying proceeding out of which the request for the information arises is a criminal trial"); *Farr v. Pitchess*, 522 F.2d 464, 467-68 (9th Cir. 1975) (recognizing First Amendment rights but finding them outweighed in facts of case).

disclose confidential sources," and the district court granted that motion, finding "that the reporters' testimony was not 'essential and crucial' to [defendant's] case and was not relevant to determining [his] guilt or innocence," and concluding that defendant "had not demonstrated that the reporters' qualified privilege should be overcome." *Id.* The D.C. Circuit affirmed that ruling under an abuse-of-discretion standard, after finding that the plaintiff failed to establish a claim. *Id.*; *see also United States v. Whitmore*, 32 Media L. Rep. 1402, 1410 (D.D.C. 2002) (quashing subpoena to journalist on alternative grounds but noting that "there are very strong arguments" that subpoena sought testimony in violation of the "qualified privilege for a journalist"), *aff'd in relevant part*, 359 F.3d 609 (D.C. Cir. 2004).

While Judge Walton questioned the extent of the *Ahn* holding in *United States v. Libby*, and rejected a reporter's privilege in federal criminal cases in this Circuit, 432 F. Supp. 2d 26, 45-46 (D.D.C. 2006), that decision nevertheless acknowledged that a subsequent D.C. Circuit concurrence "could arguably lead to the inference that *Ahn* stands for the proposition that a balancing test must be employed in criminal cases at the trial stage," *id.* at 45 n.23. Indeed, concurring in *Miller*, Judge Tatel wrote that the D.C. Circuit has continued to "find[] constitutional protections for reporters" and expressly noted that, in *Ahn*, the court "affirmed the denial of a criminal defense subpoena on grounds that the defendant 'failed to carry his burden' of 'demonstrating that the reporters' qualified privilege should be overcome.'" 397 F.3d at 987-88 (Tatel, J., concurring).[7] In addition, despite the skepticism expressed in *Libby*, other courts have continued to read *Ahn* as recognizing a reporter's privilege in criminal cases. *See, e.g.*, *United States v. Wuterich*, 68 M.J. 511, 521 (N-M. Ct. Crim. App. 2009) (citing *Ahn* for the

---

[7] As the decision of a different Court in this District, *Libby* "is not binding" on this Court. *Am. Council of the Blind v. WMATA*, 133 F. Supp. 2d 66, 74 n.2 (D.D.C. 2001).

proposition that "the District of Columbia Circuit ha[s] also applied the reporter's privilege in the criminal context" for "cases involving confidential material").

*Ahn* remains binding in this Circuit and is in line with nearly a half-dozen other Circuits. In addition, a reporter's privilege emerges not just from the First Amendment but also the common law and as a result Federal Rule of Evidence 501. Although the D.C. Circuit did not reach that question in *Miller*, Judge Tatel would have held that the common law provides such protection, even in the grand jury context, and Judge Henderson indicated that she would so rule if the issue were squarely before the court. 397 F.3d at 1003 (Tatel, J., concurring in judgment); *id.* at 983 (Henderson, J., concurring). *Compare also Cuthbertson*, 630 F.2d at 146-47 (recognizing common law protection in criminal case), *with Lee v. Dep't of Justice*, 401 F. Supp. 2d 123, 139 (D.D.C. 2005) (declining to recognize common law protection in civil case).[8]

2. The Privilege Cannot Be Overcome Here

As the D.C. Circuit articulated the standard in *Ahn*, a criminal defendant seeking to compel the disclosure of information from a news organization must first demonstrate that such information is "'essential and crucial'" to his case. *Ahn*, 231 F.3d at 37 (quoting district court). For all of the reasons set forth in Part I, *supra*, Defendant cannot do so. Indeed, courts around the country routinely reject "possible impeachment" as a basis for overcoming a qualified reporter's privilege. *See, e.g.*, *In re Nat'l Broad. Co.*, 79 F.3d 346, 352 (2d Cir. 1996) ("Ordinarily, impeachment material is not critical or necessary to the maintenance or defense of a claim . . . ."); *Damiano v. Sony Music Entm't, Inc.*, 168 F.R.D. 485, 497 (D.N.J. 1996) ("[T]he

[8] The arguments supporting recognition of such protection grounded in the common law and Rule 501 are set forth in significant detail in Judge Tatel's separate opinion in *Miller*, 397 F.3d at 997-1003. This reasoning has become even more persuasive in light of recent Justice Department policy against service of compulsory process on journalists.

material in question is being sought to impeach the defendant with his own words, and impeachment will not suffice as it does not 'go to the heart of the plaintiff's claim.'" (citation and alterations omitted)); *Redd v. U.S. Sugar Corp.*, 1993 WL 428667, at *2 (Fla. Cir. Ct. May 27, 1993) ("[T]he possible use of the information for impeachment does not go to the heart of issues before the Court . . . ."); *Doe v. Cummings*, 1994 WL 315640, at *2 (N.Y. Sup. Ct. Jan. 18, 1994) ("The possibility that any of the requested statements could be used at a future time for impeachment is not sufficient to overcome the protection afforded the press by the statute."); *Holland v. Centennial Homes, Inc.*, 1993 WL 755590, at *6 (N.D. Tex. Dec. 21, 1993) ("[M]ere speculation of possible impeaching material" is insufficient ground for ordering journalist to produce tapes of interviews with plaintiffs sought by defendants). This Court should do so as well and find that, even if the subpoena survives review under Rule 17(c), it is properly quashed as seeking privileged material.

