IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | CRIMINAL NUMBER 21-158 (RC) |
| : | |
| KYLE FITZSIMONS   : | |

## MOTION TO ENFORCE DEFENSE SUBPOENA

Defendant Kyle Fitzsimons, by and through his attorney, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, respectfully requests that this Court enforce the July 20, 2022 subpoena for records commanding Thomas Dibiase, General Counsel, D.C. Capitol Police, to produce any and all complaints against Capitol Police Sergeant Aquilino Gonell. Defense Subpoena of Capitol Police, attached hereto as Exhibit A. The complaints against Sergeant Gonell are necessary to demonstrate Sergeant Gonell's bias in favor of the government, and to allow Mr. Fitzsimons a meaningful opportunity to confront witnesses against him in accordance with the Confrontation Clause of the Sixth Amendment.

**WHEREFORE**, for all the reasons set forth above and in the accompanying Memorandum of Law, as well as any other reasons which may become apparent at a hearing or the Court deems just, Defendant Fitzsimons respectfully submits that the Court enforce the subpoena to produce records of any and all complaints against Sergeant Gonell.

Respectfully submitted,

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 21-158 (RC) |
| | : | |
| KYLE FITZSIMONS | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO ENFORCE DEFENSE SUBPOENA**

I.   BACKGROUND

Kyle Fitzsimons was arrested in Maine on February 4, 2021, after an arrest warrant was issued in Washington, D.C., for his conduct at the Capitol on January 6, 2021. According to security footage from the Capitol, Mr. Fitzsimons can be seen pushing and grabbing against officers who were holding a police line in an arched entranceway on the lower west terrace of the Capitol Building. The government alleges that Sergeant Gonell is one of the officers holding the police line. As a result of this conduct, Mr. Fitzsimons is accused in an eleven-count Second Superseding Indictment with 18 U.S.C. § 231(a)(3) (civil disorder) (Counts One); 18 U.S.C. §§ 1512(c)(2), 2 (obstruction of an official proceeding) (Count Two); 18 U.S.C. § 111(a)(1) and (b) (assaulting, resisting, or impeding certain officers using a dangerous or deadly weapon) (Count Three); 18 U.S.C. § 111(a)(1) and (b) (assaulting, resisting, or impeding certain officers and inflicting bodily injury) (Counts Four and Five); 18 U.S.C. § 111(a)(1) (assaulting, resisting, or impeding certain officers) (Count Six); 18 U.S.C. §§ 1752(a)(1), (2) and (4) (entering and remaining in a restricted building or grounds, disorderly and disruptive conduct in a restricted building or grounds, and engaging in physical violence in a restricted building or grounds) (Counts Seven, Eight, and Nine); and 40 U.S.C. §§ 5104(e)(2)(D) and (F) (disorderly and

disruptive conduct and act of physical violence in the capitol grounds of buildings) (Counts Ten and Eleven). *See* ECF No. 69.

Count Five of the Second Superseding Indictment alleges that Mr. Fitzsimons did forcibly assault, resist, oppose, impede, intimidate, interfere and inflict bodily injury on an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, that is, Sergeant A.G., an officer from the United States Capitol Police. To prove Count Five, Mr. Fitzsimons anticipates that the government will call Sergeant Aquilino Gonell, who will testify that he sustained injuries due to Mr. Fitzsimons's conduct on January 6.

In anticipation of Sergeant Gonell's testimony, on July 26, 2022, Gisela Garcia, Investigator, Federal Community Defender Office for the Eastern District of Pennsylvania, served a subpoena for records upon Thomas Dibiase, General Counsel, D.C. Capitol Police. Exhibit A. The subpoena directed Mr. Dibiase to produce "Any and all complaints against Capitol Police officer Aquilino Gonell." *Id*. Capitol Police have failed to comply with the subpoena. Mr. Fitzsimons now seeks a Court Order to enforce the subpoena and for the Thomas Dibiase, General Counsel, D.C. Capitol Police, to produce any and all complaints against Aquilino Gonell.

## II.   DISCUSSION

Rule 17(c) of the Federal Rules of Criminal Procedure provides in relevant part:

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Rule 17(c)

Rule 17(c) was adopted as part of the Federal Rules of Criminal Procedure in 1944. The Advisory Committee Note states that "[t]his rule is substantially the same as rule 45(b) of the Federal Rules of Civil Procedure," which permits parties in a civil action to obtain discovery from non-parties by way of a subpoena. This brief overview may indicate that the rule drafters initially thought Rule 17(c) would govern discovery from non-parties, while Rule 16 would govern discovery from the Government.

