UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | | |
| | : | | |
| v. | : | Case No.: | 21-cr-158 |
| | : | | |
| KYLE FITZSIMONS, | : | Re Document No.: | 83 |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION & ORDER**

**GRANTING NON-PARTY PETITIONER CABLE NEWS NETWORK'S MOTION TO QUASH**

**I.  BACKGROUND**

Defendant Kyle Fitzsimons is facing an eleven-count indictment stemming from his actions at the United States Capitol on January 6, 2021.  2d Superseding Indictment, ECF No. 69.  The charges against him include civil disorder; obstruction of an official proceeding; using a dangerous or deadly weapon on certain officers; two counts of inflicting bodily injury on certain officers; assaulting, resisting, or impeding certain officers; entering and remaining in a restricted building or grounds; disorderly and disruptive conduct in a restricted building or grounds; engaging in physical violence in a restricted building or grounds; disorderly conduct in the Capitol grounds or buildings; and act of physical violence in the Capitol grounds or buildings.  *Id.*  Of particular relevance to the present motion, Count 5 of the Second Superseding Indictment charges Mr. Fitzsimons with inflicting bodily injury on a law enforcement officer identified as "Sergeant A.G."  *Id.* at 3–4.

A bench trial is set to begin in this matter on August 16, 2022.  *See* Min. Entry of June 15, 2022.  In advance of trial, counsel for Mr. Fitzsimons served a subpoena on non-party Cable News Network, Inc. ("CNN") on approximately July 25, 2022.  *See* Non-Party Cable News

Network, Inc.'s Mot. Quash & Mem. P. & A. Supp. Thereof ("CNN Mot.") at 3–4, ECF No. 83. The subpoena requested "[a]ny and all raw footage from an interview with Capitol Police Officer Aquilino Gonell, which aired on CNN on June 4, 2021." *Id.*; Ex. A of Decl. of Chad R. Bowman, ECF No. 83-1 (copy of subpoena). The published version of that interview discussed Sgt. Gonell's experience defending the Capitol in general terms but did not reference Mr. Fitzsimons either directly or indirectly. CNN Mot. at 2–3. Subsequently, CNN identified approximately two hours of unpublished interview footage but declined to make it available to defense counsel or provide representations about its content. Decl. of Chad R. Bowman ¶ 4, ECF No. 83. Instead, CNN filed the present motion to quash.

The Government does not take a position on the present motion, *see* Gov't's Resp. Mot. Quash, ECF No. 84, while Mr. Fitzsimons opposes, *see* Def.'s Resp. to Non-Party Cable News Network, Inc.'s Mot. Quash ("Def.'s Opp'n"), ECF No. 86. CNN has also filed a reply. Non-Party Cable News Network, Inc.'s Reply Supp. Mot. Quash ("CNN Reply"), ECF No. 87. Because the subpoena exceeds the proper scope of Federal Rule of Criminal Procedure 17(c),[1] the Court **GRANTS** the Motion to Quash.

## II. ANALYSIS

Federal Rule of Criminal Procedure 17(c) provides, in relevant part, that:

> (1) *In General*. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> (2) *Quashing or Modifying the Subpoena*. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

---

[1] The Court accordingly does not reach CNN's alternative privilege arguments.

Fed. R. Crim. P. 17(c).  A long line of precedent makes clear that Rule 17(c) is "not intended to provide a means of discovery for criminal cases."  *See United States v. Nixon*, 418 U.S. 683, 698–99 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)); *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) ("The test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device."); *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) ("Rule 17(c) . . . is not a discovery device . . . .").

Under the Supreme Court's test laid out in *Nixon*, a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Nixon*, 418 U.S. at 700.  The previous formulation of the 17(c) test, which the Supreme Court also cited approvingly in *Nixon*, required that "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"  *Id.* at 699–700 (citing *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)).  The burden of satisfying the "exacting standards" of the three-part *Nixon* test falls "on the party requesting the information."  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386–87 (2004).

