IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 21-158** |
| | : | |
| | : | |
| **KYLE FITZSIMONS** | : | |

## MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT ONE

Defendant Kyle Fitzsimons respectfully requests that this Court enter a judgment of acquittal on Count One of the Second Superseding Indictment. Count One alleges that, on or about January 6, 2021, Mr. Fitzsimons:

> committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is an officer from the United States Capitol Police or District of Columbia Metropolitan Police Department, lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder, and the civil disorder obstructed, delayed, and adversely affected the conduct and performance of a federally protected function

in violation of 18 U.S.C. § 231(a)(3).

In its case-in-chief, the government failed to introduce sufficient evidence to sustain a conviction under 18 U.S.C. § 231(a)(3) because the government failed to introduce evidence of any causal nexus between the defendant's prohibited act and the purported impact on interstate commerce.

**WHEREFORE**, for all the reasons set forth above and in the accompanying Memorandum of Law, Mr. Fitzsimons respectfully submits that the Court enter judgment of acquittal on Count One of the Indictment.

                Respectfully submitted,

                */s/ Natasha Taylor-Smith*
                NATASHA TAYLOR-SMITH
                Assistant Federal Defender

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 21-158 |
| | : | |
| KYLE FITZSIMONS | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT ONE**

I. **LEGAL STANDARD**

Under Rule 29 of the Federal Rules of Criminal Procedure, the Court must enter a judgment of acquittal on any offense charged for which the evidence is insufficient to sustain a conviction. In ruling on a motion for judgment of acquittal, the Court must "consider[ ] the evidence in the light most favorable to the government and determin[e] whether, so read, it is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt." *United States v. Kayode,* 254 F.3d 204, 212–13 (D.C.Cir.2001) (quoting *United States v. Harrington,* 108 F.3d 1460, 1464 (D.C.Cir.1997)). The Court must "accord[ ] the government the benefit of all legitimate inferences," *United States v. Weisz,* 718 F.2d 413, 437 (D.C.Cir.1983) (citations omitted), and accept the jury's verdict of guilt if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Arrington,* 309 F.3d 40, 48 (D.C.Cir.2002) (emphasis in original) (citations omitted). Put another way, the Court may grant a motion for judgment of acquittal only where "a reasonable juror *must necessarily* have had a reasonable doubt as to the defendant['s] guilt." *United States v. Weisz,* 718 F.2d at 437 (emphasis in original) (citations omitted).

The government has failed to meet its burden with regard to Count One because no rational trier of fact could find that Mr. Fitzsimons's acts had any impact on interstate commerce. Section 231(a)(3) criminalizes "any act" to obstruct, impede or interfere with a local police officer or firefighter performing lawful duties "incident to and during the commission of a civil disorder which *in any way or degree* obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce." (emphasis added).

## II.     DISCUSSION

Mr. Fitzsimons must be acquitted of the § 231(a)(3) offense because the government failed to introduce evidence that Mr. Fitzsimons acts had an impact on interstate commerce and because § 231(a)(3) exceeds Congress's power under the Commerce Clause.

The Commerce Clause gives Congress the "[p]ower . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Noneconomic intrastate activity may not be federally regulated unless "the regulated activity 'substantially affects' interstate commerce." *United States v. Lopez*, 514 U.S. 549, 559 (1995). In *Lopez*, the Supreme Court limited federal commerce power to three categories of activity: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "those activities that substantially affect interstate commerce." 514 U.S. at 558-59.

It is evident § 231(a)(3) does not involve either the channels or instrumentalities of commerce.[1] And because § 231(a)(3) does not substantially affect interstate commerce, the statute constitutes an unconstitutional exercise of Congress's power.

