IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 21-158 (RC) |
| | : | |
| | : | |
| KYLE FITZSIMONS | : | |

### DEFENDANT'S BRIEF REGARDING DEFENSE OF ANOTHER PERSON

Mr. Fitzsimons must be found not guilty on Count Three of the Second Superseding Indictment charging him with forcibly assaulting, resisting, opposing, impeding, intimidating, interfering, and using a dangerous or deadly weapon on an officer and employee of the United State, in violation of 18 U.S.C. § 111(a)(1) and (b). An instruction on defense of another person against excessive force is proper and applicable to Mr. Fitzsimons's conduct. A Metropolitan Police Department Officer, identified as Lieutenant Bagshaw, was using excessive force against a woman wearing a red sweater by beating her over the head with a baton and closed fists. In response to the display of excessive force and calls for help, Mr. Fitzsimons threw an unstrung bow towards the officer in order to distract him. Mr. Fitzsimons reasonably believed that the woman faced a present threat of death or serious injury and acted lawfully in response to the threat.

    a. **Defense of another person against excessive force is an appropriate defense in this case**

A defense of a third person against excessive force instruction is appropriate in this case. The model instruction for lawful self-defense against a federal officer requires the defendant to not know the official status of the federal officer. 2 Fed. Jury Prac. & Instr. § 24:12 (6th ed.). However, the model instruction, and its requirement that the defendant not know the status of

officer, does not apply where the defendant is responding to the use of excessive force. *United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992). The *Span* court held that the model instruction is inappropriate in a self-defense against excessive force case because "the model instruction requires the jury to reject this theory of defense as long as the government proves beyond a reasonable doubt that the defendant knew that the person she is charged with assaulting was a federal law enforcement officer. As such, giving the model instruction is tantamount to refusing an instruction based on the defendant's right to use reasonable force to repel excessive force by a federal law enforcement officer." *Id*.

The right to use reasonable force against the excessive force of a law enforcement officer is protected by the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 394–96 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (original emphasis omitted); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"); *Garay v. Liriano*, 943 F. Supp. 2d 1, 19 (D.D.C. 2013) ("The Fourth Amendment's freedom from unreasonable searches and seizures [also] encompasses the plain right to be free from the use of excessive force in the course of an arrest.") (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir.2002)) (alteration in original). Other circuits acknowledge this right of self-defense. *See, e.g., United States v. Frizzi*, 491 F.2d 1231, 1232 n. 2 (1st Cir.1974) ("We of course do not suggest that self-defense against unreasonable 'standing up' for [the officer's own] authority ... would subject the resister to liability under 18 U.S.C. § 111."); *United States v. Wallace*, 368 F.2d 537, 538 (4th Cir.1966) (section 111 "does

2

not proscribe reasonable force employed in a justifiable belief that it is exerted in self-defense"), cert. denied, 386 U.S. 976 (1967); *United States v. Drapeau*, 644 F.3d 646, 654 (8th Cir. 2011). Dag E. Ytreberg, Right to Resist Excessive Force Used in Accomplishing Lawful Arrest, 77 A.L.R.3d 281 (1990) (citing cases).

The comment to 1 Modern Federal Jury Instructions-Criminal P 14.01 (2022) concerning self-defense instructs that "[w]hen [self-defense against excessive force] is raised, Instruction 14-11 should not be given; an instruction outlining the specific contentions of the defense and defining excessive force should be given instead." The comment suggests an instruction adapted from *United States v. Gore*, 592 F.3d 489 (4th Cir. 2010):

> The defendant contends that he acted in self-defense. This defense is available only when the defendant was under an unlawful present or imminent threat of serious bodily injury or death. A present or imminent threat of serious bodily injury or death must be based on a reasonable fear that a real and specific threat existed at the time of the defendant's assault, resistance, opposition, or impeding. If the defendant unlawfully assaulted, resisted, or impeded a correctional officer when no reasonable fear of a present or imminent threat of serious bodily injury or death actually existed, his defense of self-defense must fail.