//

//

//

## CONCLUSION

For all of the foregoing reasons, the Motion to Quash should be granted.

Dated: August 5, 2022

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Chad R. Bowman*

Charles D. Tobin (D.C. Bar No. 256308)
Chad R. Bowman (D.C. Bar No. 484150)
Matthew E. Kelley (D.C. Bar No. 1018126)
1909 K Street NW, 12th Floor
Washington, D.C. 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-229
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
kelleym@ballardspahr.com

*Attorneys for Non-Party*
*Cable News Network, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of August 2022, I caused true and correct copies of the foregoing to be served by email and U.S. Mail First Class on the following:

Natasha Taylor-Smith
FEDERAL COMMUNITY DEFENDER OFFICE
Trial Unit
601 Walnut Street
Suite 545 West
Philadelphia, PA 19106
natasha_taylor-smith@fd.org

*Attorneys for Defendant*

Brandon K. Regan
DOJ-USAO, Federal Major Crimes
555 4th St NW
Washington, DC 20530
brandon.regan@usdoj.gov

Douglas Burton Brasher
DOJ-USAO, Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, TX 75242
Email: douglas.brasher@usdoj.gov

Puja Bhatia
DOJ-USAO
555 4th Street NW, Ste Office 9439
Washington, DC 20530
puja.bhatia@usdoj.gov
Designation: Assistant U.S. Attorney

Michael Matthew Gordon
DOJ-USAO, Criminal Division, Violent Crimes and Narcotics Section
400 North Tampa Street, Suite 3200
Tampa, FL 33602
michael.gordon3@usdoj.gov

Robert Craig Juman
U.S. ATTORNEY'S OFFICE
500 E. Broward Blvd.
Ft. Lauderdale, FL 33132
robert.juman@usdoj.gov

*Attorneys for the United States of America*

/s/ *Chad R. Bowman*
Chad R. Bowman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**KYLE FITZSIMONS,**<br><br>**Defendant.** | **Case No. 21-cr-158-RC** |

**DECLARATION OF CHAD R. BOWMAN IN SUPPORT OF**
**NON-PARTY CABLE NEWS NETWORK, INC.'S MOTION TO QUASH**

I, Chad R. Bowman, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a partner in the Washington, D.C. office of Ballard Spahr LLP, and am admitted to practice in this Court. I am one of the attorneys representing non-party Cable News Network, Inc. ("CNN"). I submit this declaration to put before the Court certain information and documents relevant to CNN's Motion to Quash ("the Motion"). I have personal knowledge of the facts set forth herein and would be competent to testify to them.

2. On July 25, 2022, counsel for Defendant Kyle Fitzsimons ("Defendant") served a subpoena on the registered agent for CNN Productions, Inc., a related company to CNN. A true and correct copy is attached as Exhibit A. The subpoena is returnable for 10 a.m. on August 16 and commands the production of "[a]ny and all raw footage from an interview with Capitol Police Officer Aquilino Gonell, which aired on CNN on June 4, 2021. Documents accepted in lieu of personal appearance."

3. By telephone conference on Monday, August 1, 2022, I conferred with Defendant's counsel who issued the subpoena. Although I noted that I was unsure whether the subpoena had been served on the correct corporate entity, I raised the news organization's substantive concern about disclosing unpublished interview recordings and its general policy of asserting the reporter's privilege in response to legal process. I asked whether counsel would agree to limit the subpoena to published material. Defendant's counsel declined, explaining that Sergeant Aquilino Gonell may have made statements in portions of the 2021 interview that were not aired by CNN that are relevant to his injuries and beyond what he has stated in prior testimony. We discussed compromise options such as her review of the material or CNN representations about the contents of the recordings, and I agreed to consult with CNN.

4. On the morning of Friday, August 5, I communicated to counsel for Defendant that CNN had identified just over two hours of interview footage from the June 2021 interview of Sergeant Gonell within its possession but declined voluntarily to make the unpublished materials available for review or to make representations about its contents. I explained that CNN would promptly file a Motion to Quash and asked her so notify the Court at the pre-trial conference scheduled for that morning.

5. Defendant opposes the Motion.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 5th day of August 2022.

*/s/ Chad R. Bowman*
Chad R. Bowman