Rule 17(c) permits the parties to a criminal case to subpoena witnesses and documents, *see generally* Fed. R. Crim. P. 17(c), but pretrial production may only be required at the direction of the Court. *see* Fed. R. Crim. P. 17(c). The purpose of such pretrial production is "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698–99 (1974).

To warrant pretrial production, the requesting party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id*. at 700. While Rule 17(c) is not to be used for "general 'fishing expedition[s],'" the Supreme Court has found its requirements met where "there was a sufficient likelihood that [subpoenaed tape recordings] contain[ ] conversations relevant to the offenses charged in [an] indictment" that would be admissible as evidence at trial. *Id*. at 700; *United States v. Apodaca*, 251 F. Supp. 3d 1, 9–10 (D.D.C. 2017).

### a. Complaints against Sergeant Gonell are relevant because the records show Sergeant Gonell's bias and will help the trier of fact assess Sergeant Gonell's credibility.

"Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. "Relevant evidence is admissible" unless the rules of evidence provide otherwise, and "irrelevant evidence is not admissible." Fed.R.Evid. 402.

3

> [E]vidence going to a witness' capacity for truthfulness or bias is always relevant. *See Davis v Alaska*, 415 U.S. 308, 316-317 (1974) ("The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony . . . . [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.").

Here, Mr. Fitzsimons plans to discredit Sergeant Gonell's testimony by showing that the Officer has a reason to slant his testimony in favor of the government. Because Sergeant Gonell is subject to prior complaints, he is likely to try to minimize any violent actions he instigated on January 6 and exaggerate Mr. Fitzsimons's actions. Evidence concerning Sergeant Gonell's bias is especially relevant because Sergeant Gonell was hitting and laying on top of other protestors when Mr. Fitzsimons allegedly made contact with Sergeant Gonell.

    **b. Complaints against Sergeant Gonell are admissible to show Sergeant Gonell's bias, to examine his capacity for truthfulness, and to vindicate Mr. Fitzsimons's rights under the Confrontation Clause.**

If the documents are deemed relevant, the Court must then determine whether they would be admissible. *See Nixon*, 418 U.S. at 701. Documents sought pursuant to a Rule 17(c) subpoena can be deemed admissible for a variety of purposes, including impeachment. *Id.*; *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006); *United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir.1988) (concluding that it was proper to disclose impeachment evidence before trial pursuant to a Rule 17(c) subpoena because the "putative key witness, whose general testimony is already known, is scheduled to testify").

Evidence otherwise inadmissible may be admitted if it shows bias on the part of the witness. *See United States v. Abel*, 469 U.S. 45, 56 (1984); *see also United States v. Lindemann*,

4

85 F.3d 1232 (7th Cir.1996) (holding that admissibility of extrinsic evidence to show bias is governed by Rules 402 and 403, not 608(b)).

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*Abel*, 469 U.S. at 52. Testimony concerning bias "is permitted even on direct examination." *United States v. Powell*, 124 F.3d 655, 661 (5th Cir.1997); *United States v. Slough*, 22 F. Supp. 3d 29, 34 (D.D.C. 2014).

Evidence of complaints against Sergeant Gonell is also admissible under Rule 608(b), where the Court may permit a party to cross-examine a witness about "specific instances of [his] conduct" where the cross-examination will bear on the witness's "character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). While admissibility under Rule 608 also requires that the proffered cross-examination topic satisfy the balancing test of Rule 403, *see United States v. Davis*, 183 F.3d 231, 257 (3d Cir. 1999), evidence going to a witness' capacity for truthfulness or bias is always relevant. *See Davis v Alaska*, 415 U.S. 308, 316-317 (1974) ("The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony . . . . [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *See also* Fed. R. Evid. 608 advisory committee's note ("Effective cross-examination demands that some allowance be made for going into matters of this kind."). Where, as here, the witness to be cross-examined is one of the government's key witnesses in a criminal case, that person's capacity for truthfulness is relevant to, and highly probative on, the ultimate question of guilt or innocence. *See United States v. Whitmore*, 359 F.3d 609, 620-21 (D.C. Cir. 2004). Rule 608

consequently permits a broad scope of inquiry on cross-examination on matters of a witness's credibility. *See United States v. Dawson*, 434 F.3d 956, 958-59 (7th Cir. 2006).