### A. Relevance

Mr. Fitzsimons's subpoena does not satisfy this first prong.  He represents that he "plans to impeach Sergeant Gonell's testimony by showing that Sergeant Gonell has retold the events of January 6 differently on different occasions."  Def.'s Opp'n at 4.  Evidence that can impeach a witness's memory and truthfulness, and therefore credibility, would be relevant.  *Davis v.*

3

*Alaska*, 415 U.S. 308, 316 (1974) ("[T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness."). The problem is that Mr. Fitzsimons has not provided any reason to think that the CNN outtakes contain potential impeachment material.

      Mr. Fitzsimons does not provide a basis even in the vaguest terms for his belief that Sgt. Gonell recounted the events of that day any differently in the video outtakes than in any of his other public and sworn testimony on the subject, including in the Congressional hearings on the events of January 6, 2021 and in cases of other January 6 defendants. *See* CNN Mot. at 3 & n.2 (describing other testimony). Nor does Mr. Fitzsimons point out any way in which those other publicly available statements by Sgt. Gonell are contradictory internally, with each other, or with the published CNN footage.[2] In short, Mr. Fitzsimons has identified a way in which the footage might be relevant but has proffered nothing more than his own expectation that that it actually will be. This falls well short of his burden.

      The relevance prong is not satisfied merely because a defendant can articulate what they hope to find in the subpoenaed evidence. The Supreme Court in *Nixon* held that the Special Prosecutor had made "a *sufficient preliminary showing* that each of the subpoenaed tapes contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700 (emphasis added). Other cases that have allowed defendants access to third-party materials in similar situations have made express findings that there was a reasonable likelihood the documents contained relevant evidence. *See United States v. LaRouche Campaign*, 841 F.2d

---

[2] If there are such inconsistencies among Sgt. Gonell's various public statements, that would also render the request for the footage cumulative and unnecessary in any event.

1176, 1180 (1st Cir. 1988) (noting that the district court made a "finding of likelihood that the outtakes would reveal inconsistent statements and bias; that is, relevant evidence" including "facial expressions . . . showing animus against defendants"); *United States v. Vasquez-Ortiz*, No. 07-cr-348, 2008 WL 11449045, at *2 (N.D. Ga. Jan. 23, 2008) (Baverman, Mag. J.) (finding that outtakes of a news program were relevant "because they show law enforcement arresting the defendant" and could "show that the defendant was illegally seized prior to his statements").

In contrast, courts have quashed subpoenas based on a defendant's mere expectation about what could be recovered without a showing of a sufficient likelihood that the documents actually contained relevant evidence. *See United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) ("Neither the government nor the defendants have explained how the CBS materials could be admissible as evidence, unless the interviewees testified and made inconsistent statements."); *United States v. Libby*, 432 F. Supp. 2d 26, 34–35 (D.D.C. 2006) (quashing a request for a reporter's phone records and calendar entries where "[i]n essence, the defendant is simply seeking to examine general categories of documents with the hope that they contain information that may be helpful to his defense . . . . This is not the proper role Rule 17(c) subpoenas are intended to play in the criminal arena"); *United States v. Nektalov*, No. S203-cr-828, 2004 WL 1574721, at *3 (S.D.N.Y. July 14, 2004) ("Defendant's anticipation that a comparison of all of Delgado's and Del Star's records to the apparent absence of records relating to defendant might advance his case does not demonstrate to the Court that the sought after documents are relevant and properly subject to a Rule 17(c) subpoena.").

Although Mr. Fitzsimons argues that production is necessary to vindicate his rights under the Confrontation Clause, Def.'s Mot. at 4–5 (collecting cases on the importance of cross-examination to the Confrontation Clause), the Sixth Amendment simply does not convert Rule

17(c) into a discovery device.³ Mr. Fitzsimons must show a reasonable likelihood that the outtakes contain relevant evidence but has instead not shown any likelihood at all.

### B. Admissibility

The admissibility factor overlaps somewhat with the relevance factor in this case, since only an impeachable inconsistency in the footage would make the footage relevant or admissible. First, a witness's memory and credibility are only at issue if that witness actually testifies. Although the Supreme Court in *Nixon* stated that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," *Nixon*, 418 U.S. at 701, "when a person is almost certain to testify as a witness at trial and there is an indication of what that testimony will be, then pre-trial production is appropriate," *Libby*, 432 F. Supp. 2d at 37–38. In light of the charges in Count 5, it seems highly likely that Sgt. Gonell will be called and will be a key witness for the Government.