---

[1] "A piece of legislation that regulates the 'channels' of commerce either facilitates or inhibits the movement of goods or people through interstate commerce." *United States v. Reed*, No. CR 15-188, 2017 WL 3208458, at *8 (D.D.C. July 27, 2017). "Congress regulates the

2

To determine whether an activity has a "substantial effect" on interstate commerce, a court must consider the "controlling four-factor test" set forth in *Lopez*, and later articulated in *United State v. Morrison*: whether (1) the activity itself "has anything to do with commerce or any sort of economic enterprise, however broadly one might define those terms"; (2) "the statute contain[s] [an] express jurisdictional element"; (3) there is "legislative history [or] express congressional findings regarding the effects upon interstate commerce" of the regulated activity; and (4) "the link between [the regulated activity] and a substantial effect on interstate commerce is attenuated." *Morrison*, 529 U.S. at 610-612.

    a. Section 231(a)(3) does not regulate economic activity and does not support any larger scheme of economic regulations

The act of interfering with the duties of law enforcement officers in a civil disorder is not commercial or economic in nature. Section 231(a)(3) therefore fails the first *Lopez* factor. *Lopez* itself demonstrates this.

In *Lopez*, the Court struck down the Gun-Free School Zones Act of 1990 because it did not substantially affect interstate commerce. The Supreme Court first provided examples of economic activity that is properly regulated: intrastate coal mining, intrastate extortionate credit transactions, restaurants utilizing substantial interstate supplies, inns and hotels catering to interstate guests, and production and consumption of homegrown wheat. 514 U.S. at 559-60. In contrast, the Gun-Free School Zones Act had "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 567. Further, the Act

---

'instrumentalities' of commerce when it passes legislation that directs or inhibits the vehicles of economic activity—e.g., airplanes, steamships, automobiles, trains—or interstate means of communication—e.g., mail and wires." *Id.*

was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.*

Relying on *Lopez*, the Supreme Court in *Morrison* concluded that the civil remedy for gender-motivated violence under the Violence Against Women Act was a regulation of noneconomic activity that exceeded Congress's commerce authority. 529 U.S. at 617. Even though the VAWA was enacted with the support of significant congressional findings regarding the "nationwide, aggregated impact" of gender-motivated violence on interstate commerce, the Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id*. at 617. The "noneconomic, criminal nature of the conduct at issue was central" to the *Lopez* and *Morrison* rulings. *Morrison*, 529 U.S. at 610.

In contrast, in *Gonzales v. Raich*, the Supreme Court upheld a federal law prohibiting the intrastate cultivation of marijuana for personal use because the law formed an "essential part" of the Controlled Substances Act (CSA), which encompassed "a larger regulation of economic activity." 545 U.S. 1, 24-25 (2005) (quoting *Lopez*, 514 U.S. at 561). Indeed, the "primary purpose" of the CSA is "to control the supply and demand of controlled substances in both lawful and unlawful drug markets." *Id.* at 19. Understood within that larger framework, the challenged provision was a regulation on "economic activity" because "failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA." *Id*. at 22.

As in *Lopez* and *Morrison*, the statute here regulates noneconomic activity. The gravamen of § 231(a)(3) criminalizes obstruction, interference, and impeding state officers, with no direct connection to commerce or economic activity. And, unlike in *Raich*, § 231(a)(3) is not

part of any larger body of economic regulation; it involves "a brief, single-subject statute[,]" which "by its terms has nothing to do with commerce or any sort of economic enterprise, however broadly one might define those terms." *Raich*, 545 U.S. at 23-24 (distinguishing *Lopez*, 514 U.S. at 561) (internal quotation marks omitted); *accord Morrison*, 529 U.S. at 613 ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity").

b. The jurisdictional element of § 231(a)(3) does not limit the law's reach to activities that substantially affect interstate commerce

Section 231(a)(3) technically contains a commercial nexus element, which requires the civil disorder to "*in any way or degree* obstruct[ ], delay[ ], or adversely affect[ ] commerce or the movement of any article or commodity in commerce." (emphasis added). But this jurisdictional requirement is insufficient to satisfy *Lopez*'s test, for several reasons.