The *Gore* court held that "a prisoner charged with a violation of 18 U.S.C. § 111 must, to succeed on the affirmative defense of self-defense, demonstrate that he responded to an unlawful and present threat of death or serious bodily injury." *Id*. at 495. The Fourth Circuit applied a heightened standard for when self-defense may be used by a prisoner because "[p]hysical contact is a fact of everyday prison life, and to require a lesser standard of threatened harm would invite inmates to clash with prison officials." While officers were undoubtedly faced with difficult circumstances on January 6, the standard of self-defense outlined in *Gore* was tailored to equally fraught circumstances and is appropriate here.

Taking the instruction from *Gore* and adapting the instruction to the facts of this case, including that Mr. Fitzsimons was acting in defense of another person, an appropriate instruction reads:

> The defendant contends that he acted in self-defense of another person. This defense is available only when another person was under an unlawful present or imminent threat of serious bodily injury or death and the defendant acted in defense of that person. A present or imminent threat of serious bodily injury or death must be based on a reasonable fear that a real and specific threat existed at the time of the defendant's assault, resistance, opposition, or impeding. If the defendant unlawfully assaulted, resisted, or impeded an officer when no reasonable fear of a present or imminent threat of serious bodily injury or death actually existed, his defense of defense of another person must fail.

### b. Mr. Fitzsimons was acting in defense of another person against excessive force when he threw the unstrung bow that hit Officer Beaver.

#### i. Lieutenant Bagshaw employed excessive force to effectuate the arrest of the woman in the red sweater.

Excessive-force claims are examined under the Fourth Amendment's reasonableness standard, which asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Scott v. Dist. of Columbia*, 101 F.3d 748, 758 (D.C.Cir.1996) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "An officer will be found to have used excessive force only 'if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions.'" *Oberwetter v. Hilliard*, 680 F.Supp.2d 152, 167 (D.D.C.2010) (quoting *Rogala v. Dist. of Columbia*, 161 F.3d 44, 54 (D.C.Cir.1998)), aff'd, 639 F.3d 545 (D.C.Cir.2011).

"In general, police officers have authority to use 'some degree of physical coercion' when subduing a suspect, *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), as long as the amount of force used is reasonable. In Judge Friendly's famous formulation, 'Not every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights.'" *Oberwetter*, 639 F.3d at 555 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)) (parallel citations omitted). The reasonableness of the use of force must be determined based on "the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [s]he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97. "[T]he excessiveness of the force [must be] so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C.Cir.1993).

Lieutenant Bagshaw's use of force against the woman in the red sweater was clearly apparent and no reasonable officer could justify his actions. Government Exhibit 204, CCTV footage from the tunnel where Mr. Fitzsimons threw the unstrung bow, shows the woman in the red sweater surrounded by officers and unable to move. Government Exhibit 204 at :20-:40. Lieutenant Bagshaw enters the frame in a white shirt at approximately the thirty-four-second mark and proceeds to reach over at least two officers to strike baton blows on the woman's head. *Id*. at :42. Lieutenant Bagshaw is obscured for approximately twenty seconds, but when his movements are visible again, he delivers more overhead baton blows to the woman. He strikes her nine times with a baton between 1:10 and 1:20. The woman does not actively resist at any point. Not satisfied, Lieutenant Bagshaw delivers five more punches to the woman's head with a

closed fist. *Id*. at 1:38-1:43. One second later, at the 1:44 mark, Mr. Fitzsimons throws the bow toward Lieutenant Bagshaw.

The defense introduced the Metropolitan Police Department General Order 901.07 – Use of Force, as Exhibit 404. The order laid out categories of perceived threats, and appropriate responses to each threat. In the case of a passive resister, where "a subject displays a low level of noncompliant resistance", an appropriate response involves contact controls, which includes "soft empty hand control, firm grip, and escorting." Defense Exhibit 404 at 6-7. It appeared the woman in the red sweater was merely a passive resister, however, even if she were characterized as an active resister where "the subject exhibits physical and mechanical defiance, including evasive movements to defeat the member's attempt at control, including but not limited to, bracing, tensing, pushing," the response was still excessive. *Id*. at 6. An appropriate response to an active resister is limited to "control holds, joint locks, and oleoresin capsicum (OC) spray, solo or team takedowns that may induce pain or cause discomfort to the subject who is actively resisting until control is achieved." *Id*. at 7. Baton strikes like those seen here constitute deadly force. *Id*. Deadly force may only be used when the **subject** poses "an immediate danger of death or serious physical injury." *Id*. at 6 (emphasis added).