In addition to being admissible to show bias and under Rule 608(b), the defense's desired cross-examination evidence must be admissible to satisfy Mr. Fitzsimons's Sixth Amendment Confrontation Clause right to challenge the government's proof through cross-examination. Such cross-examination is the primary object of the Confrontation Clause, and that constitutional guarantee must be given greatest deference when the government's witnesses are critical witnesses. *See Davis* 415 U.S. at 318-319 (holding that district court, despite its wide latitude to impose limits on cross-examination, abused its discretion where it prohibited defense from inquiring into biases of critical government witness); *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) ("The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness."); *McCandless v. Vaughn*, 172 F.3d 255, 266 (3d Cir. 1999) ("Confrontation Clause concerns are heightened . . . where a 'key' or 'crucial' witness' testimony is involved."). Sergeant Gonell's testimony is crucial to the government. Sergeant Gonell is allegedly one of the police officers tasked with holding the line at the entrance to the capital where Mr. Fitzsimons allegedly assaulted multiple officers. Sergeant Gonell's eyewitness testimony about Mr. Fitzsimons's actions will be essential in establishing the assaults for which Mr. Fitzsimons stands charged. Therefore, Mr. Fitzsimons's rights under the Confrontation Clause are paramount with respect to Sergeant Gonell.

Crucially, "it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied." *United*

6

*States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006); s*ee United States v. Orena,* 883 F.Supp. 849, 868 (E.D.N.Y.1995).

### c. The subpoenaed documents are sufficiently specific and narrow in scope.

The critical factor in determining the defense's purpose—whether seeking items for use at trial or going on a fishing expedition—is often the scope of the subpoena. *See United States v. Caruso*, 948 F. Supp. 382, 399 (D.N.J. 1996). Where the subpoena seeks a specific document that clearly is relevant, courts invariably conclude that the subpoena is proper. *See Id.*; *In re Grand Jury Subpoena Duces Tecum Served upon PHE, Inc.*, 790 F.Supp. 1310, 1313–15 (W.D.Ky.1992). Where the subpoena seeks a broad range of documents described generically it is much more likely to be characterized as other than a good faith effort to produce evidence for use in trial. *See, e.g., United States v. Hang*, 75 F.3d 1275, 1283–84 (8th Cir.1996); *United States v. Arditti*, 955 F.2d 331, 345–46 (5th Cir.1992); *United States v. Leonard*, 817 F.Supp. 286, 295 (E.D.N.Y.1992).

Here, Mr. Fitzsimons seeks specific information—complaints against Sergeant Gonell. This is not a broad range of documents that gives rise to the inference that Mr. Fitzsimons is on a fishing expedition. Mr. Fitzsimons intends to use this specific evidence to show Sergeant Gonell's bias. Because he has received complaints in the past, he would be more inclined to distance himself from similar actions in this case and slant his testimony in favor of the government.

### III.  CONCLUSION

For all of the reasons set forth above, Mr. Fitzsimons respectfully requests that this Court enforce the July 20, 2022 subpoena for records commanding Thomas Dibiase, General Counsel, D.C. Capitol Police, to produce any and all complaints against Capitol Police Sergeant Aquilino

7

Gonell. The complaints against Sergeant Gonell are necessary to demonstrate Sergeant Gonell's bias in favor of the government, and to allow Mr. Fitzsimons a meaningful opportunity to confront witnesses against him in accordance with the Confrontation Clause of the Sixth Amendment.

                                          Respectfully submitted,

                                          */s/ Natasha Taylor-Smith*
                                          NATASHA TAYLOR-SMITH
                                          Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the foregoing Defendant's Motion to Enforce Defense Subpoena to be served by Electronic Case Filing ("ECF") upon Douglas Burton Brasher, Assistant United States Attorney, United States Attorney's Office, 1100 Commerce Street, Third Floor, Dallas, TX 75242, and Michael Matthew Gordon, Assistant United States Attorney, United States Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, FL 33602.

/s/ Natasha Taylor-Smith
NATASHA TAYLOR-SMITH
Assistant Federal Defender

DATE:   August 11, 2022