But impeachment evidence is also necessarily dependent on how a given witness testifies. If Sgt. Gonell's public accounts of the events that day are all largely consistent, and he testifies consistently with those accounts, none of the other public statements would be admissible as impeachment evidence anyhow. *See Cuthbertson*, 651 F.2d at 195 ("Only after a witness has testified will his prior inconsistent statement cease to be hearsay . . . but we are unable to speculate on the likelihood of that occurrence."). Another example from *Libby* is clarifying: the court in that case examined drafts and internal correspondence about a series of news stories *in camera* to determine compliance with Rule 17(c), and found a "slight alteration between the

---

³ Although the Court fortunately need not resolve this issue, it observes that Mr. Fitzsimons is not the only one who invokes Constitutional equities in his favor—CNN also points to the First Amendment interest in protecting newsgathering activities and preventing chill of journalistic reporting on events of public interest. CNN Mot. at 7–8.

drafts" that made them proper impeachment evidence because "regardless of the substance of his trial testimony, [the reporter's] trial testimony cannot be consistent with both versions." *Libby*, 432 F. Supp. 2d at 42–43. But the court contrasted that ruling with the drafts of another reporter "whose documents appear internally consistent and thus will only be admissible if she testifies inconsistently with these documents." *Id.* at 43. Although the Court does not have the benefit of *in camera* review here,[4] it is Mr. Fitzsimons's burden to show with a reasonable probability that the documents he seeks are relevant and admissible. Despite the fact that Sgt. Gonell's other public statements are a known quantity to him, Mr. Fitzsimons has not directed the Court's attention to anything that would suggest a reasonable likelihood that Sgt. Gonell will testify inconsistently with any of his previous statements, and the Court declines to speculate.

Separately, the Court also notes that the publicly available portions of the interview only discuss Sgt. Gonell's experience in general that day, and neither Sgt. Gonell's statements or the video clips and photos in that segment show or reference Mr. Fitzsimons at all. *See* CNN Mot. at 3 (describing and citing to published interview). Although the reliability of Sgt. Gonell's memory of that day is relevant as a general matter, it is worth noting that any potential relevance of Sgt. Gonell's overall memory and recollection is a step removed from direct evidence about the crimes Mr. Fitzsimons himself is charged with. *See Libby*, 432 F. Supp. 2d at 37 (determining that notes regarding conversations with the defendant, which were at the heart of the charges in the case, were relevant, but that documents about a story request that could only "be used to attack [the reporter's] credibility because there appears to be a dispute as to whether such a request was actually made" were "at best only tangentially related to her memory of her conversations with the defendant").

---

[4] Nor has CNN or either party suggested *in camera* review as an alternative.

### C.  Specificity

The Court agrees with Mr. Fitzsimons that the subpoena identifies the information sought with reasonable specificity, as it requests the raw footage from a discrete and identifiable interview.  *See LaRouche Campaign*, 841 F.2d at 1179–80 (determining that a similar request for interview outtakes was specific).  Although CNN criticizes Mr. Fitzsimons's failure to point to specific portions within the footage, *see* CNN Reply at 3, requiring such "exquisite specificity" places defendants in "the impossible position" of having to describe in detail documents they cannot access, *United States v. Poindexter*, 727 F. Supp. 1501, 1510 (D.D.C. 1989).  And CNN obviously had no difficulty pinpointing the responsive footage.

Regardless, specificity alone is not enough to bring a request within Rule 17(c) where a subpoena fails to show that it seeks relevant and admissible evidence.  *See United States v. Carriles*, 263 F.R.D. 400, 405–06 (W.D. Tex. 2009) (finding that a request for video footage of an interview with the defendant was sufficiently specific but nonetheless improper under Rule 17(c) under the relevance and admissibility prongs).  Mr. Fitzsimons therefore fails to satisfy the *Nixon* test and the subpoena will be quashed.

### III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Non-Party Cable News Network, Inc.'s Motion to Quash (ECF No. 83) is **GRANTED.**

**SO ORDERED.**

Dated: August 14, 2022                                                                        RUDOLPH CONTRERAS
                                                                                                                United States District Judge