First, the commercial nexus element is not connected to the "any act" element. The commercial nexus clause unambiguously modifies the term "civil disorder," not "any act." Thus, a charge under § 231(a)(3) need not be supported by evidence that a defendant's act impacted interstate commerce. Instead, it requires evidence only that the act interfered with an officer engaged in the performance of duties "incident to and during the commission of a civil disorder," and that the civil disorder, not the individual's act, minimally affected commerce.

Second, the statutory "incident to and during" connector further diminishes any required link to interstate commerce. Although the statute does not make clear whether the connector applies to the act itself or to the lawful performance of official duties, either construction places the interstate commerce element another step removed from the regulated activity. The term "incident" as an adjective connotes a degree of separation, in that one occurrence of lesser importance is "[d]ependent on, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)." BLACK'S LAW DICTIONARY (11th ed. 2019).

Activity with only an incidental connection to an event that affects commerce is not a permissible subject of federal criminal law.

Finally, the commercial nexus element of § 231(a)(3) does not require a substantial effect on interstate commerce, but instead requires a civil disorder that affects commerce "in any way or degree." The terms are virtual opposites. Substantial means "[c]onsiderable in extent, amount, or value," whereas the word "any" is expansive and unqualified. *Compare* SUBSTANTIAL, BLACK'S LAW DICTIONARY (11th ed. 2019) with ANY, BLACK'S LAW DICTIONARY (11th ed. 2019); *see St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 550 (1978) (statutory language that covered "'any' act" was "broad and unqualified"). An "any way or degree" impact on commerce is not a "substantial" impact.[2]

Because the jurisdictional element does not limit the reach of § 231(a)(3) to activities that "substantially affect" interstate commerce, the second *Lopez/Morrison* factor is not satisfied.

---

[2] Although the Hobbs Act includes "in any way or degree" language, the Ninth Circuit has upheld this language only because "the Hobbs Act is directly aimed at economic activities" that themselves "affect[] commerce." *United States v. Atcheson*, 94 F.3d 1237, 1242 (9th Cir. 1996); *see Taylor v. United States*, 579 U.S. 301, 309 (2016) (in assessing constitutionality of Hobbs Act robbery of a drug dealer, noting that "to satisfy the Act's commerce element, it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is commerce over which the United States has jurisdiction" (internal quotation marks omitted)). Regulations on direct commercial impacts need not "substantially affect commerce to pass constitutional muster" because an activity with a de minimis impact on commerce will have the required substantial effect "through repetition" and "in aggregate." *Id.* (quoting *United States v. Bolton*, 68 F.3d 396 (10th Cir. 1995)); *see also United States v. Bremner*, 841 F. App'x 33, 33-34 (9th Cir. 2021) ("The individual circumstances of Bremner's alleged production of child pornography do not matter, because when a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence."). Such direct commercial impacts place activities such as Hobbs Act robbery under the first or second *Lopez* categories. By contrast, under § 231(a)(3), the language of "in any way or degree" attaches not to the offense conduct, but to the incidental occurrence of a civil disorder. In the context of an intrastate activity with an indirect impact on commerce, the language of "in any way or degree" fails the third *Lopez* category requiring a substantial effect.

    c.   Congress did not find that § 231(a)(3)'s activities substantially affect interstate commerce

Formal congressional findings are neither required nor sufficient to establish a valid exercise of federal commerce authority. *Lopez*, 514 U.S. at 562-63; *Morrison*, 529 U.S. at 614. Congressional findings may demonstrate that an activity "substantially affects interstate commerce, even though no such substantial effect [is] visible to the naked eye." *Lopez*, 514 U.S. at 563. But "the existence of congressional findings is not sufficient" when Congress merely offers a "but-for causal chain from the initial occurrence of violent crime . . . to every attenuated effect upon interstate commerce." *Morrison*, 529 U.S. at 615.