The woman in the red sweater did not pose an immediate danger of death or seriously bodily injury. Therefore, the deadly and excessive force that Lieutenant Bagshaw used against her was "so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C.Cir.1993). While there were many emergencies and dangerous situations for officers on January 6, this was not one of them. The woman was completely surrounded by officers and was not actively resisting or posing a threat. This was not a split-second judgment made by Lieutenant Bagshaw. He went out of his way,

reaching over several officers on at least three distinct occasions, in order to strike the woman. Ultimately, Lieutenant Bagshaw left the woman beaten and bleeding from her head. Defense Exhibit 109.

### ii. Mr. Fitzsimons was acting in defense of the woman in the red sweater when he threw the unstrung bow.

Approximately one second after Lieutenant Bagshaw's third barrage, Mr. Fitzsimons threw the bow towards Lieutenant Bagshaw and the woman that was being beaten. Mr. Fitzsimons, standing near the entrance of the tunnel, could see and hear what was happening to the woman in the red sweater. In Defense Exhibit 102 at :22 a woman yells, "I didn't even touch you!" Later, a man yells, "We need help!" *Id.* at :35. Again, a man yells, "Please help!" *Id.* at :54. Finally, a man yells, "Please don't beat her!" *Id.* at 2:10. Seconds later, Mr. Fitzsimons throws the bow. *Id.* at 2:14.

Mr. Fitzsimons clearly aims in the direction of the woman that was being beaten. The bow was deflected and lands directly in front of Lieutenant Bagshaw. It is clear from the video and audio that Mr. Fitzsimons did not intend to injure officers with the bow, his intent was to distract the officers so that they would stop beating the defenseless woman.

Every element of the instruction provided *supra* is met. The woman was under an unlawful present threat of serious bodily injury. She received several blows to the head with a baton, which is classified as deadly force. Mr. Fitzsimons was acting in defense of the woman, as he plainly aimed his bow in the area of Lieutenant Bagshaw and the woman he was beating. Mr. Fitzsimons's fear was reasonable, and the threat existed at the very moment he threw the bow. The evidence on record is sufficient for this Court to make the inference that Mr. Fitzsimons's intent was to distract Lieutenant Bagshaw and prevent him from continuing to beat the woman. Evidence shows that several protestors were screaming at Lieutenant Bagshaw to stop, Mr.

7

Fitzsimons was located in an area to hear the cries for help and see what was happening in the tunnel. Further, Mr. Fitzsimons aimed the bow directly toward Officer Bagshaw one second after Officer Bagshaw unleashed a barrage of closed fist punches on the woman. Even though Mr. Fitzsimons did not testify as to his intent, there is more than enough evidence on record to allow this court to make the inference that Mr. Fitzsimons was acting in defense of another person.

## II.  CONCLUSION

Mr. Fitzsimons must be found not guilty on Count Three of the Second Superseding Indictment charging him with forcibly assaulting, resisting, opposing, impeding, intimidating, interfering, and using a dangerous or deadly weapon on an officer and employee of the United State, in violation of 18 U.S.C. § 111(a)(1) and (b). An instruction on defense of another person against excessive force is appropriate in this case. Lieutenant Bagshaw was using excessive force against a woman by beating her over the head with a baton and closed fists. In response to the display of excessive force and calls for help, Mr. Fitzsimons threw a bow towards the officer in order to distract him. Mr. Fitzsimons reasonably believed that the woman faced a present threat of death or serious injury and acted lawfully. For all of these reasons, Mr. Fitzsimons must be found not guilty of Count Three.

Respectfully submitted,

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the foregoing Defendant's Brief Regarding Defense of Another Person to be served by Electronic Case Filing ("ECF") upon Douglas Burton Brasher, Assistant United States Attorney, United States Attorney's Office, 1100 Commerce Street, Third Floor, Dallas, TX 75242, and Michael Matthew Gordon, Assistant United States Attorney, United States Attorney's Office, 400 North Tampa Street, Suite 3200, Tampa, FL 33602.

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

DATE:        August 26, 2022