Here, Congress made no findings to establish that the activity regulated by § 231(a)(3) substantially affects interstate commerce beyond any impact "visible to the naked eye." The only potentially relevant findings relate to the impact of "riots" on interstate commerce. 114 Cong. Rec. 1294-95 (Jan. 29, 1968). Upon first proposing the COA, Senator Long stated certain facts, without citation, concerning what he called the "wholesale Negro violence," which he said "was an almost nightly affair in the streets of our cities" between 1965 and 1967. 114 Cong. Rec. 1295. For example, he said:

> In [1967], nearly 100 people were killed. Nearly 2,000 were injured. Police reported 4,289 cases of arson alone. Over 16,000 rioters were arrested. The estimated property loss was in the neighborhood of $160 million. The estimated economic loss to riot-torn businesses was $504 million.

*Id.* Senator Long asserted that these "riots" impeded interstate commerce:

> Any riot, as we know and experience them today, generally does impede the flow of goods in interstate commerce. It stops the movement of people in interstate commerce. It interferes with the goods that were intended to move in interstate commerce.

114 Cong. Rec. 5535-36 (Mar. 6, 1968).

But the statutory definition of "civil disorder" involving "acts of violence by assemblages

7

of three or more persons, "18 U.S.C. § 232(1), has no connection to riots on the scale described by Senator Long. Moreover, § 231(a)(3) does not target the destructive behavior attendant to a riot; the criminalized conduct is interference with an official's duties "incident to and during" a civil disorder. The congressional record contains no findings that individual interference with police and firefighters as defined under § 231(a)(3) substantially affects interstate commerce. The third *Lopez/Morrison* factor is not satisfied.

> d. The relationship between § 231(a)(3)'s activities and any effect on interstate commerce is too attenuated

Any causal chain that could link the activity proscribed under § 231(a)(3) to any substantial impact on interstate commerce is too far attenuated to place the activity within reach of Congress' commerce authority. The offense conduct of § 231(a)(3) need not affect commerce directly; it suffices that a person's acts interfered with an official's duties performed "incident to and during" any "civil disorder" that, in turn, affects commerce. Such an "incidental effect on interstate commerce . . . does not warrant federal intervention." *Musick v. Burke*, 913 F.2d 1390, 1397 (9th Cir. 1990). The noneconomic conduct penalized by § 231 is too attenuated to satisfy the "substantially affects" test for commercial impact.

Even if interference with police could affect commerce in the aggregate, considering the effect on a nationwide scale would be insufficient to place those acts within the federal commerce authority. *See Morrison*, 529 U.S. at 617 ( "reject[ing] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce"). Here, the paucity of cases prosecuted under § 231(a)(3) further negates any claim of an aggregate effect.

In sum, the four *Lopez/Morrison* factors demonstrate that § 231(a)(3) regulates purely local, noneconomic activities that do not "substantially affect" interstate commerce. As a result, § 231(a)(3) falls outside of Congress's power to regulate under the Commerce Clause.

Further, the government did not introduce any evidence that Mr. Fitzsimons's acts impacted interstate commerce. While the government may have introduced evidence that Mr. Fitzsimons interfered with law enforcement, the government cannot show a causal nexus between this interference with law enforcement, and any impact on interstate commerce. The government only introduced evidence that the civil disorder as a whole impacted interstate commerce. As detailed *supra*, evidence that the civil disorder alone impacted interstate commerce brings the statute outside of Congress's power to regulate under the Commerce Clause.

**WHEREFORE**, for all the reasons set forth above, Defendant Fitzsimons respectfully requests that the Court grant this Motion and enter a judgment of acquittal on Count One of the Indictment.

Respectfully submitted,

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

## CERTIFICATE OF SERVICE

I, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the foregoing Motion for Judgment of Acquittal on Count One to be served by Electronic Case Filing ("ECF") upon Douglas Burton Brasher, Assistant United States Attorney, United States Attorney's Office, 1100 Commerce Street, Third Floor, Dallas, TX 75242, and Michael Matthew Gordon, Assistant United States Attorney, United States Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, FL 33602.

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

DATE:   August 19, 2022